TRADEX V. LACM , et al.

# EXHIBIT 2

EXHIBIT 2

**Amended and Restated**
**Series Limited Liability Company Operating Agreement**
**April 10, 2006**

# Last Atlantis Partners LLC

**a Delaware Series Limited Liability Company**

THE INTERESTS HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE. THE INTERESTS ARE BEING OFFERED PURSUANT TO EXEMPTIONS PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT, REGULATION D THEREUNDER, CERTAIN STATE SECURITIES LAWS AND CERTAIN RULES PROMULGATED PURSUANT THERETO. THE INTERESTS MAY NOT BE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR (UNLESS WAIVED BY THE FUND MANAGER IN ITS SOLE DISCRETION) AN OPINION OF COUNSEL ACCEPTABLE TO THE FUND'S MANAGER THAT SUCH REGISTRATION IS NOT REQUIRED. TRANSFERABILITY OF THE INTERESTS IS FURTHER RESTRICTED BY THE TERMS OF THIS OPERATING AGREEMENT. THE INTERESTS HAVE NOT BEEN RECOMMENDED OR APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

PURSUANT TO AN EXEMPTION FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS WHOSE PARTICIPANTS ARE LIMITED TO QUALIFIED ELIGIBLE PARTICIPANTS, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION. THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

THE INTERESTS OFFERED HEREBY INVOLVE A HIGH DEGREE OF RISK.  SEE "THE FUND - FUND OBJECTIVE", "RISK FACTORS" AND "CONFLICTS OF INTEREST" IN THE CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM.

*Any inquiries should be directed to:*
Last Atlantis Capital Management LLC
1212 Bjerge Gade, Lower Level, St. Thomas, USVI 00802
Phone: (340) 777-5170
Email: info@lacm-usvi.com

RECITALS                                                                                                6

ARTICLE I DEFINITIONS                                                                                   6

SECTION 1.01 - DEFINITIONS:                                                                             6
SECTION 1.02 - HEADINGS:                                                                               14

ARTICLE II FORMATION OF COMPANY                                                                        14

SECTION 2.01 - FORMATION AND SERIES CREATION:                                                          14
SECTION 2.02 - NAME:                                                                                   15
SECTION 2.03 - PRINCIPAL PLACE OF BUSINESS:                                                            16
SECTION 2.04 - REGISTERED OFFICE AND REGISTERED AGENT:                                                 16
SECTION 2.05 - TERM:                                                                                   16

ARTICLE III BUSINESS OF COMPANY                                                                        16

SECTION 3.01 - BUSINESS OF COMPANY:                                                                    16

ARTICLE IV NAME AND ADMISSION OF MEMBERS                                                               17

SECTION 4.01 - MEMBERS:                                                                                17
SECTION 4.02 - MANAGER:                                                                                17
SECTION 4.03 - FUND MANAGER:                                                                           17

ARTICLE V RIGHTS AND DUTIES OF MEMBERS AND MANAGERS                                                    18

SECTION 5.01 - MANAGEMENT:                                                                             18
SECTION 5.02 - CERTAIN POWERS OF THE MANAGER:                                                          18
SECTION 5.03 - LIABILITY FOR CERTAIN ACTS:                                                             19
SECTION 5.04 - MANAGERS HAVE NO EXCLUSIVE DUTY TO COMPANY OR SERIES:                                   20
SECTION 5.05 - BANK ACCOUNTS:                                                                          20
SECTION 5.06 - INDEMNITY OF THE MANAGER, EMPLOYEES AND OTHER AGENTS:                                   20
SECTION 5.07 – COMPENSATION AND EXPENSES:                                                              21
SECTION 5.08 - RESIGNATION:                                                                            23
SECTION 5.09 - REMOVAL:                                                                                23
SECTION 5.10 - VACANCIES:                                                                              23

ARTICLE VI RIGHTS AND OBLIGATIONS OF MEMBERS                                                           24

SECTION 6.01 - LIMITATION OF LIABILITY:                                                                24
SECTION 6.02 - COMPANY BOOKS:                                                                          24
SECTION 6.03 - PRIORITY AND RETURN OF CAPITAL:                                                         24
SECTION 6.04 - LIABILITY OF A MEMBER TO THE COMPANY:                                                   24

ARTICLE VII MEETINGS OF MEMBERS                                                                        24

SECTION 7.01 - MEETINGS:                                                                               24
SECTION 7.02 - PLACE OF MEETINGS:                                                                      24
SECTION 7.03 - NOTICE OF MEETINGS:                                                                     25
SECTION 7.04 - MEETING OF ALL VOTING MEMBERS:                                                          25
SECTION 7.05 - RECORD DATE:                                                                            25
SECTION 7.06 - QUORUM:                                                                                 25
SECTION 7.07 - MANNER OF ACTING:                                                                       25
SECTION 7.08 - PROXIES:                                                                                26

SECTION 7.09 - ACTION BY MEMBERS WITHOUT A MEETING: 26

ARTICLE VIII CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS 26

SECTION 8.01 - MEMBERS' CAPITAL CONTRIBUTIONS: 26
SECTION 8.02 - ADDITIONAL CONTRIBUTIONS OR LOANS: 26
SECTION 8.03 - CAPITAL ACCOUNTS: 26
SECTION 8.04 - WITHDRAWAL OR REDUCTION OF MEMBERS' CONTRIBUTIONS TO CAPITAL 27
SECTION 8.05 - COMPANY INTERESTS: 29
SECTION 8.06 - VOTING UNITS: 29
SECTION 8.07 - SERIES OWNERSHIP: 29
SECTION 8.08 - TRANSFERS RESTRICTED: 30
SECTION 8.09 - "TRANSFER" DEFINED: 30
SECTION 8.10 - TRANSFER NOT AN EVENT OF DISSOLUTION: 30
SECTION 8.11 - PERMITTED TRANSFERS: 30
SECTION 8.12 - PERCENTAGE OF LIMITATIONS OR TRANSFERS: 31
SECTION 8.13 - COSTS AND EXPENSES OF TRANSFER: 31

ARTICLE IX ALLOCATIONS AND DISTRIBUTIONS 31

SECTION 9.01 - PROFITS AND LOSSES: 31
SECTION 9.02 - ALLOCATION RULES: 32
SECTION 9.04 - DISTRIBUTABLE CASH: 33
SECTION 9.05 - DISTRIBUTION RULES: 33
SECTION 9.06 - LIMITATION UPON DISTRIBUTIONS: 33
SECTION 9.07 - ACCOUNTING METHOD: 33
SECTION 9.08 - INTEREST ON AND RETURN OF CAPITAL CONTRIBUTIONS: 34
SECTION 9.09 - LOANS TO COMPANY: 34
SECTION 9.10 - RECORDS, AUDITS AND REPORTS: 34
SECTION 9.11 - RETURNS AND OTHER ELECTIONS: 35
SECTION 9.12 - TAX MATTERS PARTNER: 35
SECTION 9.13 - RIGHT TO MAKE §754 ELECTION: 35
SECTION 9.14 - TAX CLASSIFICATION: 35

ARTICLE X TRANSFERABILITY 36

SECTION 10.01 - TRANSFER: 36

ARTICLE XI ISSUANCE AND TRANSFERS OF MEMBERSHIP INTERESTS 36

SECTION 11.01 - ADDITIONAL MEMBERS AND ASSIGNEES: 36
SECTION 11.02 - RETROACTIVE ALLOCATIONS: 37

ARTICLE XII TERMINATION OF SERIES; DISSOLUTION AND TERMINATION
OF THE COMPANY 37

SECTION 12.01 - DISSOLUTION OF THE COMPANY: 37
SECTION 12.02 - TERMINATION OF A SERIES: 37
SECTION 12.03 - WINDING UP, LIQUIDATION AND DISTRIBUTION OF ASSETS OF A SERIES
UPON TERMINATION OF SUCH SERIES: 38
SECTION 12.04 - WINDING UP, LIQUIDATION AND DISTRIBUTION OF ASSETS OF THE COMPANY
UPON DISSOLUTION OF THE COMPANY: 38
SECTION 12.05 - CERTIFICATE OF CANCELLATION: 39
SECTION 12.06 - EFFECT OF FILING CERTIFICATE OF CANCELLATION: 39
SECTION 12.07 - RETURNS OF CONTRIBUTIONS NON-RECOURSE TO OTHER MEMBERS: 39

ARTICLE XIII MISCELLANEOUS PROVISIONS                                    39

    SECTION 13.01 - NOTICES:                                      39
    SECTION 13.02 - BINDING EFFECT:                               40
    SECTION 13.03 - REMEDIES FOR BREACH:                          40
    SECTION 13.04 - GOVERNING LAW:                                40
    SECTION 13.05 - WAIVER OF ACTION FOR PARTITION:               40
    SECTION 13.06 - AMENDMENTS:                                   40
    SECTION 13.07 - EXECUTION OF ADDITIONAL INSTRUMENTS:          40
    SECTION 13.08 - CONSTRUCTION:                                 40
    SECTION 13.09 - WAIVERS:                                      40
    SECTION 13.10 - RIGHTS AND REMEDIES CUMULATIVE:               41
    SECTION 13.11 - SEVERABILITY:                                 41
    SECTION 13.12 - CREDITORS:                                    41
    SECTION 13.13 - COUNTERPARTS:                                 41
    SECTION 13.14 - INTEGRATION:                                  41

EXHIBIT A.1 LACM SPLIT STIKE CONVERSION, SHARE CLASS A

EXHIBIT A.2 LACM HIGH YIELD, SHARE CLASS B

EXHIBIT A.3 LACM LEGACY, SHARE CLASS C

EXHIBIT A.4 LACM TRADE RECEIVABLE, SHARE CLASS D

EXHIBIT A.5 LACM MSCI ENHANCED HEDGE FUND,
INDEX SHARE CLASS E

EXHIBIT A.6 LACM MACRO DISCRETIONARY, SHARE CLASS F

EXHIBIT A.7 LACM TREND FOLLOWING FUTURES, SHARE CLASS G

EXHIBIT A.8 LACM EMERGING MANAGER, SHARE CLASS H

EXHIBIT A.9 LACM QUANTITATIVE INTRADAY FUTURES,
SHARE CLASS I

EXHIBIT A.10 LACM BEHAVIOR PATTERN INTRADAY FUTURES,
SHARE CLASS J

EXHIBIT A.11 LACM LONG/SHORT STATISTICAL ARBITRAGE,
SHARE CLASS K

EXHIBIT A.12 LACM CONSUMER RECEIVABLES, SHARE CLASS L

EXHIBIT A.13 LACM ENHANCED MULTI-STRATEGY, SHARE CLASS M

EXHIBIT A.14 LACM SHORT-TERM DISCRETIONARY FUTURES, SHARE CLASS N

EXHIBIT A.15 LACM PROPRIETARY OPTIONS, SHARE CLASS O

EXHIBIT A.16 LACM DISCRETIONARY OPTIONS, SHARE CLASS Q

EXHIBIT B AGREEMENT TO TERMINATE SERIES

**SERIES LIMITED LIABILITY COMPANY OPERATING AGREEMENT**

of

**LAST ATLANTIS PARTNERS, LLC**

This Series Limited Liability Company Operating Agreement (this "Operating Agreement") is made and entered into, and is effective as of this 1st day of December, 2005, by and between Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company, as a Member of the Company (as defined below) and each other Person (as defined below) who execute a counterpart of this Operating Agreement, personally or by attorney-in-fact and who is or will be admitted to the Company as a Member of the Company.

RECITALS

WHEREAS, the parties hereto desire to form a limited liability company pursuant to the Delaware Limited Liability Company Act by filing a Certificate of Formation of the Company with the office of the Secretary of State of the State of Delaware and entering into this Operating Agreement; and

WHEREAS, it is intended by the parties hereto that separate and distinct investment classes be established by the Company and shall be each a separate Series with respect to the Members of the Company and that the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to a particular Series of the Company will be enforceable against the assets of such Series only, and not against the assets of the Company generally or any other Series thereof, and none of the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to the Company generally or any other Series thereof shall be enforceable against the assets of such Series; and

NOW, THEREFORE, in consideration of the mutual promises and obligations contained herein, the parties, intending to be legally bound, hereby agree as follows:

ARTICLE I
DEFINITIONS

Section 1.01 - Definitions:

The following terms used in this Operating Agreement, the Separate Series Operating Agreement(s), the Confidential Private Placement Memorandum, the Subscription Agreement, the Withdrawal and/or Reallocation Agreement, and the Agreement to Terminate Series shall have the following meanings:

"Act" shall mean the Delaware Limited Liability Company Act, 6 Del. C. §18-101, et seq., as amended from time to time.

"Asset Management Fee" shall mean the fee paid to the Fund Manager for its services in managing the affairs of the fund and/or the fee paid to the Underlying Investment Manager for its services.

"Capital Account" shall mean, with respect to any Series and with respect to any Member, the capital account maintained for such Member that is associated with such Series in accordance with the provisions of Section 8.03. A separate Capital Account shall be maintained for each Member's Interest in each Series.

"Capital Contribution" shall mean, with respect to any Member, any cash contribution to the Company with respect to a Series by such Member whenever made.

"Certificate of Formation" shall mean the Certificate of Formation of the Company and any and all amendments thereto and restatements thereof filed on behalf of the Company with the office of the Secretary of State of the State of Delaware pursuant to the Act.

"CFTC" shall mean the Commodity Futures Trading Commission.

"Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, or any superseding federal tax law. A reference herein to a specific Code Section refers, not only to such specific Section, but also to any corresponding provision of any superseding federal tax statute, as such specific Section or such corresponding provision is in effect on the date of application of the provisions of this Operating Agreement containing such reference.

"Company" shall refer to Last Atlantis Partners, LLC, formed and continued under and pursuant to the Act and this Operating Agreement.

"CTA" shall mean a commodity trading advisor.

"Depreciation" shall mean, with respect to a Series, and for each Fiscal Year or other period, an amount equal to the depreciation, amortization or other cost recovery deduction allowable with respect to an asset associated with such Series for such Fiscal Year or other period; provided, however, that if the Gross Asset Value of an asset associated with such Series differs from its adjusted basis for federal income-tax purposes at the beginning of such Fiscal Year or other period, Depreciation shall be an amount that bears the same ratio to such beginning Gross Asset Value as the federal income-tax depreciation, amortization or other cost recovery deduction with respect to such asset for such Fiscal Year or other period bears to such beginning adjusted tax basis; and provided further, that if the federal income-tax depreciation, amortization or other cost recovery deduction for such Fiscal Year or other period is zero, Depreciation shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by the Fund Manager.

"Distributable Cash" shall mean, with respect to a Series, all cash, revenues and funds received by the Company with respect to such Series from such Series' operations, less the sum of the following to the extent paid or set aside by the Company with respect to such Series:

(a)     all principal and interest payments on indebtedness of the Company with respect to such Series and all other sums paid to lenders with respect to such Series;

(b)     all cash expenditures incurred in the normal operation of the Company's business with respect to such Series; and

(c)     such Reserves as the Fund Manager associated with such Series deems reasonably necessary for the proper operation of the Company's business with respect to such Series.

"Entity" shall mean any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative, association, foreign trust or foreign business organization or other legal entity.

"ERISA" shall mean the Employee Retirement Income Security Act of 1974.

"Excluded Investment" shall have the meaning giving to it in section 8.15.

"Fiscal Period" shall mean a calendar month, except that the first Fiscal Period shall commence on the formation date of the Company and shall end on the last day of the calendar month in which the formation date occurs, and the final Fiscal Period shall end on the date the Company is terminated, regardless whether such date is the last day of a calendar month.

"Fiscal Year" shall mean:

(a)     the period commencing upon the formation of the Company and ending on December 31, 2005;

(b)     any subsequent twelve (12) month period commencing on January 1 and ending on December 31; or

(c)     any portion of the period described in Clause (b) of this sentence for which the Company is required to allocate Profits, Losses and other items of Company income, gain, loss or deduction pursuant to Article IX hereof.

"Fund" shall mean the Company inclusive of all Series of the Company.

"Fund Manager" shall mean Last Atlantis Capital Management LLC as the Manager of the Company, and the Manager of all Series of the Company.

"Gross Asset Value" shall mean, with respect to any asset associated with a Series, such asset's adjusted basis for federal income-tax purposes, except as follows:

(a)     the initial Gross Asset Value of any asset contributed by a Member to the Company with respect to a Series shall be the gross fair market value of such asset;

(b)     the Gross Asset Value of all Company assets associated with a Series shall be adjusted to equal their respective gross fair market values, as determined by the Fund Manager as of the following times:

(i)     the acquisition of an additional Interest in the Company with respect to such Series by any new or existing Member;

        (ii)      the distribution by the Company with respect to such Series to a Member; and

        (iii)     the liquidation of the Company within the meaning of Treasury Regulation §1.704-1(b)(2)(ii)(g);

   (c)      the Gross Asset Value of any Company asset associated with a Series that is distributed to any Member shall be the gross fair market value of such asset on the date of distribution, as determined by the Fund Manager.

If the Gross Asset Value of an asset has been determined or adjusted pursuant to Paragraph (i) or Paragraph (ii) above, such Gross Asset Value shall thereafter be adjusted by the Depreciation taken into account with respect to such asset for purposes of computing Profits and Losses.

"High Water Mark" shall mean that losses are carried forward and must be recouped out of future profits before a Performance Fee can be earned in a later period.

"Initial Capital Contribution" shall mean, with respect to any Member, the initial cash contribution to the Company by such Member with respect to a Series pursuant to this Operating Agreement.

"Interest" shall mean a Member's entire Membership Interest in the Company and/or a Series of the Company.

"Investment Advisers Act" shall mean the Investment Advisers Act of 1940.

"Investment Company Act" shall mean the Investment Company Act of 1940.

"LACM" shall mean Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company who is the Manager of the Company and of all Series of the Company.

"LLC" shall mean a Limited Liability Company.

"Majority Interest" shall mean, with respect to a Series or the Company as applicable, the vote of Membership Interests of one or more Members that in the aggregate exceed 50% of all VOTING Percentage Interests owned by Members associated with respect to such Series or the Company as applicable.

"Manager(s)" shall mean Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company who is the Manager of the Company and of all Series of the Company and/or the various investment managers of the Underlying Investments that the Series of Share Classes are invested into.

"Master Fund" shall mean Last Atlantis Partners Master Fund SPC LTD, a to-be-formed International Business Company that will operate under the laws of the British Virgin Islands as a Segregated Portfolio Company.

"Member" shall include:

   (a)      Last Atlantis Capital Management LLC, as a member of the Company not associated with any Series;

(b)     Last Atlantis Capital Management LLC, as a member of the Company associated with a Series (as such Series may, from time to time, be created in accordance with the terms of this Operating Agreement); and

(c)     Persons later admitted as Members of the Company, who shall be admitted in accordance with this Operating Agreement and at the sole discretion of the Fund Manager.  Members of the Company shall at all times be Members of the Company until the Company is dissolved, wound up and terminated in accordance with the Act and this Operating Agreement, notwithstanding the fact that there may or may not be any Series at any particular point in time.  Upon being admitted as a Member of the Company, unless otherwise specified in any Separate Series Operating Agreement, such Member shall also be considered admitted as a Member of each individual Series.  Upon being admitted as a Member of any Separate Series Operating Agreement, unless otherwise specified such Separate Series Operating Agreement, such Member shall not be considered admitted as a Member of the Company and each other Series and shall not hold the same Percentage Interest in the Company and each other Series as it holds in such Separate Series Operating Agreement.

"Membership Interest" shall mean a Member's entire limited liability company interest in the Company with respect to a Series and/or a Member's entire limited liability company interest in the Company irrespective of a Series.

"Memorandum" shall mean the Last Atlantis Partners LLC, a Delaware Limited Liability Company, Confidential Private Placement Memorandum dated December 2005 and as amended, supplemented or updated from time to time.

"NASD" shall mean the National Association of Securities Dealers Inc.

"NAV" shall mean Net Asset Value.

"Net Asset Value" shall mean, as of any Fiscal Period, the excess of:

(a)     the fair market value of all Securities and other assets held by the Company as of such date over;

(b)     the liabilities of the Company, determined in accordance with this Operating Agreement.

"Net Losses" shall mean, for any Fiscal Period, the excess of the Net Asset Value of the Company as of the opening of business on the first day of the Fiscal Period, after adding any additional Capital Contributions made during that Fiscal Period, over the Net Asset Value of the Company at the close of business on the last day of such Fiscal Period, prior to deducting any capital withdrawals to be effected as of such date or other distributions being made with respect to such Fiscal Period.

"Net Profits" shall mean, for any Fiscal Period, the excess of the Net Asset Value of the Company at the close of business on the last day of the Fiscal Period, prior to deducting any capital withdrawals to be effected as of such date or other distributions being made with respect to such Fiscal Period, over the Net Asset Value of the Company as of the opening of business on the first day of such Fiscal Period, after adding any additional Capital Contributions made during that Fiscal Period.

"NFA" shall mean the National Futures Association.

"Nominal Account Value" shall mean the net assets and notional equity in and committed to an account, a Series, or a Member of a Series (that is, total assets, plus notional equity, plus interest income paid and accrued, plus unrealized profits and losses on open positions, minus total liabilities and accrued brokerage commissions).

"Notional Funds" shall mean the difference between the account size, a Series' account size, or a Member of a Series' account size above less actual funds. Accrued profits and cash additions to the account(s) comprising actual funds shall be treated as an increase in account size and losses and cash withdrawals to the account comprising actual funds shall be treated as a decrease in the account size.

"Offshore Feeder" shall mean Last Atlantis Partners SPC LTD, a to-be-formed International Business Company that will operate under the laws of the British Virgin Islands as a Segregated Portfolio Company and who's Share Classes mirrors the Company's Share Classes and investment objectives.

"Operating Agreement" shall mean this Series Limited Liability Company Operating Agreement, as amended, modified, supplemented or restated from time to time.

"Percentage Interest" shall mean, for any Member associated with a Series, such Member's Percentage Interest in such Series as set forth on the books and records of the Company. The Percentage Interest shall be calculated by dividing the Members NAV in that Series by the total NAV of that Series.

"Performance Fee" shall mean the incentive fee paid the Fund Manager for its services in managing the affairs of the fund and/or the incentive fee paid the Underlying Investment Manager for its services.

"Person" or "Persons" shall mean any individual or Entity, their heirs, executors, administrators, legal representatives, successors, and assigns of such individual or Entity where the context so permits.

"Profits" and "Losses" shall mean, with respect to a Series, and for each Fiscal Year, an amount equal to the Company's taxable income or loss associated with such Series for such Fiscal Year, determined in accordance with §703(a) of the Code (but including in taxable income or loss, for this purpose, all items of income, gain, loss or deduction associated with such Series that are required to be stated separately pursuant to §703(a)(1) of the Code), with the following adjustments:

(a)     any income of the Company associated with such Series that is exempt from federal income tax and not otherwise taken into account in computing Profits or Losses pursuant to this definition shall be added to such taxable income or loss;

(b)     any expenditures of the Company associated with such Series that are described in §705(a)(2)(B) of the Code (or treated as expenditures described in §705(a)(2)(B) of the Code pursuant to Treasury Regulation §1.704-1(b)(2)(iv)(i)) and not otherwise taken into account in computing Profits or Losses pursuant to this definition shall be subtracted from such taxable income or loss;

(c)     in the event the Gross Asset Value of any Company asset associated with such Series is adjusted in accordance with Paragraph (ii) or Paragraph (iii) of the definition of "Gross Asset Value" above, the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purposes of computing Profits or Losses;

(d)      gain or loss resulting from any disposition of any asset of the Company associated with such Series with respect to which gain or loss is recognized for federal income-tax purposes shall be computed by reference to the Gross Asset Value of the asset disposed of, notwithstanding that the adjusted tax basis of such asset differs from its Gross Asset Value; and

(e)      in lieu of the depreciation, amortization and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account Depreciation associated with such Series for such Fiscal Year or other period, computed in accordance with the definition of "Depreciation" above.

"Prohibited Investor" shall mean:

(a)      a person or entity whose name appears on:

   (i)     the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Office of Foreign Assets Control; and/or

   (ii)    such other lists of prohibited persons and entities as may be mandated by applicable law or regulation, e.g., federal control lists.

(b)      a "Foreign Shell Bank", for purposes of this Operating Agreement is an organization that

   (i)     is organized under the laws of a non-U.S. country;

   (ii)    engages in the business of banking;

   (iii)   is recognized as a bank by the bank supervisory or monetary authority of the country of its organization or principal banking operations;

   (iv)    receives deposits to a substantial extent in the regular course of its business;

   (v)     has the power to accept demand deposits (a "Foreign Bank"), but does not include the U.S. branches or agencies of a foreign bank without a place of business that is maintained by such Foreign Bank and is located at a fixed address, other than solely a post office box or an electronic address, in a country in which the Foreign Bank is authorized to conduct banking activities, at which location the Foreign Bank:

   (1)     employs one or more individuals on a full-time basis;

   (2)     maintains operating records related to its banking activities;

   (3)     is subject to inspection by the banking authority that licensed the Foreign Bank to conduct banking activities in any country (a "Physical Presence"), but does not include a Foreign Shell Bank that:

   (aaa)   is an affiliate of a depository institution, credit union, or Foreign Bank that maintains a Physical Presence in the United States or a non-U.S. country, as applicable; or

   (bbb)   is subject to supervision by a banking authority in the country regulating such affiliated depository institution, credit union, or Foreign Bank.

(c)      a person or entity resident in or whose subscription funds are transferred from or through an account in any foreign country that has been designated as non-cooperative with international anti-money laundering principals or procedures by an intergovernmental

group or organization, such as the Financial Action Task Force on Money-Laundering, of which the United States is a member and with which designation the United States representative to the group or organization continues to concur (each, a "Non-Cooperative Jurisdiction").

"QP" shall mean Qualified Purchaser as defined in Section 2(a)(51) of the Investment Company Act of 1940.

"QEP" shall mean Qualified Eligible Participant as defined by the Commodity Futures Trading Commission Rule 4.7.

"Reserves" shall mean, with respect to a Series, funds set aside that shall be maintained in amounts deemed sufficient by the Fund Manager for working capital and to pay taxes, insurance, debt service or other costs or expenses incident to the ownership or operation of the business of the Company with respect to such Series, or incident to the liquidation of such Series pursuant to Section 12.03.

"Restricted Partner" shall have the meaning giving to it in Section 8.15.

"Securities Exchange Act" shall mean the Securities Exchange Act of 1934.

"Secretary" shall mean the Delaware Secretary of State.

"Separate Investments" shall mean the respective Underlying Investments specified in the respective Separate Series Operating Agreements.

"Separate Series Operating Agreement" shall have the meaning set forth in Section 2.01.

"Series" shall mean a designated series of Members, Managers or Limited Liability Company Interests established in accordance with this Operating Agreement and 6 Del.C. § 18-215 having separate rights, powers or duties with respect to Separate Investments or obligations or profits and losses associated with Separate Investments or obligations and, to the extent provided in this Operating Agreement or a Separate Series Operating Agreement.

"Share Classes" shall mean the same as Series.

"Subaccounts" shall have the meaning giving to it in Section 8.15.

"Subscription Agreement" shall mean the Last Atlantis Partners LLC, a Delaware Series Limited Liability Company, Subscription Agreement dated December 2005 and as amended, supplemented or updated from time to time.

"Tax Matters Partner" shall have the meaning set forth in Section 9.12.

"Trading Profits" shall mean gross trading profits less Fund Manager Asset Management Fees, execution fees, brokerage commissions, administrative expenses, and Underlying Investment Manager fees.

"Treasury Regulations" shall mean the income-tax regulations, including temporary regulations, promulgated under the Code, as such regulations may be amended from time to time (including corresponding provisions of superseding regulations).

"Underlying Investments" shall mean the Series' investment program.

"Underlying Investment Manager" shall mean the investment manager(s) of the Underlying Investments that a Series is invested into.

"Withdrawal and/or Reallocation Agreement" shall mean the Last Atlantis Partners LLC, a Delaware Series Limited Liability Company, Withdrawal and/or Reallocation Agreement dated December 2005 and as amended, supplemented or updated from time to time.

Section 1.02 - Headings:

The headings and subheadings in this Operating Agreement are included for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Operating Agreement or any provision hereof.

ARTICLE II
FORMATION OF COMPANY

Section 2.01 - Formation and Series Creation:

(a)     The Members hereby appoint Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company, as the Fund Manager for the Company, all Series of the Company, and all such Series that may, from time to time, be created in accordance with the terms of this Operating Agreement. The Members hereby authorize the Fund Manager to act as the sole Manager of the Company and all Series of the Company, whether formed or to be formed, and as the attorney-in-fact for all Members of the Company and Series of the Company, whether formed or to be formed.

(b)     The Members hereby authorize the Manager to execute and deliver a Certificate of Formation to the Secretary in accordance with and pursuant to the Act and to execute and deliver any documents necessary to register the Company as a foreign limited liability company.

(c)     The Members hereby agree to form the Company as a limited liability company under and pursuant to the provisions of the Act and agree that the rights, duties and liabilities of the Members shall be as provided in the Act, except as otherwise provided herein.

(d)     Upon their execution of this Operating Agreement, without the need for the consent or other action of any Person or the need for a Separate Series Operating Agreement, those Persons whose names appear on the signature page shall be admitted as Members of the Company not associated with any Series. In their capacities as Members not associated with any Series, such persons shall not make any Capital Contribution to the Company and shall have no Membership Interest (hereafter "Founders"). The Founders will, however, subsequently also become Members associated with one or more Series and, in those separate capacities, acquire Membership Interests associated with such Series and be required to make Capital Contributions to the Company with respect to any such Series, all in accordance with the terms of this Operating Agreement. The Founders, in their capacities as Members not associated with a Series, shall not acquire assets for or incur liabilities or other obligations with respect to the Company. The Company may

Page 14 of 106

acquire assets and incur liabilities or other obligations only to the extent that they are by the Company with respect to a Series and not with respect to the Company generally.

(e)     As established from time to time in accordance with this Operating Agreement, there may be designated additional Series having separate rights, powers or duties with respect to Separate Property or obligations or profits and losses associated with Separate Property or obligations and, to the extent provided in this Operating Agreement and a Separate Series Operating Agreement, and will have a separate business purpose and/or investment objective. A Member may be a member of one or more Series.

(f)     Without the need for the consent of any Person or Member, the Fund Manager may establish or terminate one or more additional Series as it may determine in its sole discretion. The terms of each additional Series shall be as set forth in this Operating Agreement and a separate agreement establishing such Series (the "Separate Series Operating Agreement") substantially in the forms of Exhibit A.1 – A.11 attached hereto. A Separate Series Operating Agreement must be executed by the Founders as Members associated with such Series. To the extent that a Separate Series Agreement conflicts with this Operating Agreement, this Operating Agreement shall control.

(g)     No debt, liability or obligation of a Series shall be a debt, liability or obligation of any other Series. The debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to a Series shall be enforceable against the assets of such Series only and not against any other assets of the Company generally or any other Series and none of the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to the Company generally or any other Series shall be enforceable against the assets of such Series. Separate and distinct records shall be maintained for each and every Series, and assets associated with any such Series shall be accounted for separately from the other assets of the Company, or any other Series of the Company. The Certificate of Formation shall contain notice of the limitation of liabilities of a Series as to other Series in conformity with §18-215 of the Act.

(h)     The Founders shall be deemed admitted as Members of the Company associated with a newly created Series, upon their execution of a counterpart signature page to the relevant Separate Series Operating Agreement.

(i)     The Fund Manager shall establish and maintain a record of the establishment of additional Series, the termination of any existing series and the admission of additional Members to the Company and additional Members associated with each Series.

Section 2.02 - Name:

The name of the Company shall be Last Atlantis Partners LLC, a Delaware Series Limited Liability Company. The business of the Company may be conducted upon compliance with all applicable laws under any other name designated by the Fund Manager.

Section 2.03 - Principal Place of Business:

 The principal place of business of the Company shall be:
  1212 Bjerge Gade
  Lower Level
  St. Thomas, USVI
  00802

 The Company may locate its places of business and registered office at any other place or places, as the Fund Manager may from time to time deem advisable.

Section 2.04 - Registered Office and Registered Agent:

 The Company's registered agent in the State of Delaware shall be Agents and Corporations, Inc. The Company's registered office in the State of Delaware shall be at the office of its registered agent:

  1201 Orange Street
  Suite 600
  Wilmington, Delaware
  19801

 At any time, as the Fund Manager may deem advisable, the registered office and registered agent of the Company may be changed by filing the address of the new registered office and/or the name of the new registered agent with the Secretary of State of the State of Delaware pursuant to the Act.

Section 2.05 - Term:

 The Company shall have perpetual existence unless the Company is earlier dissolved in accordance with the provisions of this Operating Agreement.

ARTICLE III
BUSINESS OF COMPANY

Section 3.01 - Business of Company:

 The business of the Company and of each Series shall be:

(a)   to transact any and all lawful business for which a limited liability company may be formed under the Act;

(b)   to invest the assets of each Series into unique Underlying Investments for capital appreciation. Such instruments are likely to include equities, debt instruments, swaps on interest rates and currencies, futures contracts on equity indices, interest rate instruments, currencies, and physical commodities, credit receivables, options on any of the foregoing, and inter-bank currency contracts. The markets that the Underlying Investments are likely to trade in include worldwide stock, options, and futures exchanges, over-the-counter (dealer) markets, and privately negotiated transactions. Some of the instruments

traded may be inherently leveraged, such as options and futures, while some Series may obtain non-recourse leverage through outside borrowing; and

(c)     to transact all business necessary, appropriate, advisable, convenient or incidental to any of the foregoing provisions.

The Company and each Series shall have the power to do any or all of the acts necessary, appropriate, advisable, incidental or convenient to or for the furtherance of the purposes and business described herein and for the protection or benefit of the Company and such Series. The Company and each Series shall have any or all of the powers that may be exercised on behalf of the Company or such Series by any Person.

ARTICLE IV
NAME AND ADMISSION OF MEMBERS

Section 4.01 - Members:

The Fund Manager shall maintain appropriate books and records detailing the respective names and addresses of the Members of the Company, the Members of each Series, and their respective Percentage Interest in ledger form.

Section 4.02 - Manager:

The Manager shall be called the Fund Manager.  The initial Manager of the Company, and each Series who shall serve until a successor is elected, shall be Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company.

Section 4.03 - Fund Manager:

The duly elected and qualified persons holding the office of Fund Manager shall be vested with the authority to act as and on behalf of the Company.

Section 4.04-Admission:

Additional Members maybe admitted to the Company, or Series of the Company, in the sole discretion of the Manager, effective at such time as may be permitted by the Manager, subject to such terms and conditions as the Manager may in its sole discretion determine.

Section 4.05 – Execution of Operating Agreement:

Each additional Person admitted as a Member of the Company, or to a Series of the Company, shall execute and deliver to the Company a counterpart of this Operating Agreement and any Separate Series Operating Agreement as appropriate either in person or by attorney-in-fact.

ARTICLE V
RIGHTS AND DUTIES OF MEMBERS AND MANAGERS

Section 5.01 - Management:

(a)     The business and affairs of the Company shall be vested in the Members of the Company in accordance with this Operating Agreement. The business and affairs of a Series shall be vested in the Members of that Series in accordance with this Operating Agreement. Notwithstanding the foregoing, the management of the Company or a Series shall be vested in the Fund Manager who shall be chosen in the manner provided for herein. A Manager need not be a Member. Only Members or Managers associated with a Series shall direct, manage and control the business and affairs of such Series.

(b)     Except as otherwise set forth in this Operating Agreement, the Manager shall have the sole and exclusive right to manage, control, and conduct the affairs of the Company and to do any and all acts on behalf of the Company (including, but not limited to, exercise of rights to elect to adjust the tax basis of Company assets and to revoke such elections and to make such other tax elections as the Manager shall deem appropriate).

(c)     No Member shall take part in the control or management of the affairs of the Company nor shall any Member have any authority to act for or on behalf of the Company except as is specifically permitted by this Operating Agreement.

Section 5.02 - Certain Powers of the Manager:

(a)     Without limiting the generality of Section 5.01, the Manager associated with such Series and/or the Company shall have power and authority, on behalf of such Series and/or the Company:

(i)     to invest the assets of a Series and/or Company in the Underlying Investment(s) as specified in the Confidential Private Placement Memorandum dated December 2005 and as amended, supplemented or updated from time to time and to enter into contracts with the Underlying Investment Managers;

(ii)    to borrow money for such Series and/or the Company from banks, other lending institutions, any Member (associated with such Series and/or the Company or otherwise), or affiliates of any Member (associated with such Series and/or the Company or otherwise), on such terms as the Manager associated with such Series and/or the Company deems appropriate, and in connection therewith, to hypothecate, encumber and grant security interests in the assets of such Series and/or the Company to secure repayment of the borrowed sums. No debt shall be contracted or liability incurred by or on behalf of any Series and/or the Company except by the Manager associated with such Series and/or the Company, or, to the extent permitted under the Act, this Operating Agreement and the Separate Series Operating Agreement, by agents or employees associated with such Series and/or the Company or the Manager associated with such Series and/or the Company expressly authorized by the Manager associated with such Series and/or the Company to contract such debt or incur such liability;

(iii)   to purchase liability and other insurance to protect the assets and business of the Series and/or the Company;

(iv) to hold and own such real and personal properties in the name of the Series and/or the Company as appropriate;

(v) to invest funds of such Series and/or the Company in time deposits, short-term governmental obligations, commercial paper or other investments;

(vi) to sell or otherwise dispose of all or substantially all of the assets of such Series and/or the Company as part of a single transaction or plan as long as such disposition is not in violation of or a cause of a default under any other agreement to which such Series and/or the Company may be bound;

(viii) to execute on behalf of such Series and/or the Company all instruments and documents, including, without limitation, checks; drafts; notes and other negotiable instruments; mortgages or deeds of trust; security agreements; financing statements; documents providing for the acquisition, mortgage or disposition of such Series and/or the Company's property, assignments, bills of sale, leases, and any other instruments or documents necessary, appropriate, convenient, advisable or incidental to the business of such Series and/or the Company;

(ix) to employ accountants, legal counsel, Underlying Investment Managers, managing agents, or other experts to perform services for the Series and/or the Company;

(x) to pay, collect, compromise, litigate, arbitrate, or otherwise adjust or settle any and all other claims or demands of or against such Series and/or the Company or to hold such proceeds against the payment of contingent liabilities;

(xi) to admit additional Members into the Company or into a Series of the Company subject to such terms and conditions as the Manager in its sole discretion determines;

(xii) to enter into any and all other agreements on behalf of the Series and/or the Company, as appropriate; and

(xiii) to do and perform all other acts as may be necessary, appropriate, convenient, advisable or incidental to the conduct of such Series and/or the Company's business.

(b) The Fund Manager, in his sole discretion and at a time that the Fund Manager deems advisable, may convert the Company to a master feeder structure as detailed in the Confidential Private Placement Memorandum dated December 2005 and as amended, supplemented or updated from time to time.

Section 5.03 - Liability for Certain Acts:

The Manager associated with a Series and/or the Company shall perform his or her duties as a Manager of the Series and/or the Company in good faith, in a manner it reasonably believes to be in the best interests of the Series and/or the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. The Manager associated with a Series and/or the Company shall not be liable to the Company, such Series, or to any other Member for any loss or damage sustained by the Company, such Series or such Member, unless the loss or damage shall have been the result of fraud, deceit, gross negligence, willful misconduct, or a wrongful taking by the Manager.

Section 5.04 - Managers Have No Exclusive Duty to Company or Series:

The Manager may engage in or possess an interest in other business ventures of any nature or description, independently or with others, similar or dissimilar to the business of the Company or any Series, and the Company, any Series and the Members shall have no rights by virtue of this Operating Agreement or any Separate Series Operating Agreement in and to such independent ventures or the income or profits derived there from, and the pursuit of any such venture, even if competitive with the business of the Company or any Series, shall not be deemed wrongful or improper.  The Manager shall not be obligated to present any particular investment opportunity to the Company or any Series even if such opportunity is of a character that, if presented to the Company or such Series, could be taken by the Company or such Series, and the Manager shall have the right to take for its own account (individually or as a partner or fiduciary) or to recommend to others any such particular investment opportunity.

Section 5.05 - Bank Accounts:

The Manager associated with a Series may from time to time open bank accounts in the name of the Company or such Series, (or in the name of a nominee) as appropriate, and the Manager associated with such Series shall be the only signatories thereon, unless the Manager associated with such Series determines otherwise.

Section 5.06 - Indemnity of the Manager, Employees and Other Agents:

(a)     To the fullest extent permitted by applicable law, the Fund Manager, its affiliates, and directors, governors, share holders, members, partners, officers, employees and agents, associated with such Series, any officers, directors, shareholders, partners, members, employees, representatives or agents of such Manager, or their respective affiliates, or any employee or agent of such Series (each, a "Covered Person") shall be entitled to indemnification from such Series for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company or such Series and in a manner reasonably believed to be within the scope of authority conferred on such Covered Person by this Operating Agreement and any Separate Series Operating Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of fraud, deceit, gross negligence, willful misconduct or a wrongful taking with respect to such acts or omissions, provided, however, that any indemnity under this Section 5.06 shall be provided out of and to the extent of the assets of the such Series only, and no Covered Person or any other Series shall have any personal liability on account thereof.

(b)     To the fullest extent permitted by applicable law, if the Manager associated with a Series approve, expenses (including legal fees) incurred by a Covered Person in defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by such Series prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by such Series of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 5.06.

(c)     A Series may purchase and maintain insurance, to the extent and in such amounts as the Manager associated with such Series shall deem reasonable, on behalf of Covered Persons and such other Persons as the Manager associated with such Series shall

determine, against any liability that may be asserted against or expenses that may be incurred by any such Person in connection with the activities of such Series or such indemnities, regardless of whether such Series would have the power to indemnify such Person against such liability under the provisions of this Operating Agreement. A Series may enter into indemnity contracts with Covered Persons and such other Persons as the Manager associated with such Series shall determine and adopt written procedures pursuant to which arrangements are made for the advancement of expenses and the funding of obligations under this Section 5.06 and containing such other procedures regarding indemnification as are appropriate.

Section 5.07 – Compensation and Expenses:

As compensation for Manager's services to be rendered pursuant to this Operating Agreement and the Separate Series Operating Agreement(s), and for so long as this Operating Agreement and the Separate Series Operating Agreement(s) is in force and effect, the Company shall pay to the Manager fees in accordance with the following fee arrangements:

(a) <u>Asset Management Fee</u>  The Asset Management Fee, calculated and billed monthly, without regard to whether the Series investment activities are profitable or whether the Series has achieved the High Water Mark, is equal to one twelfth of one percent (1/12 of 1%) of the "nominal account value" of each Series' assets as of the beginning of each Fiscal Period, including interest income earned in the account;

(b) <u>Performance Fee.</u>  The Performance Fee, calculated and billed monthly, is equal to ten percent (10%) of the increase, if any, in the "nominal account value", as defined herein, of each Series' assets as of the end of each Fiscal Period adjusting nominal account value for the purpose of calculating such fee by:

    (i)    including interest income earned by each Series;

    (ii)    adding back:

        (1)    the Performance Fees accrued or payable from each Series;

        (2)    any decline in the nominal account value of funds, which can be attributed to funds or notional equity withdrawn from each Series since the beginning of the Fiscal Period that immediately follows the last Fiscal Period month-end at which an Performance Fee was earned; and

        (3)    any withdrawals of funds from each Series;

    (iii)    deducting any additional funds contributed to each Series since the last Fiscal Period month-end at which a Performance Fee shall have been earned or, if no Performance Fee shall have been earned previously, since the beginning of the Fiscal Period over the greater of:

        (1)    the initial nominal account value of each Series as of the beginning of the Fiscal Period, or

        (2)    the nominal account value of each Series as of the beginning of the Fiscal Period that immediately follows the last Fiscal Period month-end at which a Performance Fee shall have been earned. For purposes of this section, the highest nominal account value of each Series as of the beginning of any previous Fiscal Period shall refer to the nominal account value achieved in the each Series governed by this Operating Agreement and each Series'

Separate Series Operating Agreement and shall not refer to any prior or other Series that Manager shall have managed or currently manages for the Company.

(c)    <u>Fee Payment Schedule</u>  Following the beginning of each Fiscal Period and no later than ten (10) business days after the beginning of each Fiscal Period, the Fund Manager shall prepare a written accounting of its Asset Management Fees for each Series and for each Member of each Series. Following the end of each Fiscal Period and no later than ten (10) business days after the end of each Fiscal Period, the Fund Manager shall prepare a written accounting of its Performance Fees for each Series and for each Member of each Series. The Manager shall be immediately paid all amounts due and owing to the Manager upon presentation of the above referenced invoices. An invoice shall be deemed correct and shall be conclusive and binding on the Company unless a written objection from the Company and/or from a Member of the Company and/or from a Member of a Series of the Company shall be received by the Manager within ten (10) business days after such invoice shall have been presented to the Company.

(d)    <u>Fee Wavier</u>  The Asset Management Fee and the Performance Fee shall not be based in any part on, or assessed against, the Capital Accounts (if any) of the Manager or of the Capital Accounts (if any) of any Member who is a shareholder, member, partner, director, officer, employee, or affiliate of the Manager.

(e)    <u>Expenses</u>

(i)    The Manager shall, at its own expense, furnish all office facilities, equipment and personnel necessary to discharge its responsibilities and duties under this Operating Agreement and shall pay travel expenses incurred by its employees and agents in the performance of its duties hereunder.

(ii)    In addition to the Management Fee and the Performance Fee, the Company shall pay all its costs and expenses, including, but not limited to:

(1)    all costs and expenses in connection with the purchase, holding, sale or exchange of securities or other assets (whether or not ultimately consummated), including, but not limited to, brokerage fees, private placement fees and finder's fees, interest on borrowed money, real or personal property taxes on investments, cost and expenses in connection with the registration of investments under applicable securities laws, and related legal, accounting and other fees and expenses;

(2)    all fees and expenses in connection with the maintenance of bank, brokerage or custodial accounts;

(3)    all legal, accounting, auditing, bookkeeping, tax return preparation and consulting fees and expenses;

(4)    all liability and other insurance premiums for insurance in which the Company is a named beneficiary;

(5)    all expenses in connection with meetings of and communications with Members;

(6)    all taxes applicable to the Company on account of it operations;

(7)    all costs and expenses arising out of the Company's indemnification obligations pursuant to this Operating Agreement;

(8)    all syndication and organizational cost, fees, and expenses in connection with the formation and organization of the Company, including without limitation legal and accounting fees and expenses incident thereto; and

(9)    all costs, fees, and expenses in connection with the liquidation of the Company and its assets pursuant to this Operating Agreement hereof.

Section 5.08 - Resignation:

The Manager of the Company may resign at any time by giving written notice to the Members of the Company.  The Manager of a Series may resign at any time by giving written notice to the Members of the Series.  The resignation of any Manager shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.  The resignation of a Manager who is also a Member shall not affect the Manager's rights as a Member and shall not constitute a withdrawal of a Member.

Section 5.09 - Removal:

At a meeting called expressly for that purpose, all or any lesser number of Managers of a Series may be removed at any time, with or without cause, by the unanimous decision of the Members and the Manager of that Series.  At a meeting called expressly for that purpose, all or any lesser number of Managers of the Company, but not applicable to the Series Managers, may be removed at any time, with or without cause, by the unanimous decision of the Members and the Manager of the Company.  The removal of a Manager who is also a Member shall not affect the Manager's rights as a Member and shall not constitute a withdrawal of a Member. Cause shall mean proven embezzlement, wrongful disclosure of Company's confidential information, or conviction of a felony adversely affecting the ability of the Manager to carry on his or her normal duties.

Section 5.10 - Vacancies:

Any vacancy occurring for any reason in the number of Managers of the Company may be filled by the affirmative vote of a majority of the remaining Managers then in office, provided that if there are no remaining Managers, the vacancy(ies) shall be filled by the affirmative vote of the Members owning more than fifty percent (50%) of the Percentage Interests in the Company.  Any vacancy occurring for any reason in the number of Managers of a Series may be filled by the affirmative vote of a majority of the remaining Company Managers, provided that if there are no remaining Managers, the vacancy(ies) shall be filled by the affirmative vote of the Members of such Series owning more than fifty percent (50%) of the Percentage Interests in the Series.  Any Manager's position to be filled by reason of an increase in the number of Managers shall be filled by the affirmative vote of a majority of the Managers then in office.  A Manager elected to fill a vacancy shall be elected and shall hold office until his or her successor shall be elected and shall qualify or until his or her earlier death, resignation or removal.  A Manager chosen to fill a position resulting from an increase in the number of Managers shall hold office until his or her successor shall be elected and shall qualify, or until his or her earlier death, resignation or removal.

## ARTICLE VI
### RIGHTS AND OBLIGATIONS OF MEMBERS

Section 6.01 - Limitation of Liability:

Except as otherwise provided in this Operating Agreement or the Act, the debts, obligations and liabilities of the Company or a Series, whether arising in contract, torts or otherwise, shall be solely the debts, obligations and liabilities of the Company or such Series, as the case may be, and no Member or Manager shall be obligated personally for any such debt, obligation or liability of the Company or such Series solely by reason of being a Member or Manager. Each Member shall nevertheless be liable for its obligations to make Capital Contributions pursuant to Section 8.01.

Section 6.02 - Company Books:

The Manager associated with a Series shall maintain and preserve, during the existence of such Series, the accounts, books and other relevant Series documents described in Section 9.10. Notwithstanding anything in this Operating Agreement to the contrary, separate and distinct records shall be maintained for each and every Series, and the assets associated with each Series shall be held and accounted for separately from the other assets of the Company or of any other Series.

Section 6.03 - Priority and Return of Capital:

Except as may be expressly provided in Article IX, no Member associated with a Series shall have priority over any other Member associated with such Series, either as to the return of Capital Contributions or as to Profits, Losses or distributions; provided that this Section 6.03 shall not apply to loans made to the Company by a Member with respect to a Series.

Section 6.04 - Liability of a Member to the Company:

A Member who receives a distribution from the Company with respect to a Series is liable to the Company with respect to such Series or to others only to the extent provided by the Act and other applicable law.

## ARTICLE VII
### MEETINGS OF MEMBERS

Section 7.01 - Meetings:

Meetings of the Members associated with a Series, for any purpose or purposes, may be called by the Manager or any Member(s) associated with such Series holding at least seventy-five percent (75%) of the Percentage Interests of such Series, but there shall be no requirement that there be an annual meeting.

Section 7.02 - Place of Meetings:

The Manager or any Member(s) associated with such Series holding at least seventy-five percent (75%) of the Percentage Interests of such Series may designate any place, either within or outside the State of Delaware, as the place of meeting for any meeting of the Members. If a designation is not made, or if a special meeting were otherwise called, the place of meeting shall be the principal place of business of the Company. Any meeting of the Members may also take place by teleconferencing so long as a quorum (as defined in Section 7.06 below) participate in the same.

Section 7.03 - Notice of Meetings:

Except as provided in Section 7.04, written notice stating the place, day and hour of the meeting and the purpose or purposes for which the meeting is called shall be delivered not less than five nor more than thirty days before the date of the meeting, either personally or by mail, by or at the direction of the Managers or Member calling the meeting, to each Member entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered two calendar days after being deposited in the United States mail, addressed to the Member at its address as it appears on the books of the Company, with postage thereon prepaid.

Section 7.04 - Meeting of All Voting Members:

If all the Members associated with a Series shall meet at any time and place, either within or outside the State of Delaware, or participate in a teleconference meeting, and consent to the holding of a meeting at such time and place or by teleconference, such meeting shall be valid without call or notice, and at such meeting lawful action may be taken.

Section 7.05 - Record Date:

For the purpose of determining Members entitled to notice of or to vote at any meeting of Members or any adjournment thereof, or Members entitled to receive payment of any distribution, or in order to make a determination of Members for any other purpose, the day immediately prior to the date on which notice of the meeting is mailed or the day immediately prior to the date on which the resolution declaring such distribution is adopted, as the case may be, shall be the record date for such determination of Members. When a determination of Members entitled to vote at any meeting of Members has been made as provided in this Section 7.05, such determination shall apply to any adjournment thereof.

Section 7.06 - Quorum:

Members associated with a Series holding at least two-thirds of all Percentage Interests of such Series, represented in person or by proxy, shall constitute a quorum at any meeting of Members associated with such Series. The Members associated with such Series present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal during such meeting of that number of Percentage Interests whose absence would cause less than a quorum.

Section 7.07 - Manner of Acting:

If a quorum is present, the affirmative vote of Members associated with a Series holding a Majority Interest in such Series shall be the act of the Members associated with such Series, unless the vote of a greater or lesser proportion or number is otherwise required by the Act or expressly by this Operating Agreement. Only Members associated with a Series may vote or consent upon any matter, and their vote or consent, as the case may be, shall be counted in the determination of whether the matter was approved by the Members associated with such Series.

Section 7.08 - Proxies:

At all meetings of Members associated with a Series, a Member associated with such Series may vote in person or by proxy executed in writing by the Member or by a duly authorized attorney-in-fact. Such proxy shall be filed with the Members associated with such Series before or at the time of the meeting.  No proxy shall be valid after eleven months from the date of its execution, unless otherwise provided in the proxy.  A proxy may only be given verbally during a meeting taking place by teleconferencing and shall expire at the termination of said teleconference.

Section 7.09 - Action by Members Without a Meeting:

Action required or permitted to be taken at a meeting of Members associated with a Series may be taken without a meeting and without prior notice if consents, whether oral or written, of Managers associated with such Series are received representing the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members of such Series were present and voted.

Section 7.10 - Waiver of Notice:

When any notice is required to be given to any Member, a waiver thereof in writing signed by the Member entitled to such notice, whether before, at, or after the time stated therein, or the participation in a teleconference meeting, shall be equivalent to the giving of such notice.

ARTICLE VIII
CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS

Section 8.01 - Members' Capital Contributions:

Each Member associated with a Series shall contribute to such Series the amount as is set forth in that Member's executed Subscription Agreement as its Initial Capital Contribution to the Company with respect to such Series.  The Manager may, but shall not be required to, contribute to the capital of the Company or the capital of a Series of the Company.  Subscription for Membership Interest are not open to the general public, are subject to the sole consent of the Manager, and maybe rejected in whole or in part by the Manager for any reason.

Section 8.02 - Additional Contributions or Loans:

No Member associated with a Series shall be required to make additional Capital Contributions or loans to the Company with respect to such Series. Not withstanding the forgoing, a Member in its sole discretion may make additional Capital Contribution to a Series, multiple Series, or the Company subject to the approval of the Manager.  To the fullest extent permitted by law, no third party, including creditors of the Company or of any Series, shall under any circumstances have any right to compel any actions or payments by the Members or the Manager of any Series.

Section 8.03 - Capital Accounts:

(a)     An individual Capital Account with respect to a Series shall be established and maintained for each Member associated with such Series. The original Capital Account established for any Member associated with such Series who acquires an interest in such Series by virtue of an assignment in accordance with the terms of this Operating

Agreement shall be in the same amount as, and shall replace, the Capital Account of the assignor of such interest, and, for purposes of this Operating Agreement, such Member shall be deemed to have made the Capital Contributions with respect to such Series made by the assignor of such interest (or made by such assignor's predecessor in interest). To the extent such Member acquires less than the entire interest in such Series of the assignor of the interest so acquired by such Member, the original Capital Account of such Member with respect to such Series and its Capital Contributions shall be in proportion to the interest it acquires, and the Capital Account of the assignor who retains a partial interest in such Series, and the amount of its Capital Contributions, shall be reduced in proportion to the interest he or it retains.

(b)     The Capital Account with respect to a Series of each Member associated with such Series shall be maintained in accordance with the following provisions:

(i)     to such Member's Capital Account with respect to such Series there shall be credited such Member's Capital Contributions with respect to such Series, such Member's distributive share of Profits with respect to such Series and the amount of any Company liabilities with respect to such Series that are assumed by such Member or that are secured by any Company assets associated with such Series that are distributed to such Member;

(ii)     to such Member's Capital Account with respect to such Series there shall be debited the amount of cash and the Gross Asset Value of any other Company assets associated with such Series that are distributed to such Member pursuant to any provision of this Operating Agreement, such Member's distributive share of Losses with respect to such Series and the amount of any liabilities of such Member that are assumed by the Company with respect to such Series or that are secured by any property contributed by such Member to the Company with respect to such Series; and

(iii)     in determining the amount of any liability for purposes of this Subsection (b), §752(c) of the Code and any other applicable provisions of the Code and the Treasury Regulations shall be taken into account.

(c)     Unless otherwise determined by the Manager in its sole discretion, the effective date of Initial Capital Contributions, additional Capital Contributions, and if applicable, the admission of additional Members to the Company or to a Series of the Company, shall be on the first day of each Fiscal Period.

Section 8.04 - Withdrawal or Reduction of Members' Contributions to Capital

(a)     A Member associated with a Series shall not receive from such Series any part of its Capital Contribution with respect to such Series until all liabilities of such Series (except liabilities to Members associated with such Series on account of their Capital Contributions to the Company with respect to such Series) have been satisfied (whether by payment or reasonable provision for payment thereof).

(b)     A Member, irrespective of the nature of its Capital Contributions with respect to a Series, has only the right to demand and receive cash in return for such Capital Contributions.

(c)     Subject to the limitations contained in this Section 8.04, each Member may withdraw all or any part of its Capital Account (subject to such minimum withdrawal requirements as

may be established from time to time by the Manager).  Any Member desiring to make a withdrawal from its Capital Account , no less than 45 days before the date on which such withdrawal is to be made, given written notice to the Company, or to the Series of the Company of such Member's intention to make such withdrawal and the amount of such withdrawal (or the manner in which the amount of such withdrawal is to be determined); provided, however, that the Manager, in its sole discretion, may waive such notice requirement to the withdrawing Member.

(d)     The Manager may withdraw all or any part of its Capital Account as of the last day of each Fiscal Period after allocations of Net Profits or Net Losses as of such date.

(e)     Except as provided in Section 8.4(f) and subject to acceleration in the sole discretion of the Manager, 90% of withdrawal proceeds shall be sent to the applicable Member within 45 business days following the effective date of such withdrawal and any balance shall be sent to such Member in 30 days after the completion of the Company's annual audit for the relevant year.  Withdrawal proceeds retained by the Manager pending completion of the Company's annual audit shall not accumulate interest and shall be not be maintained in such Member's Capital Account.

(f)     No Member may effect a withdraw from its Capital Account, other than with respect to a Complete Withdrawal, which reduces such Member's Capital Account balance below minimum initial Capital contribution amounts as may be established by the Manager in its sole discretion; proved, however, that the Manager may, in is sole discretion, waive minimum Capital Account balances with respect to certain Members.

(g)     Any fees or charges imposed by the Underlying Investments which are incurred by the Company as a result of withdrawal requests made by a withdrawing Member will be borne exclusively by such withdrawing Member and not the Company.

(h)     The Manager may, in its sole discretion, suspend the right of withdrawal or postpone the date of payment of withdrawal proceeds for any period during which;

(i).     Any stock exchange or over-the-counter market is closed or trading on such exchange or market is restricted or suspended;

(ii)     there exists a state of affairs such that it is not practicable or is seriously prejudicial to dispose of the Company's assets;

(iii)    limitations on withdrawal or redemption imposed by managers of the Underlying Investments in which makes it impracticable or seriously prejudicial to dispose of such assets; or

(iv)     a breakdown occurs in any of the means normally employed in ascertaining the value of Company assets or when for any other reason the value of such assets cannot be reasonably ascertained.

(i)     The Manager may require that a Member withdraw all or a portion of its Capital Account for any reason.

(j)     Capital Account withdrawals from the Company shall be in cash or, in the sole discretion of the Manager, in securities or other assets selected by the Manager, or partly in cash and partly in securities and/or other assets, as determined solely by the Manager.  If any withdrawal proceeds are paid in securities or other assets, such securities or other assets

shall be subject to such conditions and restrictions as the Manager reasonably determines are legally required or appropriate.

Section 8.05 - Company Interests:

(a)    Subject to the other provisions of the Operating Agreement (including those governing Members' respective rights to receive allocations of Net Profits and Net Losses and distributions of cash or other property, and to buy or sell interests), each interest shall have the rights, and be subject to the obligations, identical to those of each other interest of the same class and/or Series.

(b)    The aggregate number of Interests that the Company shall have authority to issue is One Thousand (1000) Units, consisting of all Voting Units and no Non-Voting Units. If any non-voting interests are later authorized by unanimous consent of Members, the Non-Voting interest holders although members, shall be passive, shall not have any power to vote, except as otherwise provided in this Operating Agreement or by law, and shall only obtain a purely economic interest in the Company or the particular Series.

Initial Unit Allocation:

Last Atlantis Capital Management LLC: 1000 (One Thousand) Units/Interests

(c)    Each Member's holdings of Units shall be evidenced by a book entry in the records of the Company.

Section 8.06 - Voting Units:

(a)    Subject to the other provisions of this Operating Agreement (including those governing the Members' respective rights to receive allocations of Net Profits and Net Losses and to buy or sell Units), each Voting Unit with respect to a Series shall have the rights, and be subject to the obligations, identical to those of each other Voting Unit.

(b)    The holders of Voting Units shall be entitled to one vote for each Voting Unit held at all meetings of Voting Members (and written actions in lieu of meetings), with no right to cumulative voting.

Section 8.07 - Series Ownership:

(a)    All Membership Interests in this Series shall be denominated in units where one unit equals one dollar (U.S.) in that Member's Capital Account. Each unit shall have one vote at all matters pertaining this Series. Each unit shall have the rights, and be subject to the obligations, identical to those of each other units of this Series.

(b)    Majority vote controls the Series governance.

Section 8.08 - Transfers Restricted:

No Member of a Series shall transfer all or any part of his Membership Interest, except as provided in this Article VIII of this Operating Agreement. In the event that a Member or a transferee of a Member violates any of the provisions of this Article VIII of this Operating Agreement, such transfer shall be null and void and of no force or effect.

Section 8.09 - "Transfer" Defined:

The term "transfer" shall mean and include any distribution, sale, transfer, assignment, gift, creation of an encumbrance, pledge, hypothecation, grant of a security interest, lien or other disposition, either with or without consideration, whether voluntary or involuntary, by operation of law or otherwise, including, without limitation, transfers incident to divorce or separation and all executions of legal process attaching to or affecting in any way the Company interest of a Member or a Member's beneficial interest therein. In addition to the foregoing, the following events shall be deemed transfers within the meaning of Article VIII of this Operating Agreement, which shall be subject to the terms and conditions imposed upon transfers:

(a)     In the case of a Member who is a natural person, his death or the entry by a court of competent jurisdiction adjudicating him incompetent to manage his person or his property;

(b)     In the case of a Member that is a trust, the termination of the trust;

(c)     In the case of a Member that is a partnership, the dissolution and commencement of winding up of the partnership;

(d)     In the case of a Member that is an estate, the distribution by the fiduciary of the estate's entire interest in the Company; and

(e)     In the case of a Member that is a corporation, the filing of a certificate of dissolution, or its equivalent, for the corporation or the revocation of its charter.

Section 8.10 - Transfer Not an Event of Dissolution:

Except as otherwise provided in Article X of this Operating Agreement, the transfer by a Member of a Series or of the Company of his Membership Interest shall not cause the dissolution or termination of the Company or the Series of the Company, and the business of the Company may be continued thereafter by and for the benefit of the remaining Members.

Section 8.11 - Permitted Transfers:

Notwithstanding anything contained in this Operating Agreement to the contrary, a Member shall have the right to transfer all or any part of his Membership Interest to another Member or to a transferee that bears one of the following relationships to the transferring Member: a spouse, a lineal descendant or a trust created for the exclusive benefit of the transferring Member, the transferring Member's spouse and/or the transferring Member's lineal descendant(s).

Section 8.12 - Percentage of Limitations or Transfers:

Notwithstanding any other provision of this Operating Agreement to the contrary, the Company shall not be required to recognize any transfer of a Company interest if the transfer, when considered with other transfers of Company interests made within the period of twelve (12) consecutive calendar months prior thereto, would constitute a sale or exchange of fifty percent (50%) or more of the total Company interest and result in the tax termination of the Company under Article 708(b) of the Internal Revenue Code of 1986, as amended.

Section 8.13 - Costs and Expenses of Transfer:

The Transferring Member shall pay all costs and expenses incurred by the Company in connection with any transfer of a Company interest pursuant to this Article VIII of this Operating Agreement and/or another person's becoming a Member of the Company or an assignee of a Member of the Company, including, but not limited to, all filing, recording and publishing costs and reasonable attorneys' fees and disbursements.

Section 8.14 - Admission of Transferee:

No Transferee other than one who is already a Member shall be admitted as a Member without the Managers consent.

Section 8.15 – Restricted Member

The Manager may also establish on the books of the Company or a Series of the Company one or more subaccounts (the "Subaccounts") to eliminate participation by a Member (a "Restricted Member) in the income or loss from a particular Investment (an "Excluded Investment" and collectively the "Excluded Investments") if the Manager determines in its sole discretion that the Restricted Member may not invest, directly or indirectly, in such Excluded Investment under applicable laws.  If Subaccounts are established by the Manager, the Manager shall allocate the net assets of the Company to the Members' Subaccounts in accordance with the Company Percentages of the Members, except that, for an Excluded Investment, the Restricted Member shall not receive any allocation of income, gain or loss, attributable to the Excluded Investment, and the income, gain, or loss attributable to the Excluded Investment shall be allocated among the Members other than the Restricted Members as provided in Section 9.02.  Once Subaccounts are established, the value of the Company's net assets will be calculated separately for each Member based upon the newest assets of the Investments allocated to each Member's Subaccount.

ARTICLE IX
ALLOCATIONS AND DISTRIBUTIONS

Section 9.01 - Profits and Losses:

(a)     Subject to the allocation rules of Section 9.02, Profits with respect to any Series for any Fiscal Year shall be allocated among the Members associated with such Series in proportion to such Members' Percentage Interests in such Series.

(b)     Subject to the allocation rules of Section 9.02, Losses with respect to any Series for any Fiscal Year shall be allocated among the Members associated with such Series in proportion to such Members' Percentage Interests in such Series.

Section 9.02 - Allocation Rules:

(a)     In the event Members are admitted to a Series pursuant to this Operating Agreement on different dates, the Profits (or Losses) allocated to the Members associated with such Series for each Fiscal Year during which such Members are so admitted shall be allocated among the Members associated with such Series in proportion to the Percentage Interest each such Member holds from time to time during such Fiscal Year in accordance with §706 of the Code, using any convention permitted by law and selected by the Manager in its sole discretion.

(b)     For purposes of determining the Profits, Losses or any other items with respect to any Series allocable to any period, Profits, Losses and any such other items shall be determined on a monthly basis, as determined by the Manager of each Series using any method that is permissible under §706 of the Code and the Treasury Regulations thereunder.

(c)     Except as otherwise provided in this Operating Agreement, all items of Company income, gain, loss, deduction and any other allocations with respect to a Series not otherwise provided for herein shall be divided among the Members associated with such Series in the same proportions as they share Profits and Losses with respect to such Series for the Fiscal Year in question.

(d)     The Members are aware of the income-tax consequences of the allocations made by this Article IX and hereby agree to be bound by the provisions of this Article IX in reporting their shares of Company income and loss for income-tax purposes.

(e)     Net Profits and Net Losses attributable to Excluded Investments shall be allocated among all Members that are not Restricted Members in proportion to their respective Percentage Interest in each Series in which a Restricted Member is a Member.

Section 9.03 - Tax Allocations; §704(c) of the Code:

(a)     In accordance with §704(c) of the Code and the Treasury Regulations thereunder, income, gain, loss and deduction with respect to any property contributed to the capital of the Company with respect to any Series shall, solely for income-tax purposes, be allocated among the Members associated with such Series so as to take account of any variation between the adjusted basis of such property to the Company for federal income-tax purposes and its initial Gross Asset Value (computed in accordance with Section 1.01 hereof).

(b)     In the event the Gross Asset Value of any Company asset associated with a Series is adjusted pursuant to Paragraph (ii) of the definition of "Gross Asset Value" contained in Section 1.01 hereof, subsequent allocations of income, gain, loss and deduction with respect to such asset and such Series shall take account of any variation between the adjusted basis of such asset for federal income-tax purposes and its Gross Asset Value in the same manner as under §704(c) of the Code and the Treasury Regulations thereunder.

(c)     Any elections or other decisions relating to allocations with respect to a Series under this Section 9.03 including the selection of any allocation method permitted under Treasury Regulation §1.704-3, shall be made by the Manager in such Series in any manner that

reasonably reflects the purpose and intention of this Operating Agreement. Allocations pursuant to this Section 9.03 are solely for purposes of federal, state and local taxes and shall not affect, or in any way be taken into account in computing, any Member's Capital Account with respect to any Series or share of Profits, Losses, other items or distributions pursuant to any provision of this Operating Agreement.

Section 9.04 - Distributable Cash:

Except as otherwise provided in Article XII hereof, any distribution of the Distributable Cash of any Series during any Fiscal Year shall be made to the Members associated with such Series in proportion to such Members' respective Percentage Interests in such Series.

Section 9.05 - Distribution Rules:

(a)     All distributions with respect to a Series pursuant to Section 9.04 shall be at such times and in such amounts as shall be determined in the sole discretion the Manager of such Series.

(b)     All amounts withheld pursuant to the Code or any provision of any state or local tax law with respect to any payment, distribution or allocation to the Company, or to a Series of the Company, or to the Members of the Company or to the Members of a Series of the Company shall be treated as amounts distributed to the Members of the Company or to the Members of a Series of the Company pursuant to this Article IX for all purposes of this Operating Agreement. The Manager is authorized to withhold from distributions, or with respect to allocations, to the Members of the Company or of a Series of the Company and to pay over to any federal, state or local government any amounts required to be so withheld pursuant to the Code or any provision of any other federal, state or local law and shall allocate such amounts to those Members with respect to which such amounts were withheld.

Section 9.06 - Limitation upon Distributions:

(a)     Notwithstanding any provision to the contrary contained in this Operating Agreement, the Company with respect to a Series shall not make any distribution to any Person on account of its interest in the Company with respect to such Series if such distribution would violate §18-215 or §18-607 of the Act or other applicable law.

(b)     The Members associated with a Series may base a determination that a distribution or return of contribution may be made under Section 9.06(a) in good-faith reliance upon a balance sheet and profit and loss statement of the Company with respect to such Series represented to be correct by the Person having charge of its books of account or certified by an independent public or certified public accountant or firm of accountants to fairly reflect the financial condition of the Company and such Series.

Section 9.07 - Accounting Method:

For both financial and tax-reporting purposes and for purposes of determining Profits and Losses, the books and records of the Company with respect to each Series shall be kept on the accrual method of accounting in a consistent manner and shall reflect all Company transactions with respect to such Series and be appropriate and adequate for the Company's business.

Section 9.08 - Interest on and Return of Capital Contributions:

No Member shall be entitled to interest on its Capital Contributions or interest on the return of its Capital Contributions due to a withdrawal.

Section 9.09 - Loans to Company:

Nothing in this Operating Agreement shall prevent any Member from making secured or unsecured loans to the Company or to any Series by agreement with the Company or such Series, as the case may be.

Section 9.10 - Records, Audits and Reports:

At the expense of the relevant Series, the Managers associated with such Series shall maintain separate and distinct records and accounts of the operations and expenditures of such Series. At a minimum, each Series shall keep at the principal place of business of the Company the following records:

(a)     true and full information regarding the status of the business and financial condition of such Series and the Company;

(b)     promptly after becoming available, a copy of the Company's federal, state and local income tax returns for each year;

(c)     the current list of the name and last known business, residence or mailing address of each Member associated with such Series;

(d)     a copy of the Subscription Agreement of each Member, this Operating Agreement, each Separate Series Operating Agreements and the Certificate of Formation, together with executed copies of any written powers of attorney pursuant to which this Operating Agreement, Separate Series Operating Agreements and the Certificate of Formation have been executed;

(e)     true and full information regarding the amount of cash and a description and statement of the NAV of any Underlying Investment;

(g)     minutes of every meeting held, if any;

(h)     any written consents obtained from Members associated with such Series for actions taken by such Members without a meeting; and

(i)     the Manager shall send to the Members, on or before March 15 of each year, un-audited financial statements for the prior Fiscal Year. Because the Company will be unable to issue it's year-end audited financial statements until it receives year-end statements from each Underlying Investment Manager, the Company is likely to issue it's annual audited financial statements approximately one hundred and twenty (120) days after the end of each Fiscal Year. In addition, the Manager shall send to the Members monthly un-audited financial information detailing the Members NAV in each Series of the Company that the Member is a member.

(j)     Members of the Company will receive a report on form K-1 summarizing the Members' allocable share of the Company's income, gain, and loss for each Fiscal Year. The Company will endeavor to issue the K-1 reports by March 31 of the following year, but because the Company must receive similar information from each Underlying Investment Manager; there is no assurance the Company will be able to do so in a timely manner.

## Section 9.11 - Returns and Other Elections:

The Managers shall cause the preparation and timely filing of all tax returns required to be filed by the Company pursuant to the Code and all other tax returns deemed necessary and required in each jurisdiction in which the Company does business. Copies of such returns, or pertinent information there from, shall be furnished to the Members within a reasonable time after the end of the Company's Fiscal Year. All elections permitted to be made by the Company under federal or state laws shall be made by the Managers in their sole discretion.

## Section 9.12 - Tax Matters Partner:

(a)     Last Atlantis Capital Management LLC is hereby designated as the initial "Tax Matters Partner" of the Company for purposes of §6231(a)(7) of the Code and shall have the power to manage and control, on behalf of the Company, any administrative proceeding at the Company level with the Internal Revenue Service relating to the determination of any item of Company income, gain, loss, deduction or credit for federal income-tax purposes.

(b)     The Tax Matters Partner shall, within ten (10) days of the receipt of any notice from the Internal Revenue Service in any administrative proceeding at the Company level relating to the determination of any Company item of income, gain, loss, deduction or credit, mail a copy of such notice to each Member.

## Section 9.13 - Right to Make §754 Election:

The Manager may make or revoke, on behalf of the Company, an election in accordance with §754 of the Code, so as to adjust the basis of Company property in the case of a distribution of property within the meaning of §734 of the Code, and in the case of a transfer of a Company interest within the meaning of §743 of the Code. Each of the Members shall supply the information necessary to give effect to such an election.

In the case of a transfer of a Membership Interest on the death of a Member of a Series or of the Company, the basis of the Series' property or Company's property shall be adjusted in the manner provided in Code §743 and the Series or the Company shall file such information as may be required by the Regulations to report a Code §754 election. In any other case to which the elections under Code §734 and Code §743 may apply, the Managers shall make such determination from time to time.

## Section 9.14 - Tax Classification:

It is the intention of the parties hereto that the Company be classified as a partnership, and not as an association taxable as a corporation, for federal income-tax purposes, and the provisions of this Operating Agreement shall be interpreted in a manner consistent with such intention. No election shall be filed with the Internal Revenue Service (or the tax authorities of any State) to have the Company taxable other than as a partnership for income-tax purposes without the prior consent of all Members.

ARTICLE X
TRANSFERABILITY

Section 10.01 - Transfer:

Except as provided below, to the fullest extent permitted by law, a Person may not assign, distribute, hypothecate, pledge, recognize, sell or transfer any Membership Interest in a Series or the Company to any other Person, except with the express written consent of the Manager associated with such Series or the Company, as the case may be. A transferee may be admitted as a Member of any Series or the Company only upon compliance with Section 11.01 and express written consent of the Manager. A Member may, without consent, transfer its interest in a Series of the Company to a revocable trust for the primary benefit of the Member's family, of which the transferor is the Donor and a Trustee thereof. The transferor's family shall mean the Member's then-current spouse and the Member's lineal descendants. Any transfer, other than a transfer permitted under this Section, shall be considered an assignment of the Member's interest.

ARTICLE XI
ISSUANCE AND TRANSFERS OF MEMBERSHIP INTERESTS

Section 11.01 - Additional Members and Assignees:

(a)     In addition to the admission to the Company of Members pursuant to Section 2.01, in the sole discretion of the Manager of a Series, a Person may be admitted to the Company or to the Series of a Company as a Member either:

(i)     by the issuance by the Series, of Membership Interests in consideration for the Persons Initial Capital Contribution;

(ii)     or, as a transferee of a Member's Membership Interest or any portion thereof, subject to the terms and conditions of this Operating Agreement and any Separate Series Operating Agreement.

A Person who is either issued a Membership Interest for a Series or who receives by transfer a Membership Interest for a Series and who has received the approval of the Manager of such Series pursuant to this Section 11.01 shall be admitted to the Company as a Member associated with such Series upon its execution of a counterpart to this Operating Agreement and a counterpart to a Separate Series Agreement for such Series.

(b)     Any Person receiving a Membership Interest in a Series pursuant to Section 10.01 that is not admitted as a Member associated with such Series pursuant to this Section 11.01 whether by failing to receive Manager's approval with respect to such admission, or by failing to execute a counterpart to this Operating Agreement and a counterpart to a Separate Series Agreement or otherwise) shall be deemed to be a mere assignee of a Membership Interest associated with such Series. Unless otherwise admitted to the Company as a Member pursuant to this Operating Agreement, an assignee of a Membership Interest has no voting or other management rights with respect to the Company or any Series.

Section 11.02 - Retroactive Allocations:

No additional Members or assignees of Membership Interests shall be entitled to any retroactive allocation of the Company's income, gains, losses, deductions, credits or other items; provided that, subject to the restrictions of §706(d) of the Code, additional Members and assignees of Membership Interests shall be entitled to their respective shares of the Company's income, gains, losses, deductions, credits and other items arising under contracts entered into before the effective date of the issuance or transfer of Membership Interests to the extent that such income, gains, losses, deductions, credits and other items arise after such effective date. To the extent consistent with §706(d) of the Code and Treasury Regulations promulgated thereunder, the Company's books may be closed at the time Membership Interests are issued or transferred (as though the Company's taxable year had ended) or the Company may credit to additional Members and assignees of Membership Interests pro rata allocations of the Company's income, gains, losses, deductions, credits and items for that portion of the Company's Fiscal Year after the effective date of the issuance or transfer of the Membership Interests.

### ARTICLE XII
### TERMINATION OF SERIES;
### DISSOLUTION AND TERMINATION OF THE COMPANY

Section 12.01 - Dissolution of the Company:

(a)     The Company shall be dissolved upon the occurrence of either of the following events:

   (i)     by the decision of the Manager; or
   (ii)     upon the entry of decree of judicial dissolution under §18-802 of the Act.

(b)     The death, retirement, resignation, expulsion, bankruptcy or dissolution of any Member or the occurrence of any event that terminates the continued membership of any Member in the Company shall not in and of itself cause dissolution of the Company.

(c)     If a Member who is an individual dies or a court of competent jurisdiction adjudges him to be incompetent to manage his person or his property, the Member's executor, administrator, guardian, conservator, or other legal representative may exercise all of the Member's rights for the purpose of settling his estate or administering his property. If a Member is an Entity and is dissolved or terminated, the powers of that Member may be exercised by its legal representative or successor.

Section 12.02 - Termination of a Series:

(a)     A Series shall be terminated upon the occurrence of any of the following events:

   (i)     upon the dissolution of the Company;
   (ii)     by the sole decision of the Manager;
   (iii)     or upon the entry of a decree of judicial termination under §18-215 of the Act.

(b)     The termination and winding up of a Series shall not cause dissolution of the Company (even if there are no remaining Series) or the termination of any other Series. The

termination of a Series shall not affect the limitation on liabilities of such Series or any other Series provided by this Operating Agreement and the Act.

**Section 12.03 - Winding Up, Liquidation and Distribution of Assets of a Series Upon Termination of Such Series:**

    (a)    Upon termination of a Series, an accounting shall be made of the accounts of the Company with respect to such Series and of the assets, liabilities and operations associated with such Series, from the date of the last previous accounting until the date of such termination. The Managers associated with such Series shall immediately proceed to wind up the affairs of such Series.

    (b)    If a Series is terminated and its affairs are to be wound up, the Managers associated with such Series shall:

        (i)    Sell or otherwise liquidate all of the assets of such Series as promptly as practicable (except to the extent such Managers may determine to distribute any assets to the Members in kind);

        (ii)    Allocate any Profits or Losses resulting from such sales to the respective Capital Accounts of the Members associated with such Series in accordance with Article IX hereof;

        (iii)    Satisfy (whether by payment or reasonable provision for payment thereof) all liabilities of the Company with respect to such Series, including liabilities to Members who are creditors, to the extent otherwise permitted by law, other than liabilities to Members for distributions (for purposes of determining the Capital Accounts of the Members associated with such Series, the amounts of any Reserves created in connection with the liquidation of such Series shall be deemed to be an expense of the Company with respect to such Series); and

        (iv)    Distribute the remaining assets of such Series to the Members associated with such Series in accordance with their Capital Account balances after giving effect to all contributions, distributions, and allocations for all periods.

    (c)    Notwithstanding anything to the contrary in this Operating Agreement, if upon the termination and liquidation of any Series, any Member associated with such Series has a deficit balance in his, her or its Capital Account associated with such Series (after giving effect to all contributions, distributions, allocations and other Capital Account adjustments for all taxable years, including the year during which such termination and liquidation occurs), such Member shall have no obligation to make any Capital Contribution, or otherwise restore the deficit balance in such Members'' Capital Account associated with such Series, and such deficit Capital Account balance shall not be considered a debt owed by such Member to the Company with respect to such Series or otherwise, to any other Member or to any other Person for any purpose whatsoever.

    (d)    The Members associated with a Series shall comply with all requirements of applicable law pertaining to the winding up of the affairs of the Company with respect to such Series and the final distribution of its assets.

**Section 12.04 - Winding Up, Liquidation and Distribution of Assets of the Company Upon Dissolution of the Company:**

Upon the dissolution of the Company pursuant to Section 12.01, the Company shall be wound up by winding up each Series in the manner contemplated by Section 12.03, except that, for purposes of Section 12.03(b)(iv), the separate Capital Accounts of each Member associated with more than one Series shall be combined into a single Capital Account of such Member.

Section 12.05 - Certificate of Cancellation:

If a dissolution of the Company occurs and all debts, liabilities and obligations of the Company, whether or not associated with any Series, have been satisfied (whether by payment or reasonable provision for payment) and all of the remaining property and assets of the Company, whether or not associated with any Series, have been distributed, a certificate of cancellation as required by the Act shall be jointly executed and filed by the members of the Company, as authorized persons, within the meaning of the Act, with the Secretary.

Section 12.06 - Effect of Filing Certificate of Cancellation:

Upon the filing of a certificate of cancellation with the Secretary, pursuant to Section 12.05, the existence of the Company shall cease.

Section 12.07 - Returns of Contributions Non-recourse to Other Members:

Except as otherwise provided by applicable laws, upon termination of a Series, each Member associated with such Series shall look solely to the assets of such Series for the return of its Capital Contributions made with respect to such Series, and if the assets of such Series remaining after payment of or due provision for the debts and liabilities of the Company with respect to such Series are insufficient to return such Capital Contributions, such Members shall have no recourse against any other Series, the Company or any other Member, except as otherwise provided by law.

ARTICLE XIII
MISCELLANEOUS PROVISIONS

Section 13.01 - Notices:

Notices. Any notice, request, demand or other communication required by or permitted to be given in connection with this Operating Agreement shall be in writing, except as expressly otherwise permitted herein, and shall be delivered in person, and/or sent by first class mail (postage prepaid and certified or registered, with return receipt requested), and/or sent by facsimile or similar means of communication, and/or delivered by a courier service (charges prepaid), to the respective party at its address as set forth on the signature page to this Agreement. Each party may change its address by notifying each other party of such change. Any such notice, request, demand or other communication shall be deemed to be given:

    (a)    when received, if personally delivered;

    (b)    if mailed, on the third business day after it is deposited in the United States mail, properly addressed, with proper postage affixed;

    (c)    if sent by facsimile or similar device, when electronically confirmed; and if sent by courier service, 24 hours after shipped by such courier service; provided, however, that any notice to the Company all be effective only if and when received by the Company.

Section 13.02 - Binding Effect:

This Operating Agreement is binding upon and inures to the benefit of the Members, and, to the extent permitted by this Operating Agreement, their respective legal representatives, successors and assigns.

Section 13.03 - Remedies for Breach:

The Membership Interests are unique chattels, and each party to this Operating Agreement shall have the remedies that are available to it for the violation of any of the terms of this Operating Agreement, including, but not limited to, the equitable remedy of specific performance (except as otherwise provided by this Operating Agreement).

Section 13.04 - Governing Law:

This Operating Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of Delaware, and all rights and remedies shall be governed by such laws without regard to principles of conflict of laws.

Section 13.05 - Waiver of Action for Partition:

Each Member irrevocably waives during the term of the Company any right that it may have to maintain any action for partition with respect to the property of the Company or any Series.

Section 13.06 - Amendments:

This Operating Agreement may not be amended except in writing by the Manager associated with each Series. Any amendment changing the Percentage Interest needed under this Section 13.06 to amend this Operating Agreement requires the majority vote of the Members.

Section 13.07 - Execution of Additional Instruments:

Each Member hereby agrees to execute such other and further statements of interest and holdings, designations and other instruments necessary to comply with any laws, rules or regulations.

Section 13.08 - Construction:

Whenever the singular number is used in this Operating Agreement and when required by the context, the same shall include the plural and vice versa, and the masculine gender shall include the feminine and neuter genders and vice versa.

Section 13.09 - Waivers:

The failure of any party hereto to seek redress for default of or to insist upon the strict performance of any covenant or condition of this Operating Agreement shall not prevent a subsequent act, which would have originally constituted a default, from having the effect of an original default.

Section 13.10 - Rights and Remedies Cumulative:

The rights and remedies provided by this Operating Agreement are cumulative, and the use of any right or remedy by any party hereto shall not preclude or waive the right to use any other remedy. Said rights and remedies are given in addition to any other legal rights the parties hereto may have.

Section 13.11 - Severability:

If any provision or term of this Operating Agreement is found to be invalid, void or unenforceable, the remainder of the provisions of this Operating Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated. It is the intent of the parties hereto for the terms and conditions of this Operating Agreement to be interpreted to the greatest extent possible so as to remain valid and enforceable, and any provision or term of this Operating Agreement found by a court to be invalid, void or unenforceable, shall be rewritten by the court pursuant to this intent.

Section 13.12 - Creditors:

None of the provisions of this Operating Agreement shall be for the benefit of or enforceable by any creditors of:

        (a)      the Company;

        (b)      any Series of the Company;

        (c)      any Member;

        (d)      or any Manager.

Section 13.13 - Counterparts:

This Operating Agreement may be signed in multiple counterparts, all of which should be deemed an original and shall constitute one instrument.

Section 13.14 - Integration:

This Operating Agreement constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining thereto.

[Remainder of Page Intentionally Left Blank.
Signature Page Follows.]

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below.

**Initial Member:**                                    **Manager:**

Signed:/S Last Atlantis Capital Management LLC          Signed: /S Last Atlantis Capital Management LLC

Name: Last Atlantis Capital Management LLC              Name: Last Atlantis Capital Management LLC

Title: Initial Member                                  Title: Fund Manager

Date: December 01, 2005                                 Date: December 01, 2005

Entity: Last Atlantis Capital Management LLC            Entity: Last Atlantis Capital Management LLC

Street: 1212 Bjerge Gade, Lower Level                  Street: 1212 Bjerge Gade, Lower Level

City, State, Zip: St. Thomas, USVI 00802               City, State, Zip: St. Thomas, USVI 00802

Phone: (340) 777-5170                                  Phone: (340) 777-5170

Facsimile: (340) 777-5170                              Facsimile: (340) 777-5170

Email: info@lacm-usvi.com                              Email: info@lacm-usvi.com

**Member:**

Signed:_____

Name: _____

Title: _____

Date: December 01, 2005

Entity: Last Atlantis Capital Management LLC

Street: 1212 Bjerge Gade, Lower Level

City, State, Zip: St. Thomas, USVI 00802

Phone: (340) 777-5170

Facsimile: (340) 777-5170

Email: info@lacm-usvi.com

**Exhibit A.1**

**Amended and Restated
Separate Series Operating Agreement**

April 10, 2006

# Last Atlantis Partners LLC,

**a Delaware Series Limited Liability Company**

**LACM Split Strike Conversion, Share Class A**

## Amended and Restated
## Separate Series Operating Agreement

### April 10, 2006

# Last Atlantis Partners LLC
# LACM Split Strike Conversion, Share Class A
#### a Delaware Series Limited Liability Company

THE INTERESTS HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE. THE INTERESTS ARE BEING OFFERED PURSUANT TO EXEMPTIONS PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT, REGULATION D THEREUNDER, CERTAIN STATE SECURITIES LAWS AND CERTAIN RULES PROMULGATED PURSUANT THERETO. THE INTERESTS MAY NOT BE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR (UNLESS WAIVED BY THE FUND MANAGER IN ITS SOLE DISCRETION) AN OPINION OF COUNSEL ACCEPTABLE TO THE FUND'S MANAGER THAT SUCH REGISTRATION IS NOT REQUIRED. TRANSFERABILITY OF THE INTERESTS IS FURTHER RESTRICTED BY THE TERMS OF THIS OPERATING AGREEMENT. THE INTERESTS HAVE NOT BEEN RECOMMENDED OR APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

PURSUANT TO AN EXEMPTION FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS WHOSE PARTICIPANTS ARE LIMITED TO QUALIFIED ELIGIBLE PARTICIPANTS, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION. THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

THE INTERESTS OFFERED HEREBY INVOLVE A HIGH DEGREE OF RISK. SEE "THE FUND - FUND OBJECTIVE", "RISK FACTORS" AND "CONFLICTS OF INTEREST" IN THE CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM.

*Any inquiries should be directed to:*
Last Atlantis Capital Management LLC
1212 Bjerge Gade, Lower Level, St. Thomas, USVI 00802
Phone: (340) 777-5170
Email: **info@lacm-usvi.com**

**AMENDED AND RESTATED
SEPARATE SERIES OPERATING AGREEMENT**

of

# LAST ATLANTIS PARTNERS, LLC
## LACM SPLIT STRIKE CONVERSION, SHARE CLASS A

This Separate Series Operating Agreement is made and entered into, and is effective as of this 1st day of December, 2005, by and between Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company, as the Initial Member of this newly created Series and Last Atlantis Capital Management LLC as a Founder and a Member of the Company and Last Atlantis Capital Management LLC as the Manager of the Company and each other Person who execute a counterpart of this Operating Agreement, personally or by attorney-in-fact and is or will be admitted to the Company as a Member of the this Series.

RECITALS

WHEREAS, the parties hereto have heretofore formed a limited liability company pursuant to the Delaware Limited Liability Company Act by filing a Certificate of Formation of the Company with the office of the Secretary of the State of Delaware and by entering into the Operating Agreement; and

WHEREAS, it is intended by the parties hereto to create this additional Series with respect to a Separate Investment Share Class; and

WHEREAS, it is intended by the parties hereto that the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to this Series and the Separate Investment be enforceable against the assets of this Series and the Separate Investments only, and not against the assets of the Company generally or any other Series thereof; and

NOW THEREFORE, in consideration of the mutual promises and obligations contained herein, the parties, intending to be legally bound, hereby agree as follows:

1. <u>New Series</u>. In accordance with Section 2.01 of the Operating Agreement, the Founders hereby create this Series, which shall be a separate "Series" for purposes of the Operating Agreement. The purpose of this Series shall be limited to making the Separate Investment as detailed in the Confidential Private Placement Memorandum and as amended, supplemented or updated from time to time.

2. <u>Name of New Series</u>. The name of the New Series created by this Separate Series Operating Agreement shall be LACM Split Strike Conversion, Share Class A.

3. <u>Manager.</u> The Manager shall be called the Fund Manager. The initial Manager of this Series and who shall serve until a successor is elected, shall be Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company.

4. <u>Fund Manager.</u> The duly elected and qualified persons holding the office of Fund Manager shall be vested with the authority to act as and on behalf of the Company.

5. <u>Management.</u> The business and affairs of this Series shall be vested in the Members of this Separate Series in accordance with this Separate Series Operating Agreement. Notwithstanding the foregoing, the management of this Series shall be vested in the Manager. A Manager need not be a Member. Only Members or Managers associated with this Series shall direct, manage and control the business and affairs of this Series.

6. <u>Members.</u> The initial Members of this Series shall be as set forth on the signature page of this Separate Series Operating Agreement and additional Members may be admitted at the sole discretion of the Fund Manager. The Series Membership Interests represents Interests only in this Series and not in the Company.

7. <u>Voting Units.</u> All Membership Interests in this Series shall be denominated in units where one unit equals one dollar (U.S.) in that Member's Capital Account. Each unit shall have one vote at all matters pertaining this Series. Each unit shall have the rights, and be subject to the obligations, identical to those of each other units of this Series. Majority vote controls the Series governance. However in all circumstances that overriding provisions in this Separate Series Operating Agreement and/or the Operating Agreement shall govern.

8. <u>Capitalized Terms.</u> Capitalized terms used herein and not otherwise defined are used as defined in the Operating Agreement of the Company, and as amended, supplemented or updated from time to time.

9. <u>Agreement to be Bound</u>. Each of the undersigned agrees to be bound by the terms and provisions of this Separate Series Operating Agreement and the Operating Agreement.

10. <u>Headings</u>. The headings in this Separate Series Operating Agreement are included for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent, or intent of this Separate Series Operating Agreement or any provision hereof.

11. <u>Severability</u>. The invalidity or unenforceability of any particular provision of this Separate Series Operating Agreement shall not affect the other provisions hereof, and this Separate Series Operating Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.

12. <u>Integration</u>. This Separate Series Operating Agreement and the Operating Agreement constitute the entire agreement among the parties hereto pertaining to the subject matter hereof and supersede all prior agreements and understandings pertaining thereto.

13. <u>Counterparts</u>. This Separate Series Operating Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document. All counterparts shall be construed together and shall constitute one instrument.

14. <u>Governing Law</u>. This Separate Series Operating Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of Delaware, and all rights and remedies shall be governed by such laws without regard to principles of conflict of laws.

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below.

**Initial Member and Founder:**                    **Manager:**

Signed:/S Last Atlantis Capital Management LLC      Signed: /S Last Atlantis Capital Management LLC

Name: Last Atlantis Capital Management LLC          Name: Last Atlantis Capital Management LLC

Title: Initial Member                               Title: Fund Manager

Date: December 01, 2005                             Date: December 01, 2005

Entity: Last Atlantis Capital Management LLC        Entity: Last Atlantis Capital Management LLC

Street: 1212 Bjerge Gade, Lower Level               Street: 1212 Bjerge Gade, Lower Level

City, State, Zip: St. Thomas, USVI 00802            City, State, Zip: St. Thomas, USVI 00802

Phone: (340) 777-5170                               Phone: (340) 777-5170

Facsimile: (340) 777-5170                           Facsimile: (340) 777-5170

Email: info@lacm-usvi.com                           Email: info@lacm-usvi.com

**Member:**

Signed:_____

Name: _____

Title: _____

Date: _____

Entity: _____

Street:_____

City, State, Zip:_____

Phone:_____

Facsimile:_____

Email:_____

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS]**

**Exhibit A.2**

**Amended and Restated
Separate Series Operating Agreement**

April 10, 2006

# Last Atlantis Partners LLC,

**a Delaware Series Limited Liability Company**

**LACM High Yield, Share Class B**

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS]**

**Exhibit A.3**

**Amended and Restated
Separate Series Operating Agreement**

April 10, 2006

# Last Atlantis Partners LLC,
a Delaware Series Limited Liability Company

**LACM Legacy, Share Class C**

**Amended and Restated
Separate Series Operating Agreement**

**April 10, 2006**

# Last Atlantis Partners LLC
# LACM Legacy, Share Class C

**a Delaware Series Limited Liability Company**

THE INTERESTS HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE. THE INTERESTS ARE BEING OFFERED PURSUANT TO EXEMPTIONS PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT, REGULATION D THEREUNDER, CERTAIN STATE SECURITIES LAWS AND CERTAIN RULES PROMULGATED PURSUANT THERETO. THE INTERESTS MAY NOT BE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR (UNLESS WAIVED BY THE FUND MANAGER IN ITS SOLE DISCRETION) AN OPINION OF COUNSEL ACCEPTABLE TO THE FUND'S MANAGER THAT SUCH REGISTRATION IS NOT REQUIRED. TRANSFERABILITY OF THE INTERESTS IS FURTHER RESTRICTED BY THE TERMS OF THIS OPERATING AGREEMENT. THE INTERESTS HAVE NOT BEEN RECOMMENDED OR APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

PURSUANT TO AN EXEMPTION FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS WHOSE PARTICIPANTS ARE LIMITED TO QUALIFIED ELIGIBLE PARTICIPANTS, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION. THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

THE INTERESTS OFFERED HEREBY INVOLVE A HIGH DEGREE OF RISK. SEE "THE FUND - FUND OBJECTIVE", "RISK FACTORS" AND "CONFLICTS OF INTEREST" IN THE CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM.

*Any inquiries should be directed to:*
Last Atlantis Capital Management LLC
1212 Bjerge Gade, Lower Level, St. Thomas, USVI 00802
Phone: (340) 777-5170
Email: **info@lacm-usvi.com**

**AMENDED AND RESTATED**
**SEPARATE SERIES OPERATING AGREEMENT**

**of**

# LAST ATLANTIS PARTNERS, LLC
**LACM LEGACY, SHARE CLASS C**

This Separate Series Operating Agreement is made and entered into, and is effective as of this 1st day of December, 2005, by and between Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company, as the Initial Member of this newly created Series and Last Atlantis Capital Management LLC as a Founder and a Member of the Company and Last Atlantis Capital Management LLC as the Manager of the Company and each other Person who execute a counterpart of this Operating Agreement, personally or by attorney-in-fact and is or will be admitted to the Company as a Member of the this Series.

<u>RECITALS</u>

WHEREAS, the parties hereto have heretofore formed a limited liability company pursuant to the Delaware Limited Liability Company Act by filing a Certificate of Formation of the Company with the office of the Secretary of the State of Delaware and by entering into the Operating Agreement; and

WHEREAS, it is intended by the parties hereto to create this additional Series with respect to a Separate Investment Share Class; and

WHEREAS, it is intended by the parties hereto that the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to this Series and the Separate Investment be enforceable against the assets of this Series and the Separate Investments only, and not against the assets of the Company generally or any other Series thereof; and

NOW THEREFORE, in consideration of the mutual promises and obligations contained herein, the parties, intending to be legally bound, hereby agree as follows:

1. <u>New Series</u>. In accordance with Section 2.01 of the Operating Agreement, the Founders hereby create this Series, which shall be a separate "Series" for purposes of the Operating Agreement. The purpose of this Series shall be limited to making the Separate Investment as detailed in the Confidential Private Placement Memorandum and as amended, supplemented or updated from time to time.

2. <u>Name of New Series</u>. The name of the New Series created by this Separate Series Operating Agreement shall be LACM Legacy, Share Class C.

3. <u>Manager.</u> The Manager shall be called the Fund Manager. The initial Manager of this Series and who shall serve until a successor is elected, shall be Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company.

4. <u>Fund Manager.</u> The duly elected and qualified persons holding the office of Fund Manager shall be vested with the authority to act as and on behalf of the Company.

5. <u>Management.</u> The business and affairs of this Series shall be vested in the Members of this Separate Series in accordance with this Separate Series Operating Agreement. Notwithstanding the foregoing, the management of this Series shall be vested in the Manager. A Manager need not be a Member. Only Members or Managers associated with this Series shall direct, manage and control the business and affairs of this Series.

6. <u>Members.</u> The initial Members of this Series shall be as set forth on the signature page of this Separate Series Operating Agreement and additional Members may be admitted at the sole discretion of the Fund Manager. The Series Membership Interests represents Interests only in this Series and not in the Company.

7. <u>Voting Units.</u> All Membership Interests in this Series shall be denominated in units where one unit equals one dollar (U.S.) in that Member's Capital Account. Each unit shall have one vote at all matters pertaining this Series. Each unit shall have the rights, and be subject to the obligations, identical to those of each other units of this Series. Majority vote controls the Series governance. However in all circumstances that overriding provisions in this Separate Series Operating Agreement and/or the Operating Agreement shall govern.

8. <u>Capitalized Terms.</u> Capitalized terms used herein and not otherwise defined are used as defined in the Operating Agreement of the Company, and as amended, supplemented or updated from time to time.

9. <u>Agreement to be Bound</u>. Each of the undersigned agree to be bound by the terms and provisions of this Separate Series Operating Agreement and the Operating Agreement.

10. <u>Headings</u>. The headings in this Separate Series Operating Agreement are included for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent, or intent of this Separate Series Operating Agreement or any provision hereof.

11. <u>Severability</u>. The invalidity or unenforceability of any particular provision of this Separate Series Operating Agreement shall not affect the other provisions hereof, and this Separate Series Operating Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.

12. <u>Integration</u>. This Separate Series Operating Agreement and the Operating Agreement constitute the entire agreement among the parties hereto pertaining to the subject matter hereof and supersede all prior agreements and understandings pertaining thereto.

13. <u>Counterparts</u>. This Separate Series Operating Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document. All counterparts shall be construed together and shall constitute one instrument.

14. <u>Governing Law</u>. This Separate Series Operating Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of Delaware, and all rights and remedies shall be governed by such laws without regard to principles of conflict of laws.

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below.

**Initial Member and Founder:**                    **Manager:**

Signed:/S Last Atlantis Capital Management LLC     Signed: /S Last Atlantis Capital Management LLC

Name: Last Atlantis Capital Management LLC         Name: Last Atlantis Capital Management LLC

Title: Initial Member                              Title: Fund Manager

Date: December 01, 2005                            Date: December 01, 2005

Entity: Last Atlantis Capital Management LLC       Entity: Last Atlantis Capital Management LLC

Street: 1212 Bjerge Gade, Lower Level              Street: 1212 Bjerge Gade, Lower Level

City, State, Zip: St. Thomas, USVI 00802           City, State, Zip: St. Thomas, USVI 00802

Phone: (340) 777-5170                              Phone: (340) 777-5170

Facsimile: (340) 777-5170                          Facsimile: (340) 777-5170

Email: info@lacm-usvi.com                          Email: info@lacm-usvi.com

**Member:**

Signed:_____

Name: _____

Title: _____

Date: _____

Entity: _____

Street:_____

City, State, Zip:_____

Phone:_____

Facsimile:_____

Email:_____

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS]**

**Exhibit A.4**

**Amended and Restated
Separate Series Operating Agreement**

**April 10, 2006**

# Last Atlantis Partners LLC,

**a Delaware Series Limited Liability Company**

**LACM Trade Receivable, Share Class D**

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS]**

**Exhibit A.5**

**Amended and Restated
Separate Series Operating Agreement**

April 10, 2006

# Last Atlantis Partners LLC,

**a Delaware Series Limited Liability Company**

**LACM MSCI Enhanced Hedge Fund Index, Share Class E**

**Amended and Restated
Separate Series Operating Agreement**

**April 10, 2006**

# Last Atlantis Partners LLC
# LACM Enhanced Hedge Fund Index, Share Class E
### a Delaware Series Limited Liability Company

THE INTERESTS HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE. THE INTERESTS ARE BEING OFFERED PURSUANT TO EXEMPTIONS PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT, REGULATION D THEREUNDER, CERTAIN STATE SECURITIES LAWS AND CERTAIN RULES PROMULGATED PURSUANT THERETO. THE INTERESTS MAY NOT BE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR (UNLESS WAIVED BY THE FUND MANAGER IN ITS SOLE DISCRETION) AN OPINION OF COUNSEL ACCEPTABLE TO THE FUND'S MANAGER THAT SUCH REGISTRATION IS NOT REQUIRED. TRANSFERABILITY OF THE INTERESTS IS FURTHER RESTRICTED BY THE TERMS OF THIS OPERATING AGREEMENT. THE INTERESTS HAVE NOT BEEN RECOMMENDED OR APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

PURSUANT TO AN EXEMPTION FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS WHOSE PARTICIPANTS ARE LIMITED TO QUALIFIED ELIGIBLE PARTICIPANTS, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION. THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

THE INTERESTS OFFERED HEREBY INVOLVE A HIGH DEGREE OF RISK. SEE "THE FUND - FUND OBJECTIVE", "RISK FACTORS" AND "CONFLICTS OF INTEREST" IN THE CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM.

*Any inquiries should be directed to:*
Last Atlantis Capital Management LLC
1212 Bjerge Gade, Lower Level, St. Thomas, USVI 00802
Phone: (340) 777-5170
Email: **info@lacm-usvi.com**

**AMENDED AND RESTATED**
**SEPARATE SERIES OPERATING AGREEMENT**

**of**

**LAST ATLANTIS PARTNERS, LLC**
**LACM MSCI ENHANCED HEDGE FUND INDEX, SHARE CLASS E**


This Separate Series Operating Agreement is made and entered into, and is effective as of this 1st day of December, 2005, by and between Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company, as the Initial Member of this newly created Series and Last Atlantis Capital Management LLC as a Founder and a Member of the Company and Last Atlantis Capital Management LLC as the Manager of the Company and each other Person who execute a counterpart of this Operating Agreement, personally or by attorney-in-fact and is or will be admitted to the Company as a Member of the this Series.

<u>RECITALS</u>

WHEREAS, the parties hereto have heretofore formed a limited liability company pursuant to the Delaware Limited Liability Company Act by filing a Certificate of Formation of the Company with the office of the Secretary of the State of Delaware and by entering into the Operating Agreement; and

WHEREAS, it is intended by the parties hereto to create this additional Series with respect to a Separate Investment Share Class; and

WHEREAS, it is intended by the parties hereto that the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to this Series and the Separate Investment be enforceable against the assets of this Series and the Separate Investments only, and not against the assets of the Company generally or any other Series thereof; and

NOW THEREFORE, in consideration of the mutual promises and obligations contained herein, the parties, intending to be legally bound, hereby agree as follows:

1. <u>New Series</u>. In accordance with Section 2.01 of the Operating Agreement, the Founders hereby create this Series, which shall be a separate "Series" for purposes of the Operating Agreement. The purpose of this Series shall be limited to making the Separate Investment as detailed in the Confidential Private Placement Memorandum and as amended, supplemented or updated from time to time.

2. <u>Name of New Series</u>. The name of the New Series created by this Separate Series Operating Agreement shall be LACM MSCI Enhanced Hedge Fund Index, Share Class E.

3. <u>Manager.</u> The Manager shall be called the Fund Manager. The initial Manager of this Series and who shall serve until a successor is elected, shall be Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company.

4.      Fund Manager.  The duly elected and qualified persons holding the office of Fund Manager shall be vested with the authority to act as and on behalf of the Company.

5.      Management.  The business and affairs of this Series shall be vested in the Members of this Separate Series in accordance with this Separate Series Operating Agreement. Notwithstanding the foregoing, the management of this Series shall be vested in the Manager. A Manager need not be a Member.  Only Members or Managers associated with this Series shall direct, manage and control the business and affairs of this Series.

6.      Members.  The initial Members of this Series shall be as set forth on the signature page of this Separate Series Operating Agreement and additional Members may be admitted at the sole discretion of the Fund Manager. The Series Membership Interests represents Interests only in this Series and not in the Company.

7.      Voting Units.  All Membership Interests in this Series shall be denominated in units where one unit equals one dollar (U.S.) in that Member's Capital Account. Each unit shall have one vote at all matters pertaining this Series.  Each unit shall have the rights, and be subject to the obligations, identical to those of each other units of this Series. Majority vote controls the Series governance. However in all circumstances that overriding provisions in this Separate Series Operating Agreement and/or the Operating Agreement shall govern.

8.      Capitalized Terms.  Capitalized terms used herein and not otherwise defined are used as defined in the Operating Agreement of the Company, and as amended, supplemented or updated from time to time.

9.      Agreement to be Bound.  Each of the undersigned agrees to be bound by the terms and provisions of this Separate Series Operating Agreement and the Operating Agreement.

10.     Headings.  The headings in this Separate Series Operating Agreement are included for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent, or intent of this Separate Series Operating Agreement or any provision hereof.

11.     Severability.  The invalidity or unenforceability of any particular provision of this Separate Series Operating Agreement shall not affect the other provisions hereof, and this Separate Series Operating Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.

12.     Integration.  This Separate Series Operating Agreement and the Operating Agreement constitute the entire agreement among the parties hereto pertaining to the subject matter hereof and supersede all prior agreements and understandings pertaining thereto.

13.     Counterparts.  This Separate Series Operating Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document. All counterparts shall be construed together and shall constitute one instrument.

14.     Governing Law.  This Separate Series Operating Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of Delaware, and

all rights and remedies shall be governed by such laws without regard to principles of conflict of laws.

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below.

**Initial Member and Founder:**                    **Manager:**


Signed:/S Last Atlantis Capital Management LLC     Signed: /S Last Atlantis Capital Management LLC

Name: Last Atlantis Capital Management LLC         Name: Last Atlantis Capital Management LLC

Title: Initial Member                              Title: Fund Manager

Date: December 01, 2005                             Date: December 01, 2005

Entity: Last Atlantis Capital Management LLC       Entity: Last Atlantis Capital Management LLC

Street: 1212 Bjerge Gade, Lower Level              Street: 1212 Bjerge Gade, Lower Level

City, State, Zip: St. Thomas, USVI 00802           City, State, Zip: St. Thomas, USVI 00802

Phone: (340) 777-5170                              Phone: (340) 777-5170

Facsimile: (340) 777-5170                          Facsimile: (340) 777-5170

Email: info@lacm-usvi.com                          Email: info@lacm-usvi.com

**Member:**

Signed:_____

Name: _____

Title: _____

Date: _____

Entity: _____

Street:_____

City, State, Zip:_____

Phone:_____

Facsimile:_____

Email:_____

**Exhibit A.6**

**Amended and Restated
Separate Series Operating Agreement**

April 10, 2006

# Last Atlantis Partners LLC,

**a Delaware Series Limited Liability Company**

**LACM Macro Discretionary, Share Class F**

**Amended and Restated
Separate Series Operating Agreement**

**April 10, 2006**

# Last Atlantis Partners LLC
# LACM Macro Discretionary, Share Class F

**a Delaware Series Limited Liability Company**

THE INTERESTS HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE. THE INTERESTS ARE BEING OFFERED PURSUANT TO EXEMPTIONS PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT, REGULATION D THEREUNDER, CERTAIN STATE SECURITIES LAWS AND CERTAIN RULES PROMULGATED PURSUANT THERETO. THE INTERESTS MAY NOT BE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR (UNLESS WAIVED BY THE FUND MANAGER IN ITS SOLE DISCRETION) AN OPINION OF COUNSEL ACCEPTABLE TO THE FUND'S MANAGER THAT SUCH REGISTRATION IS NOT REQUIRED.  TRANSFERABILITY OF THE INTERESTS IS FURTHER RESTRICTED BY THE TERMS OF THIS OPERATING AGREEMENT. THE INTERESTS HAVE NOT BEEN RECOMMENDED OR APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM.  ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

PURSUANT TO AN EXEMPTION FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS WHOSE PARTICIPANTS ARE LIMITED TO QUALIFIED ELIGIBLE PARTICIPANTS, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION.  THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

THE INTERESTS OFFERED HEREBY INVOLVE A HIGH DEGREE OF RISK.  SEE "THE FUND - FUND OBJECTIVE", "RISK FACTORS" AND "CONFLICTS OF INTEREST" IN THE CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM.

*Any inquiries should be directed to:*
Last Atlantis Capital Management LLC
1212 Bjerge Gade, Lower Level, St. Thomas, USVI 00802
Phone: (340) 777-5170
Email: **info@lacm-usvi.com**

**AMENDED AND RESTATED**
**SEPARATE SERIES OPERATING AGREEMENT**

**of**

# LAST ATLANTIS PARTNERS, LLC
**LACM MACRO DISCRETIONARY, SHARE CLASS F**

This Separate Series Operating Agreement is made and entered into, and is effective as of this 1st day of December, 2005, by and between Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company, as the Initial Member of this newly created Series and Last Atlantis Capital Management LLC as a Founder and a Member of the Company and Last Atlantis Capital Management LLC as the Manager of the Company and each other Person who execute a counterpart of this Operating Agreement, personally or by attorney-in-fact and is or will be admitted to the Company as a Member of the this Series.

RECITALS

WHEREAS, the parties hereto have heretofore formed a limited liability company pursuant to the Delaware Limited Liability Company Act by filing a Certificate of Formation of the Company with the office of the Secretary of the State of Delaware and by entering into the Operating Agreement; and

WHEREAS, it is intended by the parties hereto to create this additional Series with respect to a Separate Investment Share Class; and

WHEREAS, it is intended by the parties hereto that the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to this Series and the Separate Investment be enforceable against the assets of this Series and the Separate Investments only, and not against the assets of the Company generally or any other Series thereof; and

NOW THEREFORE, in consideration of the mutual promises and obligations contained herein, the parties, intending to be legally bound, hereby agree as follows:

1.  New Series. In accordance with Section 2.01 of the Operating Agreement, the Founders hereby create this Series, which shall be a separate "Series" for purposes of the Operating Agreement. The purpose of this Series shall be limited to making the Separate Investment as detailed in the Confidential Private Placement Memorandum and as amended, supplemented or updated from time to time.

2.  Name of New Series. The name of the New Series created by this Separate Series Operating Agreement shall be LACM Macro Discretionary, Share Class F.

3.  Manager. The Manager shall be called the Fund Manager. The initial Manager of this Series and who shall serve until a successor is elected, shall be Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company.

4.  Fund Manager. The duly elected and qualified persons holding the office of Fund Manager shall be vested with the authority to act as and on behalf of the Company.

5.    <u>Management.</u> The business and affairs of this Series shall be vested in the Members of this Separate Series in accordance with this Separate Series Operating Agreement. Notwithstanding the foregoing, the management of this Series shall be vested in the Manager. A Manager need not be a Member. Only Members or Managers associated with this Series shall direct, manage and control the business and affairs of this Series.

6.    <u>Members.</u> The initial Members of this Series shall be as set forth on the signature page of this Separate Series Operating Agreement and additional Members may be admitted at the sole discretion of the Fund Manager. The Series Membership Interests represents Interests only in this Series and not in the Company.

7.    <u>Voting Units.</u> All Membership Interests in this Series shall be denominated in units where one unit equals one dollar (U.S.) in that Member's Capital Account. Each unit shall have one vote at all matters pertaining this Series. Each unit shall have the rights, and be subject to the obligations, identical to those of each other units of this Series. Majority vote controls the Series governance. However in all circumstances that overriding provisions in this Separate Series Operating Agreement and/or the Operating Agreement shall govern.

8.    <u>Capitalized Terms.</u> Capitalized terms used herein and not otherwise defined are used as defined in the Operating Agreement of the Company, and as amended, supplemented or updated from time to time.

9.    <u>Agreement to be Bound.</u> Each of the undersigned agrees to be bound by the terms and provisions of this Separate Series Operating Agreement and the Operating Agreement.

10.    <u>Headings.</u> The headings in this Separate Series Operating Agreement are included for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent, or intent of this Separate Series Operating Agreement or any provision hereof.

11.    <u>Severability.</u> The invalidity or unenforceability of any particular provision of this Separate Series Operating Agreement shall not affect the other provisions hereof, and this Separate Series Operating Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.

12.    <u>Integration.</u> This Separate Series Operating Agreement and the Operating Agreement constitute the entire agreement among the parties hereto pertaining to the subject matter hereof and supersede all prior agreements and understandings pertaining thereto.

13.    <u>Counterparts.</u> This Separate Series Operating Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document. All counterparts shall be construed together and shall constitute one instrument.

14.    <u>Governing Law.</u> This Separate Series Operating Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of Delaware, and all rights and remedies shall be governed by such laws without regard to principles of conflict of laws.

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below.

**Initial Member and Founder:**                          **Manager:**

Signed:/S Last Atlantis Capital Management LLC          Signed: /S Last Atlantis Capital Management LLC

Name: Last Atlantis Capital Management LLC              Name: Last Atlantis Capital Management LLC

Title: Initial Member                                  Title: Fund Manager

Date: December 01, 2005                                 Date: December 01, 2005

Entity: Last Atlantis Capital Management LLC            Entity: Last Atlantis Capital Management LLC

Street: 1212 Bjerge Gade, Lower Level                  Street: 1212 Bjerge Gade, Lower Level

City, State, Zip: St. Thomas, USVI 00802               City, State, Zip: St. Thomas, USVI 00802

Phone: (340) 777-5170                                  Phone: (340) 777-5170

Facsimile: (340) 777-5170                              Facsimile: (340) 777-5170

Email: info@lacm-usvi.com                              Email: info@lacm-usvi.com

**Member:**

Signed:_____

Name: _____

Title: _____

Date: _____

Entity: _____

Street:_____

City, State, Zip:_____

Phone:_____

Facsimile:_____

Email:_____

**Exhibit A.7**

**Amended and Restated
Separate Series Operating Agreement**

April 10, 2006

# Last Atlantis Partners LLC,

**a Delaware Series Limited Liability Company**

**LACM Trend Following Futures, Share Class G**

**Amended and Restated**
**Separate Series Operating Agreement**

**April 10, 2006**

# Last Atlantis Partners LLC
# LACM Trend Following Futures, Share Class G

#### a Delaware Series Limited Liability Company

THE INTERESTS HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE. THE INTERESTS ARE BEING OFFERED PURSUANT TO EXEMPTIONS PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT, REGULATION D THEREUNDER, CERTAIN STATE SECURITIES LAWS AND CERTAIN RULES PROMULGATED PURSUANT THERETO. THE INTERESTS MAY NOT BE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR (UNLESS WAIVED BY THE FUND MANAGER IN ITS SOLE DISCRETION) AN OPINION OF COUNSEL ACCEPTABLE TO THE FUND'S MANAGER THAT SUCH REGISTRATION IS NOT REQUIRED. TRANSFERABILITY OF THE INTERESTS IS FURTHER RESTRICTED BY THE TERMS OF THIS OPERATING AGREEMENT. THE INTERESTS HAVE NOT BEEN RECOMMENDED OR APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

PURSUANT TO AN EXEMPTION FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS WHOSE PARTICIPANTS ARE LIMITED TO QUALIFIED ELIGIBLE PARTICIPANTS, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION. THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

THE INTERESTS OFFERED HEREBY INVOLVE A HIGH DEGREE OF RISK. SEE "THE FUND - FUND OBJECTIVE", "RISK FACTORS" AND "CONFLICTS OF INTEREST" IN THE CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM.

*Any inquiries should be directed to:*
Last Atlantis Capital Management LLC
1212 Bjerge Gade, Lower Level, St. Thomas, USVI 00802
Phone: (340) 777-5170
Email: **info@lacm-usvi.com**

**AMENDED AND RESTATED**
**SEPARATE SERIES OPERATING AGREEMENT**

**of**

# LAST ATLANTIS PARTNERS, LLC
**LACM TREND FOLLOWING FUTURES, SHARE CLASS G**

This Separate Series Operating Agreement is made and entered into, and is effective as of this 1st day of December, 2005, by and between Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company, as the Initial Member of this newly created Series and Last Atlantis Capital Management LLC as a Founder and a Member of the Company and Last Atlantis Capital Management LLC as the Manager of the Company and each other Person who execute a counterpart of this Operating Agreement, personally or by attorney-in-fact and is or will be admitted to the Company as a Member of the this Series.

<u>RECITALS</u>

WHEREAS, the parties hereto have heretofore formed a limited liability company pursuant to the Delaware Limited Liability Company Act by filing a Certificate of Formation of the Company with the office of the Secretary of the State of Delaware and by entering into the Operating Agreement; and

WHEREAS, it is intended by the parties hereto to create this additional Series with respect to a Separate Investment Share Class; and

WHEREAS, it is intended by the parties hereto that the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to this Series and the Separate Investment be enforceable against the assets of this Series and the Separate Investments only, and not against the assets of the Company generally or any other Series thereof; and

NOW THEREFORE, in consideration of the mutual promises and obligations contained herein, the parties, intending to be legally bound, hereby agree as follows:

1. <u>New Series</u>. In accordance with Section 2.01 of the Operating Agreement, the Founders hereby create this Series, which shall be a separate "Series" for purposes of the Operating Agreement. The purpose of this Series shall be limited to making the Separate Investment as detailed in the Confidential Private Placement Memorandum and as amended, supplemented or updated from time to time.

2. <u>Name of New Series</u>. The name of the New Series created by this Separate Series Operating Agreement shall be LACM Trend Following Futures, Share Class G.

3. <u>Manager.</u> The Manager shall be called the Fund Manager. The initial Manager of this Series and who shall serve until a successor is elected, shall be Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company.

4. <u>Fund Manager.</u> The duly elected and qualified persons holding the office of Fund Manager shall be vested with the authority to act as and on behalf of the Company.

5.     <u>Management.</u> The business and affairs of this Series shall be vested in the Members of this Separate Series in accordance with this Separate Series Operating Agreement. Notwithstanding the foregoing, the management of this Series shall be vested in the Manager. A Manager need not be a Member. Only Members or Managers associated with this Series shall direct, manage and control the business and affairs of this Series.

6.     <u>Members.</u> The initial Members of this Series shall be as set forth on the signature page of this Separate Series Operating Agreement and additional Members may be admitted at the sole discretion of the Fund Manager. The Series Membership Interests represents Interests only in this Series and not in the Company.

7.     <u>Voting Units.</u> All Membership Interests in this Series shall be denominated in units where one unit equals one dollar (U.S.) in that Member's Capital Account. Each unit shall have one vote at all matters pertaining this Series. Each unit shall have the rights, and be subject to the obligations, identical to those of each other units of this Series. Majority vote controls the Series governance. However in all circumstances that overriding provisions in this Separate Series Operating Agreement and/or the Operating Agreement shall govern.

8.     <u>Capitalized Terms.</u> Capitalized terms used herein and not otherwise defined are used as defined in the Operating Agreement of the Company, and as amended, supplemented or updated from time to time.

9.     <u>Agreement to be Bound</u>. Each of the undersigned agrees to be bound by the terms and provisions of this Separate Series Operating Agreement and the Operating Agreement.

10.     <u>Headings</u>. The headings in this Separate Series Operating Agreement are included for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent, or intent of this Separate Series Operating Agreement or any provision hereof.

11.     <u>Severability</u>. The invalidity or unenforceability of any particular provision of this Separate Series Operating Agreement shall not affect the other provisions hereof, and this Separate Series Operating Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.

12.     <u>Integration</u>. This Separate Series Operating Agreement and the Operating Agreement constitute the entire agreement among the parties hereto pertaining to the subject matter hereof and supersede all prior agreements and understandings pertaining thereto.

13.     <u>Counterparts</u>. This Separate Series Operating Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document. All counterparts shall be construed together and shall constitute one instrument.

14.     <u>Governing Law</u>. This Separate Series Operating Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of Delaware, and all rights and remedies shall be governed by such laws without regard to principles of conflict of laws.

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below.

**Initial Member and Founder:**                    **Manager:**


Signed:/S Last Atlantis Capital Management LLC      Signed: /S Last Atlantis Capital Management LLC

Name: Last Atlantis Capital Management LLC          Name: Last Atlantis Capital Management LLC

Title: Initial Member                               Title: Fund Manager

Date: December 01, 2005                              Date: December 01, 2005

Entity: Last Atlantis Capital Management LLC         Entity: Last Atlantis Capital Management LLC

Street: 1212 Bjerge Gade, Lower Level                Street: 1212 Bjerge Gade, Lower Level

City, State, Zip: St. Thomas, USVI 00802             City, State, Zip: St. Thomas, USVI 00802

Phone: (340) 777-5170                                Phone: (340) 777-5170

Facsimile: (340) 777-5170                            Facsimile: (340) 777-5170

Email: info@lacm-usvi.com                            Email: info@lacm-usvi.com

**Member:**


Signed:_____

Name: _____

Title: _____

Date: _____

Entity: _____

Street:_____

City, State, Zip:_____

Phone:_____

Facsimile:_____

Email:_____

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS]**

**Exhibit A.8**

**Amended and Restated**
**Separate Series Operating Agreement**

**April 10, 2006**

# Last Atlantis Partners LLC,

**a Delaware Series Limited Liability Company**

**LACM Emerging Managers, Share Class H**

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS]**

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS]**

**Exhibit A.9**

**Amended and Restated
Separate Series Operating Agreement**

April 10, 2006

# Last Atlantis Partners LLC,
**a Delaware Series Limited Liability Company**

**LACM Quantitative Intraday Futures, Share Class I**

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS]**

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS]**

**Exhibit A.10**

**Amended and Restated
Separate Series Operating Agreement**

**April 10, 2006**

# Last Atlantis Partners LLC,

**a Delaware Series Limited Liability Company**

**LACM Behavior Pattern Intraday Futures, Share Class J**

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS]**

**Exhibit A.11**

**Amended and Restated
Separate Series Operating Agreement**

April 10, 2006

# Last Atlantis Partners LLC,

**a Delaware Series Limited Liability Company**

**LACM Long/Short Statistical Arbitrage, Share Class K**

**Amended and Restated
Separate Series Operating Agreement**

**April 10, 2006**

# Last Atlantis Partners LLC
# LACM Long/Short Statistical Arbitrage,
# Share Class K

**a Delaware Series Limited Liability Company**

THE INTERESTS HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE. THE INTERESTS ARE BEING OFFERED PURSUANT TO EXEMPTIONS PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT, REGULATION D THEREUNDER, CERTAIN STATE SECURITIES LAWS AND CERTAIN RULES PROMULGATED PURSUANT THERETO. THE INTERESTS MAY NOT BE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR (UNLESS WAIVED BY THE FUND MANAGER IN ITS SOLE DISCRETION) AN OPINION OF COUNSEL ACCEPTABLE TO THE FUND'S MANAGER THAT SUCH REGISTRATION IS NOT REQUIRED. TRANSFERABILITY OF THE INTERESTS IS FURTHER RESTRICTED BY THE TERMS OF THIS OPERATING AGREEMENT. THE INTERESTS HAVE NOT BEEN RECOMMENDED OR APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

PURSUANT TO AN EXEMPTION FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS WHOSE PARTICIPANTS ARE LIMITED TO QUALIFIED ELIGIBLE PARTICIPANTS, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION. THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

THE INTERESTS OFFERED HEREBY INVOLVE A HIGH DEGREE OF RISK. SEE "THE FUND - FUND OBJECTIVE", "RISK FACTORS" AND "CONFLICTS OF INTEREST" IN THE CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM.

*Any inquiries should be directed to:*
Last Atlantis Capital Management LLC
1212 Bjerge Gade, Lower Level, St. Thomas, USVI 00802
Phone: (340) 777-5170
Email: **info@lacm-usvi.com**

**AMENDED AND RESTATED**
**SEPARATE SERIES OPERATING AGREEMENT**

**of**

# LAST ATLANTIS PARTNERS, LLC
## LACM LONG/SHORT STATISTICAL ARBITRAGE, SHARE CLASS K

This Separate Series Operating Agreement is made and entered into, and is effective as of this 1st day of December, 2005, by and between Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company, as the Initial Member of this newly created Series and Last Atlantis Capital Management LLC as a Founder and a Member of the Company and Last Atlantis Capital Management LLC as the Manager of the Company and each other Person who execute a counterpart of this Operating Agreement, personally or by attorney-in-fact and is or will be admitted to the Company as a Member of the this Series.

<u>RECITALS</u>

WHEREAS, the parties hereto have heretofore formed a limited liability company pursuant to the Delaware Limited Liability Company Act by filing a Certificate of Formation of the Company with the office of the Secretary of the State of Delaware and by entering into the Operating Agreement; and

WHEREAS, it is intended by the parties hereto to create this additional Series with respect to a Separate Investment Share Class; and

WHEREAS, it is intended by the parties hereto that the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to this Series and the Separate Investment be enforceable against the assets of this Series and the Separate Investments only, and not against the assets of the Company generally or any other Series thereof; and

NOW THEREFORE, in consideration of the mutual promises and obligations contained herein, the parties, intending to be legally bound, hereby agree as follows:

1.  <u>New Series</u>. In accordance with Section 2.01 of the Operating Agreement, the Founders hereby create this Series, which shall be a separate "Series" for purposes of the Operating Agreement. The purpose of this Series shall be limited to making the Separate Investment as detailed in the Confidential Private Placement Memorandum and as amended, supplemented or updated from time to time.

2.  <u>Name of New Series</u>. The name of the New Series created by this Separate Series Operating Agreement shall be LACM Long/Short Statistical Arbitrage, Share Class K.

3.  <u>Manager.</u> The Manager shall be called the Fund Manager. The initial Manager of this Series and who shall serve until a successor is elected, shall be Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company.

4.  <u>Fund Manager.</u> The duly elected and qualified persons holding the office of Fund Manager shall be vested with the authority to act as and on behalf of the Company.

5.     <u>Management.</u>  The business and affairs of this Series shall be vested in the Members of this Separate Series in accordance with this Separate Series Operating Agreement. Notwithstanding the foregoing, the management of this Series shall be vested in the Manager. A Manager need not be a Member.  Only Members or Managers associated with this Series shall direct, manage and control the business and affairs of this Series.

6.     <u>Members.</u>  The initial Members of this Series shall be as set forth on the signature page of this Separate Series Operating Agreement and additional Members may be admitted at the sole discretion of the Fund Manager. The Series Membership Interests represents Interests only in this Series and not in the Company.

7.     <u>Voting Units.</u>  All Membership Interests in this Series shall be denominated in units where one unit equals one dollar (U.S.) in that Member's Capital Account. Each unit shall have one vote at all matters pertaining this Series.  Each unit shall have the rights, and be subject to the obligations, identical to those of each other units of this Series. Majority vote controls the Series governance. However in all circumstances that overriding provisions in this Separate Series Operating Agreement and/or the Operating Agreement shall govern.

8.     <u>Capitalized Terms.</u>  Capitalized terms used herein and not otherwise defined are used as defined in the Operating Agreement of the Company, and as amended, supplemented or updated from time to time.

9.     <u>Agreement to be Bound</u>. Each of the undersigned agrees to be bound by the terms and provisions of this Separate Series Operating Agreement and the Operating Agreement.

10.     <u>Headings</u>. The headings in this Separate Series Operating Agreement are included for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent, or intent of this Separate Series Operating Agreement or any provision hereof.

11.     <u>Severability</u>.  The invalidity or unenforceability of any particular provision of this Separate Series Operating Agreement shall not affect the other provisions hereof, and this Separate Series Operating Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.

12.     <u>Integration</u>.  This Separate Series Operating Agreement and the Operating Agreement constitute the entire agreement among the parties hereto pertaining to the subject matter hereof and supersede all prior agreements and understandings pertaining thereto.

13.     <u>Counterparts</u>.  This Separate Series Operating Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document. All counterparts shall be construed together and shall constitute one instrument.

14.     <u>Governing Law</u>.  This Separate Series Operating Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of Delaware, and all rights and remedies shall be governed by such laws without regard to principles of conflict of laws.

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below.

**Initial Member and Founder:**        **Manager:**

Signed:/S Last Atlantis Capital Management LLC    Signed: /S Last Atlantis Capital Management LLC

Name: Last Atlantis Capital Management LLC    Name: Last Atlantis Capital Management LLC

Title: Initial Member    Title: Fund Manager

Date: December 01, 2005    Date: December 01, 2005

Entity: Last Atlantis Capital Management LLC    Entity: Last Atlantis Capital Management LLC

Street: 1212 Bjerge Gade, Lower Level    Street: 1212 Bjerge Gade, Lower Level

City, State, Zip: St. Thomas, USVI 00802    City, State, Zip: St. Thomas, USVI 00802

Phone: (340) 777-5170    Phone: (340) 777-5170

Facsimile: (340) 777-5170    Facsimile: (340) 777-5170

Email: info@lacm-usvi.com    Email: info@lacm-usvi.com

**Member:**

Signed:_____

Name: _____

Title: _____

Date: _____

Entity: _____

Street:_____

City, State, Zip:_____

Phone:_____

Facsimile:_____

Email:_____

**Exhibit A.12**

**Amended and Restated**
**Separate Series Operating Agreement**

April 10, 2006

# Last Atlantis Partners LLC,
**a Delaware Series Limited Liability Company**

## LACM Consumer Receivables, Share Class L

**Amended and Restated**
**Separate Series Operating Agreement**

**April 10, 2006**

# Last Atlantis Partners LLC
# LACM Consumer Receivables, Share Class L
### a Delaware Series Limited Liability Company

THE INTERESTS HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE. THE INTERESTS ARE BEING OFFERED PURSUANT TO EXEMPTIONS PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT, REGULATION D THEREUNDER, CERTAIN STATE SECURITIES LAWS AND CERTAIN RULES PROMULGATED PURSUANT THERETO. THE INTERESTS MAY NOT BE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR (UNLESS WAIVED BY THE FUND MANAGER IN ITS SOLE DISCRETION) AN OPINION OF COUNSEL ACCEPTABLE TO THE FUND'S MANAGER THAT SUCH REGISTRATION IS NOT REQUIRED. TRANSFERABILITY OF THE INTERESTS IS FURTHER RESTRICTED BY THE TERMS OF THIS OPERATING AGREEMENT. THE INTERESTS HAVE NOT BEEN RECOMMENDED OR APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

PURSUANT TO AN EXEMPTION FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS WHOSE PARTICIPANTS ARE LIMITED TO QUALIFIED ELIGIBLE PARTICIPANTS, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION. THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

THE INTERESTS OFFERED HEREBY INVOLVE A HIGH DEGREE OF RISK. SEE "THE FUND - FUND OBJECTIVE", "RISK FACTORS" AND "CONFLICTS OF INTEREST" IN THE CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM.

*Any inquiries should be directed to:*
Last Atlantis Capital Management LLC
1212 Bjerge Gade, Lower Level, St. Thomas, USVI 00802
Phone: (340) 777-5170
Email: **info@lacm-usvi.com**

**AMENDED AND RESTATED
SEPARATE SERIES OPERATING AGREEMENT**

**of**

# LAST ATLANTIS PARTNERS, LLC
**LACM CONSUMER RECEIVABLES, SHARE CLASS L**

This Separate Series Operating Agreement is made and entered into, and is effective as of this 1st day of December, 2005, by and between Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company, as the Initial Member of this newly created Series and Last Atlantis Capital Management LLC as a Founder and a Member of the Company and Last Atlantis Capital Management LLC as the Manager of the Company and each other Person who execute a counterpart of this Operating Agreement, personally or by attorney-in-fact and is or will be admitted to the Company as a Member of the this Series.

<u>RECITALS</u>

WHEREAS, the parties hereto have heretofore formed a limited liability company pursuant to the Delaware Limited Liability Company Act by filing a Certificate of Formation of the Company with the office of the Secretary of the State of Delaware and by entering into the Operating Agreement; and

WHEREAS, it is intended by the parties hereto to create this additional Series with respect to a Separate Investment Share Class; and

WHEREAS, it is intended by the parties hereto that the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to this Series and the Separate Investment be enforceable against the assets of this Series and the Separate Investments only, and not against the assets of the Company generally or any other Series thereof; and

NOW THEREFORE, in consideration of the mutual promises and obligations contained herein, the parties, intending to be legally bound, hereby agree as follows:

1. <u>New Series</u>. In accordance with Section 2.01 of the Operating Agreement, the Founders hereby create this Series, which shall be a separate "Series" for purposes of the Operating Agreement. The purpose of this Series shall be limited to making the Separate Investment as detailed in the Confidential Private Placement Memorandum and as amended, supplemented or updated from time to time.

2. <u>Name of New Series</u>. The name of the New Series created by this Separate Series Operating Agreement shall be LACM Consumer Receivables, Share Class L.

3. <u>Manager.</u> The Manager shall be called the Fund Manager. The initial Manager of this Series and who shall serve until a successor is elected, shall be Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company.

4. <u>Fund Manager.</u> The duly elected and qualified persons holding the office of Fund Manager shall be vested with the authority to act as and on behalf of the Company.

5. <u>Management.</u> The business and affairs of this Series shall be vested in the Members of this Separate Series in accordance with this Separate Series Operating Agreement. Notwithstanding the foregoing, the management of this Series shall be vested in the Manager. A Manager need not be a Member. Only Members or Managers associated with this Series shall direct, manage and control the business and affairs of this Series.

6. <u>Members.</u> The initial Members of this Series shall be as set forth on the signature page of this Separate Series Operating Agreement and additional Members may be admitted at the sole discretion of the Fund Manager. The Series Membership Interests represents Interests only in this Series and not in the Company.

7. <u>Voting Units.</u> All Membership Interests in this Series shall be denominated in units where one unit equals one dollar (U.S.) in that Member's Capital Account. Each unit shall have one vote at all matters pertaining this Series. Each unit shall have the rights, and be subject to the obligations, identical to those of each other units of this Series. Majority vote controls the Series governance. However in all circumstances that overriding provisions in this Separate Series Operating Agreement and/or the Operating Agreement shall govern.

8. <u>Capitalized Terms.</u> Capitalized terms used herein and not otherwise defined are used as defined in the Operating Agreement of the Company, and as amended, supplemented or updated from time to time.

9. <u>Agreement to be Bound</u>. Each of the undersigned agrees to be bound by the terms and provisions of this Separate Series Operating Agreement and the Operating Agreement.

10. <u>Headings</u>. The headings in this Separate Series Operating Agreement are included for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent, or intent of this Separate Series Operating Agreement or any provision hereof.

11. <u>Severability</u>. The invalidity or unenforceability of any particular provision of this Separate Series Operating Agreement shall not affect the other provisions hereof, and this Separate Series Operating Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.

12. <u>Integration</u>. This Separate Series Operating Agreement and the Operating Agreement constitute the entire agreement among the parties hereto pertaining to the subject matter hereof and supersede all prior agreements and understandings pertaining thereto.

13. <u>Counterparts</u>. This Separate Series Operating Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document. All counterparts shall be construed together and shall constitute one instrument.

14. <u>Governing Law</u>. This Separate Series Operating Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of Delaware, and all rights and remedies shall be governed by such laws without regard to principles of conflict of laws.

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below.

**Initial Member and Founder:**                    **Manager:**

Signed:/S Last Atlantis Capital Management LLC     Signed: /S Last Atlantis Capital Management LLC

Name: Last Atlantis Capital Management LLC         Name: Last Atlantis Capital Management LLC

Title: Initial Member                              Title: Fund Manager

Date: December 01, 2005                             Date: December 01, 2005

Entity: Last Atlantis Capital Management LLC        Entity: Last Atlantis Capital Management LLC

Street: 1212 Bjerge Gade, Lower Level               Street: 1212 Bjerge Gade, Lower Level

City, State, Zip: St. Thomas, USVI 00802            City, State, Zip: St. Thomas, USVI 00802

Phone: (340) 777-5170                               Phone: (340) 777-5170

Facsimile: (340) 777-5170                           Facsimile: (340) 777-5170

Email: info@lacm-usvi.com                           Email: info@lacm-usvi.com

**Member:**

Signed:_____

Name: _____

Title: _____

Date: _____

Entity: _____

Street:_____

City, State, Zip:_____

Phone:_____

Facsimile:_____

Email:_____

**Exhibit A.13**

**Amended and Restated
Separate Series Operating Agreement**

April 10, 2006

# Last Atlantis Partners LLC,
**a Delaware Series Limited Liability Company**

## LACM Enhanced Multi-Strategy, Share Class M

**Amended and Restated**
**Separate Series Operating Agreement**

**April 10, 2006**

# Last Atlantis Partners LLC
# LACM Enhanced Multi-Strategy, Share Class M

**a Delaware Series Limited Liability Company**

THE INTERESTS HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE. THE INTERESTS ARE BEING OFFERED PURSUANT TO EXEMPTIONS PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT, REGULATION D THEREUNDER, CERTAIN STATE SECURITIES LAWS AND CERTAIN RULES PROMULGATED PURSUANT THERETO. THE INTERESTS MAY NOT BE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR (UNLESS WAIVED BY THE FUND MANAGER IN ITS SOLE DISCRETION) AN OPINION OF COUNSEL ACCEPTABLE TO THE FUND'S MANAGER THAT SUCH REGISTRATION IS NOT REQUIRED. TRANSFERABILITY OF THE INTERESTS IS FURTHER RESTRICTED BY THE TERMS OF THIS OPERATING AGREEMENT. THE INTERESTS HAVE NOT BEEN RECOMMENDED OR APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

PURSUANT TO AN EXEMPTION FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS WHOSE PARTICIPANTS ARE LIMITED TO QUALIFIED ELIGIBLE PARTICIPANTS, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION. THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

THE INTERESTS OFFERED HEREBY INVOLVE A HIGH DEGREE OF RISK. SEE "THE FUND - FUND OBJECTIVE", "RISK FACTORS" AND "CONFLICTS OF INTEREST" IN THE CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM.

*Any inquiries should be directed to:*
Last Atlantis Capital Management LLC
1212 Bjerge Gade, Lower Level, St. Thomas, USVI 00802
Phone: (340) 777-5170
Email: **info@lacm-usvi.com**

**AMENDED AND RESTATED**
**SEPARATE SERIES OPERATING AGREEMENT**

**of**

# LAST ATLANTIS PARTNERS, LLC
## LACM ENHANCED MULTI-STRATEGY, SHARE CLASS M

This Separate Series Operating Agreement is made and entered into, and is effective as of this 1st day of December, 2005, by and between Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company, as the Initial Member of this newly created Series and Last Atlantis Capital Management LLC as a Founder and a Member of the Company and Last Atlantis Capital Management LLC as the Manager of the Company and each other Person who execute a counterpart of this Operating Agreement, personally or by attorney-in-fact and is or will be admitted to the Company as a Member of the this Series.

RECITALS

WHEREAS, the parties hereto have heretofore formed a limited liability company pursuant to the Delaware Limited Liability Company Act by filing a Certificate of Formation of the Company with the office of the Secretary of the State of Delaware and by entering into the Operating Agreement; and

WHEREAS, it is intended by the parties hereto to create this additional Series with respect to a Separate Investment Share Class; and

WHEREAS, it is intended by the parties hereto that the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to this Series and the Separate Investment be enforceable against the assets of this Series and the Separate Investments only, and not against the assets of the Company generally or any other Series thereof; and

NOW THEREFORE, in consideration of the mutual promises and obligations contained herein, the parties, intending to be legally bound, hereby agree as follows:

1.  New Series. In accordance with Section 2.01 of the Operating Agreement, the Founders hereby create this Series, which shall be a separate "Series" for purposes of the Operating Agreement. The purpose of this Series shall be limited to making the Separate Investment as detailed in the Confidential Private Placement Memorandum and as amended, supplemented or updated from time to time.

2.  Name of New Series. The name of the New Series created by this Separate Series Operating Agreement shall be LACM Enhanced Multi-Strategy, Share Class M.

3.  Manager. The Manager shall be called the Fund Manager. The initial Manager of this Series and who shall serve until a successor is elected, shall be Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company.

4.  Fund Manager. The duly elected and qualified persons holding the office of Fund Manager shall be vested with the authority to act as and on behalf of the Company.

5.    <u>Management.</u> The business and affairs of this Series shall be vested in the Members of this Separate Series in accordance with this Separate Series Operating Agreement. Notwithstanding the foregoing, the management of this Series shall be vested in the Manager. A Manager need not be a Member. Only Members or Managers associated with this Series shall direct, manage and control the business and affairs of this Series.

6.    <u>Members.</u> The initial Members of this Series shall be as set forth on the signature page of this Separate Series Operating Agreement and additional Members may be admitted at the sole discretion of the Fund Manager. The Series Membership Interests represents Interests only in this Series and not in the Company.

7.    <u>Voting Units.</u> All Membership Interests in this Series shall be denominated in units where one unit equals one dollar (U.S.) in that Member's Capital Account. Each unit shall have one vote at all matters pertaining this Series. Each unit shall have the rights, and be subject to the obligations, identical to those of each other units of this Series. Majority vote controls the Series governance. However in all circumstances that overriding provisions in this Separate Series Operating Agreement and/or the Operating Agreement shall govern.

8.    <u>Capitalized Terms.</u> Capitalized terms used herein and not otherwise defined are used as defined in the Operating Agreement of the Company, and as amended, supplemented or updated from time to time.

9.    <u>Agreement to be Bound</u>. Each of the undersigned agrees to be bound by the terms and provisions of this Separate Series Operating Agreement and the Operating Agreement.

10.    <u>Headings</u>. The headings in this Separate Series Operating Agreement are included for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent, or intent of this Separate Series Operating Agreement or any provision hereof.

11.    <u>Severability</u>. The invalidity or unenforceability of any particular provision of this Separate Series Operating Agreement shall not affect the other provisions hereof, and this Separate Series Operating Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.

12.    <u>Integration</u>. This Separate Series Operating Agreement and the Operating Agreement constitute the entire agreement among the parties hereto pertaining to the subject matter hereof and supersede all prior agreements and understandings pertaining thereto.

13.    <u>Counterparts</u>. This Separate Series Operating Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document. All counterparts shall be construed together and shall constitute one instrument.

14.    <u>Governing Law</u>. This Separate Series Operating Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of Delaware, and all rights and remedies shall be governed by such laws without regard to principles of conflict of laws.

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below.

**Initial Member and Founder:**          **Manager:**


Signed:/S Last Atlantis Capital Management LLC          Signed: /S Last Atlantis Capital Management LLC

Name: Last Atlantis Capital Management LLC          Name: Last Atlantis Capital Management LLC

Title: Initial Member          Title: Fund Manager

Date: December 01, 2005          Date: December 01, 2005

Entity: Last Atlantis Capital Management LLC          Entity: Last Atlantis Capital Management LLC

Street: 1212 Bjerge Gade, Lower Level          Street: 1212 Bjerge Gade, Lower Level

City, State, Zip: St. Thomas, USVI 00802          City, State, Zip: St. Thomas, USVI 00802

Phone: (340) 777-5170          Phone: (340) 777-5170

Facsimile: (340) 777-5170          Facsimile: (340) 777-5170

Email: info@lacm-usvi.com          Email: info@lacm-usvi.com

**Member:**


Signed:_____

Name: _____

Title: _____

Date: _____

Entity: _____

Street:_____

City, State, Zip:_____

Phone:_____

Facsimile:_____

Email:_____

**Exhibit A.13**

**Amended and Restated**
**Separate Series Operating Agreement**

April 10, 2006

# Last Atlantis Partners LLC,

**a Delaware Series Limited Liability Company**

**LACM Short-Term Discretionary Futures, Share Class N**

**Amended and Restated
Separate Series Operating Agreement**

**April 10, 2006**

# Last Atlantis Partners LLC
# LACM Short-Term Discretionary Futures, Share Class N

**a Delaware Series Limited Liability Company**

THE INTERESTS HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE. THE INTERESTS ARE BEING OFFERED PURSUANT TO EXEMPTIONS PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT, REGULATION D THEREUNDER, CERTAIN STATE SECURITIES LAWS AND CERTAIN RULES PROMULGATED PURSUANT THERETO. THE INTERESTS MAY NOT BE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR (UNLESS WAIVED BY THE FUND MANAGER IN ITS SOLE DISCRETION) AN OPINION OF COUNSEL ACCEPTABLE TO THE FUND'S MANAGER THAT SUCH REGISTRATION IS NOT REQUIRED. TRANSFERABILITY OF THE INTERESTS IS FURTHER RESTRICTED BY THE TERMS OF THIS OPERATING AGREEMENT. THE INTERESTS HAVE NOT BEEN RECOMMENDED OR APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

PURSUANT TO AN EXEMPTION FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS WHOSE PARTICIPANTS ARE LIMITED TO QUALIFIED ELIGIBLE PARTICIPANTS, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION. THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

THE INTERESTS OFFERED HEREBY INVOLVE A HIGH DEGREE OF RISK. SEE "THE FUND - FUND OBJECTIVE", "RISK FACTORS" AND "CONFLICTS OF INTEREST" IN THE CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM.

*Any inquiries should be directed to:*
Last Atlantis Capital Management LLC
1212 Bjerge Gade, Lower Level, St. Thomas, USVI 00802
Phone: (340) 777-5170
Email: **info@lacm-usvi.com**

**AMENDED AND RESTATED**
**SEPARATE SERIES OPERATING AGREEMENT**

**of**

# LAST ATLANTIS PARTNERS, LLC
**LACM SHORT-TERM DISCRETIONARY FUTURES, SHARE CLASS N**

This Separate Series Operating Agreement is made and entered into, and is effective as of this 1st day of December, 2005, by and between Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company, as the Initial Member of this newly created Series and Last Atlantis Capital Management LLC as a Founder and a Member of the Company and Last Atlantis Capital Management LLC as the Manager of the Company and each other Person who execute a counterpart of this Operating Agreement, personally or by attorney-in-fact and is or will be admitted to the Company as a Member of the this Series.

<u>RECITALS</u>

WHEREAS, the parties hereto have heretofore formed a limited liability company pursuant to the Delaware Limited Liability Company Act by filing a Certificate of Formation of the Company with the office of the Secretary of the State of Delaware and by entering into the Operating Agreement; and

WHEREAS, it is intended by the parties hereto to create this additional Series with respect to a Separate Investment Share Class; and

WHEREAS, it is intended by the parties hereto that the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to this Series and the Separate Investment be enforceable against the assets of this Series and the Separate Investments only, and not against the assets of the Company generally or any other Series thereof; and

NOW THEREFORE, in consideration of the mutual promises and obligations contained herein, the parties, intending to be legally bound, hereby agree as follows:

1.  <u>New Series</u>. In accordance with Section 2.01 of the Operating Agreement, the Founders hereby create this Series, which shall be a separate "Series" for purposes of the Operating Agreement. The purpose of this Series shall be limited to making the Separate Investment as detailed in the Confidential Private Placement Memorandum and as amended, supplemented or updated from time to time.

2.  <u>Name of New Series</u>. The name of the New Series created by this Separate Series Operating Agreement shall be LACM Short-Term Discretionary Futures, Share Class N.

3.  <u>Manager.</u> The Manager shall be called the Fund Manager. The initial Manager of this Series and who shall serve until a successor is elected, shall be Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company.

4.  <u>Fund Manager.</u> The duly elected and qualified persons holding the office of Fund Manager shall be vested with the authority to act as and on behalf of the Company.

5.   Management.  The business and affairs of this Series shall be vested in the Members of this Separate Series in accordance with this Separate Series Operating Agreement. Notwithstanding the foregoing, the management of this Series shall be vested in the Manager. A Manager need not be a Member.  Only Members or Managers associated with this Series shall direct, manage and control the business and affairs of this Series.

6.   Members.  The initial Members of this Series shall be as set forth on the signature page of this Separate Series Operating Agreement and additional Members may be admitted at the sole discretion of the Fund Manager. The Series Membership Interests represents Interests only in this Series and not in the Company.

7.   Voting Units.  All Membership Interests in this Series shall be denominated in units where one unit equals one dollar (U.S.) in that Member's Capital Account. Each unit shall have one vote at all matters pertaining this Series.   Each unit shall have the rights, and be subject to the obligations, identical to those of each other units of this Series. Majority vote controls the Series governance. However in all circumstances that overriding provisions in this Separate Series Operating Agreement and/or the Operating Agreement shall govern.

8.   Capitalized Terms.  Capitalized terms used herein and not otherwise defined are used as defined in the Operating Agreement of the Company, and as amended, supplemented or updated from time to time.

9.   Agreement to be Bound. Each of the undersigned agrees to be bound by the terms and provisions of this Separate Series Operating Agreement and the Operating Agreement.

10.  Headings. The headings in this Separate Series Operating Agreement are included for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent, or intent of this Separate Series Operating Agreement or any provision hereof.

11.  Severability.   The invalidity or unenforceability of any particular provision of this Separate Series Operating Agreement shall not affect the other provisions hereof, and this Separate Series Operating Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.

12.  Integration.  This Separate Series Operating Agreement and the Operating Agreement constitute the entire agreement among the parties hereto pertaining to the subject matter hereof and supersede all prior agreements and understandings pertaining thereto.

13.  Counterparts.  This Separate Series Operating Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document. All counterparts shall be construed together and shall constitute one instrument.

14.  Governing Law.  This Separate Series Operating Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of Delaware, and all rights and remedies shall be governed by such laws without regard to principles of conflict of laws.

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below.

**Initial Member and Founder:**                    **Manager:**


Signed:/S Last Atlantis Capital Management LLC      Signed: /S Last Atlantis Capital Management LLC

Name: Last Atlantis Capital Management LLC          Name: Last Atlantis Capital Management LLC

Title: Initial Member                               Title: Fund Manager

Date: December 01, 2005                             Date: December 01, 2005

Entity: Last Atlantis Capital Management LLC         Entity: Last Atlantis Capital Management LLC

Street: 1212 Bjerge Gade, Lower Level               Street: 1212 Bjerge Gade, Lower Level

City, State, Zip: St. Thomas, USVI 00802            City, State, Zip: St. Thomas, USVI 00802

Phone: (340) 777-5170                               Phone: (340) 777-5170

Facsimile: (340) 777-5170                           Facsimile: (340) 777-5170

Email: info@lacm-usvi.com                           Email: info@lacm-usvi.com

**Member:**


Signed:_____

Name: _____

Title: _____

Date: _____

Entity: _____

Street:_____

City, State, Zip:_____

Phone:_____

Facsimile:_____

Email:_____

**Exhibit A.15**

**Amended and Restated
Separate Series Operating Agreement**

April 10, 2006

# Last Atlantis Partners LLC,
**a Delaware Series Limited Liability Company**

**LACM Proprietary Options, Share Class O**

**Amended and Restated
Separate Series Operating Agreement**

**April 10, 2006**

# Last Atlantis Partners LLC
# LACM Proprietary Options, Share Class O
#### a Delaware Series Limited Liability Company

THE INTERESTS HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE. THE INTERESTS ARE BEING OFFERED PURSUANT TO EXEMPTIONS PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT, REGULATION D THEREUNDER, CERTAIN STATE SECURITIES LAWS AND CERTAIN RULES PROMULGATED PURSUANT THERETO. THE INTERESTS MAY NOT BE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR (UNLESS WAIVED BY THE FUND MANAGER IN ITS SOLE DISCRETION) AN OPINION OF COUNSEL ACCEPTABLE TO THE FUND'S MANAGER THAT SUCH REGISTRATION IS NOT REQUIRED. TRANSFERABILITY OF THE INTERESTS IS FURTHER RESTRICTED BY THE TERMS OF THIS OPERATING AGREEMENT. THE INTERESTS HAVE NOT BEEN RECOMMENDED OR APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

PURSUANT TO AN EXEMPTION FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS WHOSE PARTICIPANTS ARE LIMITED TO QUALIFIED ELIGIBLE PARTICIPANTS, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION. THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

THE INTERESTS OFFERED HEREBY INVOLVE A HIGH DEGREE OF RISK. SEE "THE FUND - FUND OBJECTIVE", "RISK FACTORS" AND "CONFLICTS OF INTEREST" IN THE CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM.

*Any inquiries should be directed to:*
Last Atlantis Capital Management LLC
1212 Bjerge Gade, Lower Level, St. Thomas, USVI 00802
Phone: (340) 777-5170
Email: **info@lacm-usvi.com**

**AMENDED AND RESTATED**
**SEPARATE SERIES OPERATING AGREEMENT**

**of**

# LAST ATLANTIS PARTNERS, LLC
**LACM PROPRIETARY OPTIONS, SHARE CLASS O**

This Separate Series Operating Agreement is made and entered into, and is effective as of this 1st day of December, 2005, by and between Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company, as the Initial Member of this newly created Series and Last Atlantis Capital Management LLC as a Founder and a Member of the Company and Last Atlantis Capital Management LLC as the Manager of the Company and each other Person who execute a counterpart of this Operating Agreement, personally or by attorney-in-fact and is or will be admitted to the Company as a Member of the this Series.

<u>RECITALS</u>

WHEREAS, the parties hereto have heretofore formed a limited liability company pursuant to the Delaware Limited Liability Company Act by filing a Certificate of Formation of the Company with the office of the Secretary of the State of Delaware and by entering into the Operating Agreement; and

WHEREAS, it is intended by the parties hereto to create this additional Series with respect to a Separate Investment Share Class; and

WHEREAS, it is intended by the parties hereto that the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to this Series and the Separate Investment be enforceable against the assets of this Series and the Separate Investments only, and not against the assets of the Company generally or any other Series thereof; and

NOW THEREFORE, in consideration of the mutual promises and obligations contained herein, the parties, intending to be legally bound, hereby agree as follows:

1. <u>New Series</u>. In accordance with Section 2.01 of the Operating Agreement, the Founders hereby create this Series, which shall be a separate "Series" for purposes of the Operating Agreement. The purpose of this Series shall be limited to making the Separate Investment as detailed in the Confidential Private Placement Memorandum and as amended, supplemented or updated from time to time.

2. <u>Name of New Series</u>. The name of the New Series created by this Separate Series Operating Agreement shall be LACM Proprietary Options, Share Class O.

3. <u>Manager.</u> The Manager shall be called the Fund Manager. The initial Manager of this Series and who shall serve until a successor is elected, shall be Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company.

4. <u>Fund Manager.</u> The duly elected and qualified persons holding the office of Fund Manager shall be vested with the authority to act as and on behalf of the Company.

5. <u>Management.</u>  The business and affairs of this Series shall be vested in the Members of this Separate Series in accordance with this Separate Series Operating Agreement. Notwithstanding the foregoing, the management of this Series shall be vested in the Manager. A Manager need not be a Member.  Only Members or Managers associated with this Series shall direct, manage and control the business and affairs of this Series.

6. <u>Members.</u>  The initial Members of this Series shall be as set forth on the signature page of this Separate Series Operating Agreement and additional Members may be admitted at the sole discretion of the Fund Manager. The Series Membership Interests represents Interests only in this Series and not in the Company.

7. <u>Voting Units.</u>  All Membership Interests in this Series shall be denominated in units where one unit equals one dollar (U.S.) in that Member's Capital Account. Each unit shall have one vote at all matters pertaining this Series.   Each unit shall have the rights, and be subject to the obligations, identical to those of each other units of this Series. Majority vote controls the Series governance. However in all circumstances that overriding provisions in this Separate Series Operating Agreement and/or the Operating Agreement shall govern.

8. <u>Capitalized Terms.</u>  Capitalized terms used herein and not otherwise defined are used as defined in the Operating Agreement of the Company, and as amended, supplemented or updated from time to time.

9. <u>Agreement to be Bound</u>. Each of the undersigned agrees to be bound by the terms and provisions of this Separate Series Operating Agreement and the Operating Agreement.

10. <u>Headings</u>. The headings in this Separate Series Operating Agreement are included for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent, or intent of this Separate Series Operating Agreement or any provision hereof.

11. <u>Severability</u>.   The invalidity or unenforceability of any particular provision of this Separate Series Operating Agreement shall not affect the other provisions hereof, and this Separate Series Operating Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.

12. <u>Integration</u>.  This Separate Series Operating Agreement and the Operating Agreement constitute the entire agreement among the parties hereto pertaining to the subject matter hereof and supersede all prior agreements and understandings pertaining thereto.

13. <u>Counterparts</u>.   This Separate Series Operating Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document. All counterparts shall be construed together and shall constitute one instrument.

14. <u>Governing Law</u>.  This Separate Series Operating Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of Delaware, and all rights and remedies shall be governed by such laws without regard to principles of conflict of laws.

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below.

**Initial Member and Founder:**                    **Manager:**


Signed:/S Last Atlantis Capital Management LLC     Signed: /S Last Atlantis Capital Management LLC

Name: Last Atlantis Capital Management LLC         Name: Last Atlantis Capital Management LLC

Title: Initial Member                              Title: Fund Manager

Date: December 01, 2005                             Date: December 01, 2005

Entity: Last Atlantis Capital Management LLC       Entity: Last Atlantis Capital Management LLC

Street: 1212 Bjerge Gade, Lower Level              Street: 1212 Bjerge Gade, Lower Level

City, State, Zip: St. Thomas, USVI 00802           City, State, Zip: St. Thomas, USVI 00802

Phone: (340) 777-5170                              Phone: (340) 777-5170

Facsimile: (340) 777-5170                          Facsimile: (340) 777-5170

Email: info@lacm-usvi.com                          Email: info@lacm-usvi.com

**Member:**


Signed:_____

Name: _____

Title: _____

Date: _____

Entity: _____

Street:_____

City, State, Zip:_____

Phone:_____

Facsimile:_____

Email:_____

**Exhibit A.16**

**Amended and Restated
Separate Series Operating Agreement**

April 10, 2006

# Last Atlantis Partners LLC,

**a Delaware Series Limited Liability Company**

## LACM Discretionary Options, Share Class Q

**Amended and Restated**
**Separate Series Operating Agreement**

**April 10, 2006**

# Last Atlantis Partners LLC
# LACM Discretionary Options, Share Class Q

**a Delaware Series Limited Liability Company**

THE INTERESTS HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE. THE INTERESTS ARE BEING OFFERED PURSUANT TO EXEMPTIONS PROVIDED BY SECTION 4(2) OF THE SECURITIES ACT, REGULATION D THEREUNDER, CERTAIN STATE SECURITIES LAWS AND CERTAIN RULES PROMULGATED PURSUANT THERETO. THE INTERESTS MAY NOT BE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS OR (UNLESS WAIVED BY THE FUND MANAGER IN ITS SOLE DISCRETION) AN OPINION OF COUNSEL ACCEPTABLE TO THE FUND'S MANAGER THAT SUCH REGISTRATION IS NOT REQUIRED. TRANSFERABILITY OF THE INTERESTS IS FURTHER RESTRICTED BY THE TERMS OF THIS OPERATING AGREEMENT. THE INTERESTS HAVE NOT BEEN RECOMMENDED OR APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

PURSUANT TO AN EXEMPTION FROM THE COMMODITY FUTURES TRADING COMMISSION IN CONNECTION WITH POOLS WHOSE PARTICIPANTS ARE LIMITED TO QUALIFIED ELIGIBLE PARTICIPANTS, AN OFFERING MEMORANDUM FOR THIS POOL IS NOT REQUIRED TO BE, AND HAS NOT BEEN, FILED WITH THE COMMISSION. THE COMMODITY FUTURES TRADING COMMISSION DOES NOT PASS UPON THE MERITS OF PARTICIPATING IN A POOL OR UPON THE ADEQUACY OR ACCURACY OF AN OFFERING MEMORANDUM. CONSEQUENTLY, THE COMMODITY FUTURES TRADING COMMISSION HAS NOT REVIEWED OR APPROVED THIS OFFERING OR ANY OFFERING MEMORANDUM FOR THIS POOL.

THE INTERESTS OFFERED HEREBY INVOLVE A HIGH DEGREE OF RISK. SEE "THE FUND - FUND OBJECTIVE", "RISK FACTORS" AND "CONFLICTS OF INTEREST" IN THE CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM.

*Any inquiries should be directed to:*
Last Atlantis Capital Management LLC
1212 Bjerge Gade, Lower Level, St. Thomas, USVI 00802
Phone: (340) 777-5170
Email: **info@lacm-usvi.com**

**AMENDED AND RESTATED**
**SEPARATE SERIES OPERATING AGREEMENT**

**of**

# LAST ATLANTIS PARTNERS, LLC
**LACM DISCRETIOINARY OPTIONS, SHARE CLASS Q**

This Separate Series Operating Agreement is made and entered into, and is effective as of this 1st day of December, 2005, by and between Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company, as the Initial Member of this newly created Series and Last Atlantis Capital Management LLC as a Founder and a Member of the Company and Last Atlantis Capital Management LLC as the Manager of the Company and each other Person who execute a counterpart of this Operating Agreement, personally or by attorney-in-fact and is or will be admitted to the Company as a Member of the this Series.

<u>RECITALS</u>

WHEREAS, the parties hereto have heretofore formed a limited liability company pursuant to the Delaware Limited Liability Company Act by filing a Certificate of Formation of the Company with the office of the Secretary of the State of Delaware and by entering into the Operating Agreement; and

WHEREAS, it is intended by the parties hereto to create this additional Series with respect to a Separate Investment Share Class; and

WHEREAS, it is intended by the parties hereto that the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to this Series and the Separate Investment be enforceable against the assets of this Series and the Separate Investments only, and not against the assets of the Company generally or any other Series thereof; and

NOW THEREFORE, in consideration of the mutual promises and obligations contained herein, the parties, intending to be legally bound, hereby agree as follows:

1. <u>New Series</u>. In accordance with Section 2.01 of the Operating Agreement, the Founders hereby create this Series, which shall be a separate "Series" for purposes of the Operating Agreement. The purpose of this Series shall be limited to making the Separate Investment as detailed in the Confidential Private Placement Memorandum and as amended, supplemented or updated from time to time.

2. <u>Name of New Series</u>. The name of the New Series created by this Separate Series Operating Agreement shall be LACM Discretionary Options, Share Class Q.

3. <u>Manager.</u> The Manager shall be called the Fund Manager. The initial Manager of this Series and who shall serve until a successor is elected, shall be Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company.

4. <u>Fund Manager.</u> The duly elected and qualified persons holding the office of Fund Manager shall be vested with the authority to act as and on behalf of the Company.

5.   Management.  The business and affairs of this Series shall be vested in the Members of this Separate Series in accordance with this Separate Series Operating Agreement. Notwithstanding the foregoing, the management of this Series shall be vested in the Manager. A Manager need not be a Member.  Only Members or Managers associated with this Series shall direct, manage and control the business and affairs of this Series.

6.   Members.  The initial Members of this Series shall be as set forth on the signature page of this Separate Series Operating Agreement and additional Members may be admitted at the sole discretion of the Fund Manager. The Series Membership Interests represents Interests only in this Series and not in the Company.

7.   Voting Units.  All Membership Interests in this Series shall be denominated in units where one unit equals one dollar (U.S.) in that Member's Capital Account. Each unit shall have one vote at all matters pertaining this Series.   Each unit shall have the rights, and be subject to the obligations, identical to those of each other units of this Series. Majority vote controls the Series governance. However in all circumstances that overriding provisions in this Separate Series Operating Agreement and/or the Operating Agreement shall govern.

8.   Capitalized Terms.  Capitalized terms used herein and not otherwise defined are used as defined in the Operating Agreement of the Company, and as amended, supplemented or updated from time to time.

9.   Agreement to be Bound. Each of the undersigned agrees to be bound by the terms and provisions of this Separate Series Operating Agreement and the Operating Agreement.

10.   Headings. The headings in this Separate Series Operating Agreement are included for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent, or intent of this Separate Series Operating Agreement or any provision hereof.

11.   Severability.   The invalidity or unenforceability of any particular provision of this Separate Series Operating Agreement shall not affect the other provisions hereof, and this Separate Series Operating Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.

12.   Integration.   This Separate Series Operating Agreement and the Operating Agreement constitute the entire agreement among the parties hereto pertaining to the subject matter hereof and supersede all prior agreements and understandings pertaining thereto.

13.   Counterparts.   This Separate Series Operating Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document. All counterparts shall be construed together and shall constitute one instrument.

14.   Governing Law.  This Separate Series Operating Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of Delaware, and all rights and remedies shall be governed by such laws without regard to principles of conflict of laws.

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below.

**Initial Member and Founder:**                                    **Manager:**


Signed:/S Last Atlantis Capital Management LLC        Signed: /S Last Atlantis Capital Management LLC

Name: Last Atlantis Capital Management LLC           Name: Last Atlantis Capital Management LLC

Title: Initial Member                                Title: Fund Manager

Date: December 01, 2005                               Date: December 01, 2005

Entity: Last Atlantis Capital Management LLC          Entity: Last Atlantis Capital Management LLC

Street: 1212 Bjerge Gade, Lower Level                 Street: 1212 Bjerge Gade, Lower Level

City, State, Zip: St. Thomas, USVI 00802              City, State, Zip: St. Thomas, USVI 00802

Phone: (340) 777-5170                                 Phone: (340) 777-5170

Facsimile: (340) 777-5170                             Facsimile: (340) 777-5170

Email: info@lacm-usvi.com                             Email: info@lacm-usvi.com

**Member:**


Signed:_____

Name: _____

Title: _____

Date: _____

Entity: _____

Street:_____

City, State, Zip:_____

Phone:_____

Facsimile:_____

Email:_____

**Exhibit B**

**Amended and Restated
Agreement To Terminate Series**

April 10, 2006

# Last Atlantis Partners LLC,

**a Delaware Series Limited Liability Company**

**AMENDED AND RESTATED
AGREEMENT TO TERMINATE SERIES**

**of**

**LAST ATLANTIS PARTNERS, LLC**

This Agreement to Terminate Series (this "Termination Agreement"), is entered into by and between Last Atlantis Capital Management, LLC, as a member and the Manager of Last Atlantis Partners, LLC (the "Company") not associated with the Terminated Series (as defined below) and Last Atlantis Capital Management, LLC, as a Member and the Manager of the Terminated Series and all other Members of the Terminated Series.

<u>RECITALS</u>

WHEREAS, the parties hereto have heretofore formed a limited liability company pursuant to the Delaware Limited Liability Company Act by filing a Certificate of Formation of the Company with the office of the Secretary of State of the State of Delaware and by entering into the Operating Agreement; and the Separate Series Operating Agreement of the Terminated Series;

WHEREAS, it is intended by the parties hereto to terminate a Series of the Company; and

NOW THEREFORE, in consideration of the mutual promises and obligations contained herein, the parties, intending to be legally bound, hereby agree as follows:

1.    <u>Terminating Series</u>. In accordance with Section 12.02 of the Operating Agreement and Separate Series Operating Agreement, the Manager of the Company, the Manager of the Terminated Series, the Members of the Company, and the Members of the Terminated Series hereby agree to terminate the Series known as _____ (the "Terminated Series").

2.    <u>Winding up of Series</u>. The affairs of the Terminating Series shall be wound up in accordance with Section 12.03 of the Operating Agreement.

3.    <u>Company Continues Without Dissolution</u>. Notwithstanding the fact that the Terminated Series has been terminated under this Termination Agreement, unless otherwise dissolved in accordance with Section 12.01 of the Operating Agreement, the Company shall continue without dissolution.

4.    <u>Capitalized Terms</u>.  Capitalized terms used herein and not otherwise defined are used as defined in the Operating Agreement of the Company, dated December 2005 and the Separate Series Operating Agreement of the Terminate Series dated December 1, 2005 and as amended, supplemented or updated from time to time.

5.    <u>Headings</u>. The headings in this Termination Agreement are included for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent, or intent of this Termination Agreement or any provision hereof.

6.  <u>Severability</u>. The invalidity or unenforceability of any particular provision of this Termination Agreement shall not affect the other provisions hereof, and this Termination Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.

7.  <u>Integration</u>. This Termination Agreement and the Operating Agreement and the Separate Series Operating Agreement constitute the entire agreement among the parties hereto pertaining to the subject matter hereof and supersede all prior agreements and understandings pertaining thereto.

8.  <u>Counterparts</u>. This Termination Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document. All counterparts shall be construed together and shall constitute one instrument.

9.  <u>Governing Law</u>. This Termination Agreement and the rights of the parties hereunder shall be interpreted in accordance with the laws of the State of Delaware, and all rights and remedies shall be governed by such laws without regard to principles of conflict of laws.

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below.

**Initial Member and Founder:**                    **Manager:**

Signed:/S Last Atlantis Capital Management LLC     Signed: /S Last Atlantis Capital Management LLC

Name: Last Atlantis Capital Management LLC         Name: Last Atlantis Capital Management LLC

Title: Initial Member                              Title: Fund Manager

Date: December 01, 2005                             Date: December 01, 2005

Entity: Last Atlantis Capital Management LLC       Entity: Last Atlantis Capital Management LLC

Street: 1212 Bjerge Gade, Lower Level              Street: 1212 Bjerge Gade, Lower Level

City, State, Zip: St. Thomas, USVI 00802           City, State, Zip: St. Thomas, USVI 00802

Phone: (340) 777-5170                              Phone: (340) 777-5170

Facsimile: (340) 777-5170                          Facsimile: (340) 777-5170

Email: info@lacm-usvi.com                          Email: info@lacm-usvi.com

**Member:**

Signed:_____

Name: _____

Title: _____

Date: _____

Entity: _____

Street:_____

City, State, Zip:_____

Phone:_____

Facsimile:_____

Email:_____

## Subscription Agreement
**April 2006**

# Last Atlantis Partners LLC
**a Delaware Series Limited Liability Company**

This Subscription Agreement ("Subscription Agreement") is made by and among Last Atlantis Partners LLC, a Delaware Series Limited Liability Company ("Fund"), Last Atlantis Capital Management LLC, a United States Virgin Islands Limited Liability Company, the Fund's Manager ("Fund Manager"), and the subscriber ("Subscriber") named on the signature page of this Subscription Agreement.

WHEREAS, the Subscriber desires to acquire a Membership Interest ("Interest") in and to become a Member of a particular Share Class or multiple Share Classes of the Fund.

WHEREAS, the Subscriber understands and acknowledges that no federal, state, or regulatory agency has made any findings or determinations as to the merits or fairness of an investment in the Fund.

WHEREAS, the Subscriber acknowledges that the Fund intends to convert from a stand-alone fund to a master feeder structure as described in the Memorandum and hereby consents to the conversion.

WHEREAS, the Subscriber acknowledges that it has not relied on the Fund or the Fund Manager for any tax advice, and that the Subscriber has relied solely on its own tax advisors for advice regarding the tax implications and consequences of an investment in the Fund. If the Subscriber is a tax-exempt entity, it acknowledges that the Fund may use "borrowed funds" to invest, and that as a result an investment in the Fund may generate taxable income to it.

WHEREAS, capitalized terms used but not otherwise defined in this Subscription Agreement shall have the meanings specified in the Fund's Operating Agreement (dated "September, 2005" and as amended from time to time, the "Operating Agreement"), in the form that accompanies the Confidential Private Placement Memorandum (dated "September, 2005" and as amended, supplemented or updated from time to time, the "Memorandum").

NOW, THEREFORE, in consideration of the foregoing and of the mutual covenants and agreements set forth in this Subscription Agreement, the parties hereto agree as follows:

## ARTICLE I
## SUBSCRIPTION FOR THE INTEREST

1.1    <u>Subscription for Interest</u>. Subject to and in accordance with the respective terms and conditions of this Subscription Agreement, the Operating Agreement, and the Memorandum, Subscriber hereby irrevocably subscribes for and agrees to purchase the Interest and to become a Share Class(es) Member; and to be bound by all of the

provisions of the Operating Agreement, and to make a cash Capital Contribution to the Share Class(es) of the Fund in the amount(s) set forth on the signature page to this Subscription Agreement.

(a)     Acceptance or Rejection. The Fund Manager may reject the Subscriber's subscription, in whole or in part, for any reason and in its sole discretion. If rejected, the Fund will promptly return the subscription funds and this Subscription Agreement will be void.  If the Fund Manager accepts this Subscription the Subscriber will become a non-managing Member of the Fund and bound by the Operating Agreement.

(b)     Involuntary Withdrawal. The Fund Manager has the right to involuntarily redeem any Member's Interest at any time with or without cause.

(c)     Prevailing Net Asset Value. The Fund will redeem an Interest only at the then-prevailing Net Asset Value, subject to the restrictions and conditions set forth in the Memorandum and the Operating Agreement.

(d)     Payment of Fees. The Subscriber hereby authorizes the Fund to pay the Fund Manager and the Underlying Investment Managers the Asset Management Fees and the Performance Fees as specified in the Memorandum and the Advisory Agreement. The Performance Fee may create an incentive for the Fund Manager and/or the Underlying Investment Managers to make investments that are more speculative or subject to greater risk than if no such Performance Fee existed.

(e)     Anti-Money Laundering Information. The Subscriber agrees to provide any information deemed necessary by the Fund to comply with its anti-money laundering program and related responsibilities as required by the Fund Manager.

(f)     Prohibited Investor. The Subscriber acknowledges that the Fund prohibits any investment in the Fund by or on behalf of the following persons (each, a "Prohibited Investor"):

(i)     a person or entity whose name appears on:
(aa)    the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Office of Foreign Assets Control; and/or
(bb)    such other lists of prohibited persons and entities as may be mandated by applicable law or regulation, e.g., federal control lists.
(ii)    a "Foreign Shell Bank", for purposes of this Subscription Agreement is an organization that:
(aa)    is organized under the laws of a non-U.S. country;
(bb)    engages in the business of banking;
(cc)    is recognized as a bank by the bank supervisory or monetary authority of the country of its organization or principal banking operations;
(dd)    receives deposits to a substantial extent in the regular course of its business;

(ee) has the power to accept demand deposits (a "Foreign Bank"), but does not include the U.S. branches or agencies of a foreign bank without a place of business that is maintained by such Foreign Bank and is located at a fixed address, other than solely a post office box or an electronic address, in a country in which the Foreign Bank is authorized to conduct banking activities, at which location the Foreign Bank:

    (1) employs one or more individuals on a full-time basis;

    (2) maintains operating records related to its banking activities;

    (3) is subject to inspection by the banking authority that licensed the Foreign Bank to conduct banking activities in any country (a "Physical Presence"), but does not include a Foreign Shell Bank that:

        (aaa) is an affiliate of a depository institution, credit union, or Foreign Bank that maintains a Physical Presence in the United States or a non-U.S. country, as applicable; or

        (bbb) is subject to supervision by a banking authority in the country regulating such affiliated depository institution, credit union, or Foreign Bank.

(iii) a person or entity resident in or whose subscription funds are transferred from or through an account in any foreign country that has been designated as non-cooperative with international anti-money laundering principals or procedures by an intergovernmental group or organization, such as the Financial Action Task Force on Money-Laundering, of which the United States is a member and with which designation the United States representative to the group or organization continues to concur (each, a "Non-Cooperative Jurisdiction").

(g) <u>Prohibited Investor Affirmation</u>. The Subscriber affirms that neither any person controlling, controlled by, or under common control with it, nor any person having a beneficial interest in it, is a Prohibited Investor, and that it is not investing and will not invest in the Fund on behalf of or for the benefit of any Prohibited Investor. The Subscriber agrees to promptly notify the Fund of any change in information affecting this representation and covenant.

(h) <u>Prohibited Investor</u>. The Subscriber acknowledges that if, following its investment in the Fund, the Fund Manager reasonably believes that the Subscriber is a Prohibited Investor or has otherwise breached its representations and covenants hereunder, the Fund may be obligated to freeze its investment either by prohibiting additional investments, declining any withdrawal requests and/or segregating the assets constituting the investment in accordance with applicable regulations, or its investment may immediately be redeemed by the Fund, and it shall have no claim against the Fund, or the Fund Manager for any form of damages as a result of any of the aforementioned actions.

    (i)    <u>Subscriber's Identity</u>. The Subscriber acknowledges that additional investments by the Subscriber may be refused and/or a request for withdrawal may be delayed or declined if the Fund reasonably believes it does not have satisfactory evidence of the Subscriber's identity.

    (j)    <u>USA PATRIOT Act</u>. The Subscriber represents that, except as otherwise disclosed to the Fund in writing:

        (i)    it is not:

            (aa)    a senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation (a "Senior Foreign Political Leader"), including any corporation, business or other entity that has been formed by, or for the benefit of, a Senior Foreign Political Figure;

            (bb)    any member of a Senior Foreign Political Figure's immediate family, including the Senior Foreign Political Figure's parents, siblings, spouse, children and in-laws;

            (cc)    any person who is widely and publicly known internationally to maintain an unusually close relationship with the Senior Foreign Political Figure, including a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the Senior Foreign Political Figure.

        (ii)    it is not resident in, or organized or chartered under the laws of, a jurisdiction that has been designated by the Secretary of the Treasury under Section 311 or 312 of the USA PATRIOT Act as warranting special measures due to money laundering concerns; and

        (iii)    its subscription funds do not originate from, nor will they be routed through, an account maintained at a Foreign Shell Bank, an "offshore bank," or a bank organized or chartered under the laws of a Non-Cooperative Jurisdiction.

    (k)    <u>Withdrawal Proceeds</u>. The Subscriber acknowledges and agrees that any withdrawal proceeds paid to it will be paid to the same account from which its investment in the Fund was originally remitted unless the Fund agrees otherwise.

    (l)    <u>Payment of Subscription Funds</u>. Subscription funds should be remitted to the Fund concurrently with the delivery of this Subscription Agreement to the Fund. Subscription Funds are to be remitted via wire transfer for further credit to the bank account of the Share Class in accordance with the wiring instructions as set forth on the Signature page of this Subscription Agreement.  The Subscription Agreement documents are to be forwarded to the Fund by facsimile and/or overnight mail to the Fund's fax number and/or address as set forth on the signature page of this Subscription Agreement.

    (m)    <u>Minimum Investment</u>. The Subscriber acknowledges that his Capital Contribution to the Fund is subject to a minimum investment of one million dollars ($1,000,000 USD).  The Fund Manager in its sole discretion may waive the minimum investment to a Subscriber without waiving the minimum to all subscribers.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES OF THE SUBSCRIBER

2.1 <u>Representations and Warranties</u>. In connection with its subscription for the Interest, and as a material inducement to the Fund to issue the Interest to the Subscriber, the Subscriber hereby makes the following representations and warranties to the Fund Manager:

(a) <u>Power and Authority</u>.  The Subscriber is fully authorized, empowered and qualified to execute and deliver this Subscription Agreement and the Operating Agreement collectively (the "Subscriber Agreement"), to subscribe for and purchase the Interest and to perform its obligations under, and to consummate the transactions that are contemplated by, each Subscriber Agreement. Without limiting the generality of the foregoing, the subscription for and the purchase of the Interest, and the execution and delivery of each of the Subscriber Agreements, by the Subscriber have been authorized by all necessary corporate or other action of, or on behalf of, the Subscriber, and each of the Subscriber Agreements is a legal, valid and binding obligation of the Subscriber, enforceable against the Subscriber in accordance with its terms.  The signature of the person, individual or other party signing any Subscriber Agreement as, or on behalf of, the Subscriber is binding on and enforceable against the Subscriber.

(b) <u>Compliance with Laws; No Conflict</u>.  The execution and delivery of the Subscriber Agreement by or on behalf of the Subscriber and the performance of the Subscriber's obligations under, and the consummation of the transactions contemplated by, the Subscriber Agreement do not and will not conflict with or result in any violation of, or default under, any provision of any charter, bylaws, Trust Agreement, Partnership Agreement, Operating Agreement, or other governing instrument applicable to the Subscriber, or other agreement or instrument to which the Subscriber is a party or by which the Subscriber is, or any of its assets are, bound, or any permit, franchise, judgment, decree, statute, rule, regulation or other law applicable to the Subscriber or the business or assets of the Subscriber.

(c) <u>Binding Effect</u>.  The Subscriber acknowledges that this Subscription Agreement may not be assigned by the Subscriber without the prior written consent of the Fund Manager and may not be canceled, terminated or revoked by the Subscriber.

(d) <u>Residence and Principal Place of Business</u>.  The address set forth on the signature page to this Subscription Agreement is the Subscriber's correct residence or principal place of business (as applicable), and the Subscriber has no present intention of moving its residence or principal place of business (as applicable) to any other domestic or foreign jurisdiction.

(e) <u>Receipt of Documents Access to Information</u>.  The Subscriber has received copies of the Memorandum and the Subscriber Agreement.  The Subscriber has carefully reviewed and is familiar with the terms of the Memorandum and the Subscriber Agreement.  The Subscriber has been given the opportunity to ask questions, and has received satisfactory answers, concerning the terms and

conditions of an investment in the Fund, and has been given the opportunity to obtain any additional information, and has obtained all such information requested by the Subscriber, in order to evaluate the merits and risks of an investment in the Fund, and to verify the accuracy of the information contained in the Memorandum and the Subscriber Agreement.

(f)     <u>Reliance</u>.  The Subscriber has relied on nothing other than the Memorandum and the Subscriber Agreement (including all exhibits and appendices thereto) in deciding whether to make an investment in the Fund.

(g)     <u>Sophistication and Economic Loss</u>.  The Subscriber is a sophisticated investor with such knowledge and experience in business and financial matters as renders the Subscriber able to evaluate the merits and risks of an investment in the Fund, and the Subscriber's financial situation is such that the Subscriber is able to bear the economic risk and lack of liquidity of an investment in the Fund.

(h)     <u>Investment Risks</u>.  The Subscriber understands that the purchase of the Interest involves certain risks, including those set forth under the caption "Risk Factors" in the Memorandum and, without limiting the generality of the foregoing, specifically understands that the Fund has no operating history.

(i)     <u>Investment Intent</u>.  The Subscriber is acquiring the Interest for its own account for investment only, and not with a view to any distribution thereof in violation of the Securities Act of 1933, as amended (the "Securities Act"), or any other applicable domestic or foreign securities law, and the Subscriber has no present plans to enter into any contract, undertaking, agreement or arrangement for any such distribution.

(j)     <u>Subsequent Subscriptions</u>. If the Subscriber subscribes for additional Interests in the same Share Class at a later date, the Subscriber shall be deemed to have re-executed this Subscription Agreement in subscribing for those Interests.  If the Subscriber subscribes for an Interest in a Share Class other than a Share Class for which the Subscriber has executed an original Subscription Agreement, the Subscriber is required to execute an original Subscription agreement for the new Share Class(es).

(k)     <u>No Registration of Interest; Limitations on Transfer</u>.  The Subscriber acknowledges that, based in part upon its representations and warranties contained in this Subscription Agreement and in reliance upon applicable federal and state exemptions, no Interest in the Fund acquired by the Subscriber has been or will be registered under the Securities Act or the securities laws of any domestic or foreign jurisdiction. Accordingly, no Interest may be transferred, offered or sold unless the Interests are registered under the Securities Act and any applicable state and foreign securities laws or exemptions from such registration requirements are available.  In addition, the Subscriber understands that the provisions of the Operating Agreement further restrict sales or transfers of the Interests. The Subscriber hereby agrees that it will not, directly or indirectly, assign, transfer, offer, sell, pledge, hypothecate or otherwise dispose of all or any part of the Interest (or solicit any offers to buy, purchase or otherwise acquire or take a pledge of all or any part of the Interest) except in accordance with the registration provisions of the Securities Act and the securities laws of any other

applicable domestic or foreign jurisdiction, or available exemptions from such registration provisions, and the terms of the Operating Agreement.

(l) <u>No Advertising</u>. Subscriber confirms that the Interest was not offered to it by widespread solicitation or advertising.

(m) <u>Record Name; Certificates</u>. The Interests issued to the Subscriber will be recorded on the Fund's books in the name of the Subscriber and not any nominee. Paper Interest certificates will not be issued to the Subscriber by the Fund.

**Qualified Investor**

(n) <u>Qualified Investor</u>. The Subscriber is an "accredited investor" because the Subscriber is:

*(Please initial each applicable section.)*

(*initial here*) a bank as defined in Section 3(a)(2) of the Securities Act, or a savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity; a broker-dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended (the "Securities Exchange Act"); an insurance company as defined in Section 2(13) of the Securities Act; an investment company registered under the Investment Company Act of 1940, as amended (the "Investment Company Act"), or a business development company as defined in Section 2(a)(48) of the Investment Company Act; a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958; a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000, or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors.

(*initial here*) a private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940, as amended (the "Investment Advisers Act").

(*initial here*) an organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000.

(*initial here*)    a director, executive officer, or managing member of the issuer of the securities being offered or sold; or a director, executive officer, or managing member of the Fund Manager managing that issuer.

(*initial here*)    a natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his or her purchase exceeds $1,000,000.

(*initial here*)    a natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that reasonable expectation of reaching the same income level in the current year.

(*initial here*)    a trust with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) of Regulation D promulgated by the Securities and Exchange Commission under the Securities Act.

(*initial here*)    an entity in which all of the equity owners are accredited investors (as defined above).

**Qualified Purchaser**

(o)    <u>Qualified Purchaser</u>.   The Subscriber is a "qualified purchaser" because the Subscriber is:

*(Please initial each applicable section.)*

(*initial here*)    a natural person (individual) who owns not less than $5,000,000 in investments ("investments" does not include the value of personal residences or in closely-held companies that are controlled by Subscriber).

(*initial here*)    an entity that owns not less than $5,000,000 in investments and that is owned solely by two or more members of the same family who are related as siblings, children, spouses, grandparents or grandchildren; an estate of two or more such family members; or a trust or foundation established for two or more such family members.

(*initial here*)    a trust not covered above that was not formed for the purpose of investing in the Fund and whose settlor and trustee are qualified purchasers.

(*initial here*)    an entity that owns and invests on a discretionary basis not less than $25,000,000 in investments.

*(initial here)*   a qualified institutional buyer (as defined in paragraph (a) of Rule 144A under the 1933 Act) acting for its own account, the account of another qualified institutional buyer, or the account of a qualified purchaser (as defined by the 1940 Act) and the assignee is not a securities dealer (as described in paragraph (a)(1)(ii) of Rule 144A under the 1933 Act), an employee benefit plan, or a trust fund that holds the assets of an employee benefit plan.

*(initial here)*   a qualified institutional buyer that is a dealer in securities registered as such under the Securities Exchange Act of 1934 and the assignee owns and invests on a discretionary basis at least $25,000,000 in securities of issuers that are not affiliated persons of the dealer.

*(initial here)*   a qualified institutional buyer that is an employee benefit plan or a trust fund that holds the assets of such a plan and the investment decisions with respect to the plan are made solely by the fiduciary, trustee or sponsor of such plan.

*(initial here)*   an entity in which all of the equity owners are qualified purchasers (as defined above).

**Commodities Regulation**

**Qualified Eligible Participant Status**

(p)   <u>Qualified Eligible Participant Status</u>.   The Subscriber is a "qualified eligible participant" ("QEP") within the meaning of Commodity Futures Trading Commission ("CFTC") Rule 4.7 under the Commodity Exchange Act because the Subscriber:

*(Please initial each applicable section.)*

*(initial here)*   owns securities of issuers not affiliated with Subscriber (including the Fund) and other investments with an aggregate market value of at least $2,000,000 and is an "accredited investor".

*(initial here)*   is a person, acting for its own account or for the account of a QEP, who is:

(i)   a "futures commission merchant" registered pursuant to Section 4d of the Commodity Exchange Act;

(ii)   a broker or dealer registered pursuant to Section 15 of the Securities Exchange Act;

(iii)   a registered commodity pool operator who has been registered and active as such for two years or who operates pools which, in the aggregate, have total assets in excess of $5,000,000;

(iv)   a registered commodity trading adviser who has been registered and active as such for two years or who provides commodity interest trading advice to commodity accounts which, in the aggregate, have total assets in excess of $5,000,000;

(v)     a commodity pool operator and the commodity trading adviser of the Fund.

(*initial here*)     is not a "United States person." For this purpose, "United States" means the United States, its states, territories or possessions, or an enclave of the United States government, its agencies or instrumentalities, and a person is not a "United States person" if such person is:

(i)     a natural person who is not a resident of the United States;

(ii)    a partnership, corporation or other entity organized principally for passive investment, organized under the laws of a foreign jurisdiction and which has its principal places of business in a foreign jurisdiction;

(iii)   an estate or trust, the income of which is not subject to United States income tax regardless of source;

(iv)    an entity organized principally for passive investment such as a pool, investment company or other similar entity *provided* that units of participation in the entity held by United States persons represent in the aggregate less than 10% of the beneficial interests in the entity, and that such entity was not formed principally for the purpose of facilitating investment by United States persons in a pool with respect to which the operator is exempt from certain requirements of Part 4 of the CFTC's regulations by virtue of its participants not being United States persons; or

(v)     a pension plan for the employees, officers, or principals of an entity organized and with its principal place of business outside the United States.

(*initial here*)     is an employee benefit plan within the meaning of ERISA:

(i)     the investment decision of which are made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, savings and loan association, insurance company, or registered investment adviser;

(ii)    with total assets in excess of $5,000,000;

(iii)   if a self-directed plan, with investment decisions made solely by persons that are QEPs.

(*initial here*)     is a plan established and maintained by a state, a political subdivision thereof or an agency or instrumentality thereof, for the benefit of its employees, with total assets in excess of $5,000,000.

(*initial here*)     is an entity in which all of the unit holders or participants are QEPs.

**Commodity Pool Status**

(q)      <u>Commodity Pool Status</u>. The Fund is a "commodity pool" under the Commodity Exchange Act and thus must comply with certain rules and regulations adopted under that statute as well as certain rules and regulations of the National Futures Association.  Any partnership, investment trust or similar entity which invests in the Fund may likewise be a "commodity pool" and, therefore, may be required to comply with such rules and regulations.

*(If the Subscriber is not a natural person, please initial each applicable section.)*

(*initial here*)      The Subscriber represents that it is duly registered as a "commodity pool" with the Commodities Futures Trading Commission and the National Futures Association or is exempt from such registration.

(*initial here*)      The Subscriber is unable to so represent.

**Investment Company Act**

(r)      <u>Investment Company Act</u>.   If the Subscriber is a natural person, please skip this section and continue with the next section. If the Subscriber is not a natural person, please complete each portion of this section.

*(You must initial one of the following two sections)*

(*initial here*)      The Subscriber was not formed, organized, reorganized, capitalized or recapitalized for the purpose of making an investment in the Fund.

(*initial here*)      The Subscriber is unable to so represent. Please attach a schedule that includes the name and address of each shareholder, partner, member or other beneficial owner of the Subscriber. **The Subscriber warrants that it will promptly notify the Fund Manager in writing of any changes to such schedule at any time during the Subscriber's investment in the Fund.**

*(You must initial one of the following two sections)*

(*initial here*)      The Subscriber's Capital Contribution does not exceed 40% of its total assets and does not exceed 40% of its committed capital.

(*initial here*)      The Subscriber is unable to so represent. Please attach a schedule that includes the name and address of each shareholder, partner, member or other beneficial owner of the Subscriber. **The Subscriber warrants that it will promptly notify the Fund Manager in writing of any changes to such schedule at any time during the Subscriber's investment in the Fund.**

*(You must initial one of the following two sections)*

(*initial here*)    The shareholders, partners, members or other beneficial owners of the Subscriber (including plan participants if the Subscriber is an employee benefit or pension plan) do not, and will not, have individual discretion as to their participation in particular investments made by the Subscriber.

(*initial here*)    The Subscriber is unable to so represent. Please attach a schedule that includes the name and address of each shareholder, partner, member or other beneficial owner of the Subscriber. **The Subscriber warrants that it will promptly notify the Fund Manager in writing of any changes to such schedule at any time during the Subscriber's investment in the Fund.**

*(You must initial one of the following two sections)*

(*initial here*)    The Subscriber is not an "investment company" that is registered or required to be registered under the Investment Company Act.

(*initial here*)    The Subscriber is unable to so represent. Please attach a schedule listing the name and address of each beneficial owner of such investment company's shares. **The Subscriber warrants that it will promptly notify the Fund Manager in writing of any changes to such schedule at any time during the Subscriber's investment in the Fund.**

*(You must initial one of the following two sections)*

(*initial here*)    The Subscriber is not relying on the exclusions set forth in Section 3(c)(1) or Section 3(c)(7) of the Investment Company Act as the basis for its exclusion from the definition of "investment company" set forth in Section 3(a) of the Investment Company Act.

(*initial here*)    The Subscriber is unable to so represent. Please attach a schedule that includes the name and address of each shareholder, partner, member or other beneficial owner of the Subscriber. **The Subscriber warrants that it will promptly notify the Fund Manager in writing of any changes to such schedule at any time during the Subscriber's investment in the Fund.**

**Investment Advisers Act**

(s)    <u>Investment Advisers Act.</u>

*(You must initial one of the following two sections)*

(*initial here*)    The Subscriber represents and warrants that it is a "qualified client" in that the Subscriber is a natural person or "company" (as defined below) that at the time of becoming a Share Class Member;

(i)    has at least $750,000 under the management of the Fund Manager (including the amount invested in the Fund) or

(ii)    has a net worth of at least $1,500,000. "Company" means a corporation, partnership, association, a joint-stock company, a trust or an organized group of any of the foregoing, whether or not incorporated. However, "company" does not include an investment company registered or required to be registered under the Investment Company Act or exempt from registration under Section 3(c)(1) of such Act or a "business development company" (as defined in Section 202(a)(22) of the Investment Advisers Act) unless each of the equity owners of such entity is itself a "qualified client".

(*initial here*)    The Subscriber is unable to so represent.

## NASD

(t)    <u>NASD Free-Riding and Withholding Interpretation</u>.

*(You must initial one of the following two sections)*

(*initial here*)    Subscriber represents and warrants that it is not a member firm of the National Association of Securities Dealers, Inc. (the "NASD") or any person associated with any such NASD member firm or any person to whom any NASD member firm or any person associated therewith would be prohibited or otherwise restricted under the Free-Riding and Withholding Interpretation of the NASD, Section IM-2110-1 of the NASD's Conduct Rules (the "NASD Interpretation"), from selling "hot issues" (as defined in the NASD Interpretation).

(*initial here*)    The Subscriber is unable to so represent.

## ERISA

(u)    <u>ERISA</u>.  The Subscriber is/is not a "benefit plan investor" within the meaning of paragraph (f)(2) of the Department of Labor plan asset regulations (29 CFR §2510.3-101), as indicated by marking one of the following boxes:

*(You must initial one of the following two sections)*

(*initial here*)    is a benefit plan investor

(*initial here*)    is not a benefit plan investor

<u>Note</u>: "Benefit plan investors" include, but are not limited to, individual retirement accounts, pension, profit-sharing and stock bonus plans and governmental plans.

**Tax Year**

(v)    <u>Tax Year</u>.  The Subscriber's tax year ends on:

*(You must initial one of the following two sections)*

*(initial here)*    December 31

*(initial here)*    Other:_____ *(please specify).*

**Tax Exempt Status**

(w)    <u>Tax Exempt Status</u>. The Subscriber is/is not an organization that:

(i)    the income of which is exempt from taxation under Section 401 or 501 of the Code; or

(ii)    that generally is taxed on its income under the Code only to the extent that it is engaged in an "unrelated trade or business" within the meaning of Section 513(a) of the Code (a "tax exempt organization").

*(You must initial one of the following two sections)*

*(initial here)*    is a tax exempt organization.

*(initial here)*    is not a tax exempt organization.

**United States Taxable Investors Only**

(x)    <u>United States Taxable Investors Only</u>. The Subscriber hereby certifies, under the penalties of perjury, that the Social Security or taxpayer identification number shown on this Subscription Agreement next to my name is my true, correct and a complete Social Security or taxpayer identification number and that the following acknowledgement of my backup withholding status is true, correct and complete.

*(You must initial one of the following two sections)*

*(initial here)*    I am not subject to backup withholding.

*(initial here)*    I am subject to backup withholding.

**Non-United States Investors Only**

(y)    <u>Non-United States Investors Only</u>. The Subscriber hereby certifies, under the penalties of perjury, that:

*(You must initial the following section)*

*(initial here)*    I hereby certify that I am a non-resident alien for United States federal income tax purposes and I am not a citizen or resident of the United States.

**Investment Representative**

    (z)    <u>Investment Representative</u>. The undersigned Investment Representative, under the penalties of perjury, certifies that they are legally empowered by the Subscriber to enter into this agreement and that they have informed the Subscriber of all pertinent facts relating to the Memorandum, Operating Agreement, liquidity and marketability of the Interests, as set forth in the Memorandum, Operating Agreement and Subscription Agreement, and that the completed questionnaire above is a true and accurate statement of the Subscriber's financial status and domicile.

*(You must initial and complete the following section)*

(*initial here*)    I hereby certify under the penalties of perjury that the information provided herein is true and accurate to the best of my knowledge.

Investment Representative:

Signature: _____

Name: _____

Title: _____

Company: _____

Date: _____

2.2    <u>Effect and Time of Representations</u>. The Subscriber's representations and warranties set forth in this Subscription Agreement are true, and have been complied with, as of the date of the Subscriber's execution of this Subscription Agreement and shall be true and correct as of the Subscriber's admission to the Fund as a Share Class Member. The Subscriber acknowledges that the Fund and each Member thereof have relied and will rely upon the representations and warranties of the Subscriber set forth in this Subscription Agreement, and that all such representations and warranties shall survive the execution and delivery of the Subscriber Agreement notwithstanding any knowledge on the part of the Fund or the Fund Manager of any breach of any such representation or warranty, and the issue and sale of the Interest. The Subscriber hereby agrees to indemnify and hold harmless the Fund, the Fund Manager, and their respective affiliates, together with the directors, officers and employees of each of the foregoing, from and against any and all claims, damages and liabilities (including without limitation reasonable attorney fees) resulting from, arising out of or relating to any breach of any representation or warranty contained in this Article II.

## ARTICLE III
## POWER OF ATTORNEY

3.1     Power of Attorney. The Subscriber hereby constitutes and appoints the Fund Manager as the Subscriber's true and lawful attorney-in-fact, with full power and authority in the Subscriber's name, place and stead to make, execute, deliver, acknowledge, publish, file and swear to in the execution, delivery, acknowledgment, filing and/or recording of:

(a)     the Operating Agreement, and any amendments thereto as may be required to effect:
 (i)  admission of additional Members;
 (ii)  assignment or transfers of Interests;
 (iii)  additional capital contributions;
 (iv)  withdrawal of Members;

(b)     the Fund's Certificate of Formation required under the laws of the State of Delaware or the laws of any other jurisdiction in which such Certificate is required to be filed and any amendments thereto or cancellation thereof;

(c)     any certificates, instruments and documents, including without limitation, fictitious name certificates, as may be required by, or may be appropriate under, the laws of the United States, the laws of the State of Delaware or any other state or jurisdiction in which the Fund is doing or intends to do business;

(d)     any other instrument which may be required to be filed by the Fund under the laws of any jurisdiction or by any governmental agency, or which such attorneys-in-fact, or any of them, deem advisable to file; and

(e)     any documents which may be required to effect the admission of a successor to the Fund Manager, a Substitute Share Class Member, or the dissolution and termination of the Fund, in accordance with the terms of the Operating Agreement.

3.2     Irrevocability; Survivability. The foregoing grant of authority:

(a)     is a Special Power of Attorney coupled with an Interest and is irrevocable;

(b)     may be exercised by such attorneys-in-fact for the Subscriber, and the Subscriber's name shall be listed in the instrument as a Share Class Member; and

(c)     shall survive the Subscriber's delivery of an assignment of the Interest except that where the assignee thereof has been approved by the Fund Manager for admission to the Fund as a Substitute Share Class Member as provided for in the Operating Agreement, the Special Power of Attorney shall survive the delivery of such assignment for the sole purpose of enabling such attorneys-in-fact, or any of them, to execute, acknowledge and file any instrument necessary to effect such substitution.

3.3 <u>Binding Effect; Waiver of Defenses; Ratification</u>. The Subscriber hereby agrees to be bound by all the representations of the Subscriber's attorneys-in-fact and waives any and all defenses which may be available to the Subscriber to contest, negate or disaffirm the actions of such attorneys-in-fact, or any of them, under this Power of Attorney, and hereby ratifies and confirms all acts which said attorneys-in-fact, or any of them, may take as attorneys-in-fact hereunder in all respects as though performed by the Subscriber.

3.4 <u>Conflicts with Operating Agreement</u>. In the event of any conflict between the provisions of the Operating Agreement and any document executed or filed by the attorneys-in-fact pursuant to this Power of Attorney, the Operating Agreement shall govern.

## ARTICLE IV
## MISCELLANEOUS

4.1 <u>Acceptance of Operating Agreement</u>. The Subscriber hereto agrees that as of the date of the acceptance of my subscription by the Fund, I shall become a Member and I hereby agree to each and every term of the Operating Agreement.

4.2 <u>Notices</u>. Any notice, request, demand or other communication required by or permitted to be given in connection with this Subscription Agreement shall be in writing, except as expressly otherwise permitted herein, and shall be delivered in person, and/or sent by first class mail (postage prepaid and certified or registered, with return receipt requested), and/or sent by facsimile or similar means of communication, and/or delivered by a courier service (charges prepaid), to the respective party at its address as set forth on the signature page to this Subscription Agreement. Each party may change its address by notifying each other party of such change. Any such notice, request, demand or other communication shall be deemed to be given:

(a) when received, if personally delivered;

(b) if mailed, on the third business day after it is deposited in the United States mail, properly addressed, with proper postage affixed;

(c) if sent by facsimile or similar device, when electronically confirmed; and

(d) if sent by courier service, 24 hours after shipped by such courier service; provided, however, that any notice to the Fund shall be effective only if and when received by the Fund Manager.

4.3 <u>Governing Law; Consent to Jurisdiction</u>. This Subscription Agreement shall be governed by and construed in accordance with the internal laws (and not the law of conflicts) of the State of Delaware. The parties hereby consent to the non-exclusive jurisdiction of the courts of the State of Delaware and any federal court for any action arising out of this Subscription Agreement.

4.4 <u>Binding Effect, and Severability</u>. The Subscriber may not assign any of its rights or obligations under this Subscription Agreement without the prior written consent of the Fund Manager. This Subscription Agreement and the rights and obligations set forth herein shall be binding upon, and shall inure to the benefit of, the Subscriber, the Fund

and the Fund Manager, and their respective successors and permitted assigns. If any provision of this Subscription Agreement, or the application of such provision to any circumstance, shall be invalid under the laws of the applicable jurisdiction, the remainder of this Subscription Agreement or the application of such provision to other persons or circumstances or in other jurisdictions shall not be affected thereby.

4.5     <u>Entire Agreement</u>.   This Subscription Agreement, including the appendices hereto, constitutes the entire agreement, and supersedes all prior agreements or understandings, among the parties hereto with respect to the subject matter hereof.

4.6     <u>Counterparts</u>.   This Subscription Agreement may be executed in one or more separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

4.7     <u>Waiver of Breach.</u>   The waiver by a party hereto of a breach of any provisions of this Subscription Agreement shall not operate or be construed as a waiver of any subsequent breach by a party hereto.   The failure of a party hereto to insist upon strict adherence to any provision of this Subscription Agreement shall not constitute a waiver or thereafter deprive such party of the right to insist upon strict adherence.

IN WITNESS WHEREOF, the Subscriber has executed this Subscription Agreement for the selected Share Class(es) of Last Atlantis Partners LLC, a Delaware Series Limited Liability Company as of the date set forth below.

Subscriber as an Individual:                     Subscriber as an Entity:

Signature: _____             Signature: _____

Name: _____               Name: _____

                                               Title: _____

                                               Entity: _____

Date: _____              Date: _____

**Subscriber as an Individual:**

**Residential Address:**

_____

_____

_____

_____

Telephone: _____

Facsimile: _____

Email: _____

U.S. Taxpayer ID: _____

**Business Address:**

_____

_____

_____

_____

Telephone: _____

Facsimile: _____

Email: _____

**Subscriber as an Entity:**

**Address:**

_____

_____

_____

_____

Telephone: _____

Facsimile: _____

Email: _____

U.S. Taxpayer ID; _____

**Written Correspondence**

Written Correspondence.  Send all written correspondence to:

*(You must initial one of the following two sections)*

(*initial  here*)    My residential address.

(*initial  here*)    My business address.

**Electronic Correspondence**

Electronic Correspondence.  I request electronic delivery of my statements and correspondence.

*(You must initial one of the following two sections)*

(*initial here*)     Email my correspondence to the Email address above.

(*initial here*)     I wish to obtain my correspondence by accessing a secure website.

**Nature of Individual Ownership**

Nature of Ownership.  Manner in which Interest is to be held:

*(You must initial one of the following sections)*

(*initial here*)     Individual.

(*initial here*)     Uniform Gift to Minor/Uniform Transfer to Minor.

(*initial here*)     Spouses, as community property (all parties must sign).

(*initial here*)     Tenants in Common (all parties must sign).

(*initial here*)     Trust.

(*initial here*)     Joint Tenants (all parties must sign).

(*initial here*)     Other: _____.*(please specify)*

**Nature of Entity Ownership**

Nature of Ownership.  Manner in which Interest is to be held:

*(You must initial one of the following sections)*

(*initial here*)     Corporation.

(*initial here*)     Partnership.

(*initial here*)     Trust.

(*initial here*)     Other: _____.*(please specify)*

**Selection and Allocation to Share Class(es)**

**LACM Split Strike Conversion, Share Class A**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

    (*initial here*)   LACM Split Strike Conversion, Share Class A.

    (*initial here*)   In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM Fund of Funds, Share Class A

For further credit to _____*(specify Subscriber's name)*


**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS.]**

**LACM High Yield, Share Class B**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

    (*initial here*)   LACM High Yield, Share Class B.

    (*initial here*)   In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM High Yield, Share Class B

For further credit to _____*(specify Subscriber's name)*

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS.]**

**LACM Legacy, Share Class C**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

    *(initial here)*   LACM Legacy, Share Class C.

    *(initial here)*   In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM Legacy, Share Class C

For further credit to _____*(specify Subscriber's name)*

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS.]**

**LACM Trade Receivables, Share Class D**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

    *(initial here)*   LACM Trade Receivables, Share Class D.

    *(initial here)*   In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM Trade Receivables, Share Class D

For further credit to _____*(specify Subscriber's name)*

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS.]**

**LACM MSCI Enhanced Hedge Fund Index, Share Class E**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

(*initial here*)    LACM MSCI Enhanced Hedge Fund Index, Share Class E.

(*initial here*)    In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM MSCI Enhanced Hedge Fund Index, Share Class E

For further credit to _____*(specify Subscriber's name)*


**LACM Macro Discretionary, Share Class F**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

(*initial here*)    LACM Macro Discretionary, Share Class F.

(*initial here*)    In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM Macro Discretionary, Share Class F

For further credit to _____*(specify Subscriber's name)*

**LACM Trend Following Futures, Share Class G**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

*(initial here)*    LACM Trend Following Futures, Share Class G.

*(initial here)*    In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM Trend Following Futures, Share Class G

For further credit to _____*(specify Subscriber's name)*


**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS.]**

**LACM Emerging Managers, Share Class H**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

*(initial here)*    LACM Emerging Managers, Share Class H.

*(initial here)*    In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM Emerging Managers, Share Class H

For further credit to _____*(specify Subscriber's name)*


**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS.]**

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS.]**

**LACM Quantitative Intraday Futures, Share Class I**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

(*initial here*)   LACM Quantitative Intraday Futures, Share Class I.

(*initial here*)   In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM Quantitative Intraday Futures, Share Class I

For further credit to _____*(specify Subscriber's name)*

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS.]**

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS.]**

**LACM Behavior Pattern Intraday Futures, Share Class J**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

(*initial here*)   LACM Behavior Pattern Intraday Futures, Share Class J.

(*initial here*)   In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM Fund of Funds, Share Class J

For further credit to _____*(specify Subscriber's name)*

**[THIS SHARE CLASS IS TEMPORARILY CLOSED TO NEW INVESTORS.]**

**LACM Long/Short Statistical Arbitrage, Share Class K**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

(*initial here*)    LACM Long/Short Statistical Arbitrage, Share Class K.

(*initial here*)    In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM Long/Short Statistical Arbitrage, Share Class K

For further credit to _____*(specify Subscriber's name)*


**LACM Consumer Receivables, Share Class L**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

(*initial here*)    LACM Consumer Receivables, Share Class L.

(*initial here*)    In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM Consumer Receivables, Share Class L

For further credit to _____*(specify Subscriber's name)*

**LACM Enhanced Multi-Strategy, Share Class M**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

(*initial here*)   LACM Enhanced Multi-Strategy, Share Class M.

(*initial here*)   In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM Enhanced Multi-Strategy, Share Class M

For further credit to _____*(specify Subscriber's name)*

**LACM Short-Term Discretionary Futures, Share Class N**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

(*initial here*)   LACM Short-Term Discretionary Futures, Share Class N.

(*initial here*)   In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM Short-Term Discretionary Futures, Share Class N

For further credit to _____*(specify Subscriber's name)*

**LACM Proprietary Options, Share Class O**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

(*initial here*)    LACM Proprietary Options, Share Class O.

(*initial here*)    In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM Proprietary Options, Share Class O

For further credit to _____*(specify Subscriber's name)*


**LACM Discretionary Options, Share Class Q**

I, the Subscriber, hereby subscribe for the following Share Class in the amount set forth below:

*(You must initial the following sections and specify the investment amount)*

(*initial here*)    LACM Discretionary Options, Share Class Q.

(*initial here*)    In the amount of $ _____ US.

*(Please remit your investment proceeds by wire as specified below)*

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of LACM Discretionary Options, Share Class Q

For further credit to _____*(specify Subscriber's name)*

IN WITNESS WHEREOF, the Fund hereby accepts the Subscriber's subscription and admits the Subscriber as a Member of the Share Class(es) of Last Atlantis Partners LLC, a Delaware Series Limited Liability Company that the Subscriber has selected above and for the subscribed amount the Subscriber has designated above, as of the date set forth below.

Accepted by:

Signature: _____

Last Atlantis Capital Management LLC

Fund Manager of Last Atlantis Partners LLC

Date: _____

**Amended and Restated**
**Withdrawal and/or Reallocation Agreement**
**April 2006**

# Last Atlantis Partners LLC,

**a Delaware Series Limited Liability Company**

This Withdrawal and/or Reallocation Agreement (the "Withdrawal and/or Reallocation Agreement") is made by and among the Member (the "Member") named as set forth below, and Last Atlantis Partners LLC, a Delaware Series Limited Liability Company (the "Fund").

WHEREAS, the Member desires to liquidate in total its Capital Account and withdraw as a Member of the Fund from the Share Class(es) as set forth below; or

WHEREAS, the Member of the Fund desires to withdraw a portion of its Capital Account from the Share Class(es) as set forth below; or

WHEREAS, the Member desires to withdraw a portion or to liquidate in total its Capital Account and reinvest the proceeds into the Share Class(es) as set forth below and to be admitted as a member of that Share Class(es).

WHEREAS, capitalized terms used but not otherwise defined in this Withdrawal and/or Reallocation Agreement shall have the meanings specified in the Subscription Agreement (dated September 2005 and as amended from time to time, the "Subscription Agreement"), the Fund's Operating Agreement (dated September 2005 and as amended from time to time, the "Operating Agreement"), in the form that accompanies the Confidential Private Placement Memorandum (dated September 2005 and as amended, supplemented or updated from time to time, the "Memorandum").

NOW, THEREFORE, in consideration of the foregoing and of the mutual covenants and agreements set forth in this Withdrawal and/or Reallocation Agreement, the Memorandum, the Operating Agreement, and the Subscription Agreement, the parties hereto agree as follows:

1.1    <u>Withdraw and Liquidate.</u> The Member desires to liquidate in total its Capital Account and withdraw as a Member of the Fund from the Share Class(es) selected below:

*(You must select and initial the following applicable selections.)*

*(initial here)*    LACM Split Strike Conversion, Share Class A.

*(initial here)*    LACM High Yield, Share Class B.

*(initial here)*    LACM Legacy, Share Class C.

*(initial here)*    LACM Trade Receivables, Share Class D.

*(initial here)*    LACM MSCI Enhanced Hedge Fund Index, Share Class E.

(*initial here*)    LACM Macro Discretionary, Share Class F.

(*initial here*)    LACM Trend Following Futures, Share Class G.

(*initial here*)    LACM Emerging Managers, Share Class H.

(*initial here*)    LACM Quantitative Intraday Futures, Share Class I.

(*initial here*)    LACM Behavior Pattern Intraday Futures, Share Class J.

(*initial here*)    LACM Long/Short Statistical Arbitrage, Share Class K.

(*initial here*)    LACM Consumer Receivables, Share Class L.

(*initial here*)    LACM Enhanced Multi-Strategy, Share Class M.

(*initial here*)    LACM Short-Term Discretionary Futures, Share Class N.

(*initial here*)    LACM Enhanced Proprietary Options, Share Class O.

(*initial here*)    LACM Discretionary Options, Share Class Q.

Remit the withdrawal proceeds by wire to:

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of _____


1.2    <u>Partial Withdrawal.</u>  The Member requests a withdrawal from its Capital Account in the amount and from the following Share Class(es):

*(You must select, initial and specify an amount in the following applicable selections.)*

(*initial here*)    LACM Split Strike Conversion, Share Class A,

in the amount of $_____ US.

(*initial here*)    LACM High Yield, Share Class B,

in the amount of $_____ US.

(*initial here*)    LACM Legacy, Share Class C,

in the amount of $_____ US.

(*initial here*)   LACM Trade Receivables, Share Class D,

in the amount of $_____ US.

(*initial here*)   LACM MSCI Enhanced Hedge Fund Index, Share Class E,

in the amount of $_____ US.

(*initial here*)   LACM Macro Discretionary, Share Class F,

in the amount of $_____ US.

(*initial here*)   LACM Trend Following Futures, Share Class G,

in the amount of $_____ US.

(*initial here*)   LACM Emerging Managers, Share Class H,

in the amount of $_____ US.

(*initial here*)   LACM Quantitative Intraday Futures, Share Class I,

in the amount of $_____ US.

(*initial here*)   LACM Behavior Pattern Intraday Futures, Share Class J,

in the amount of $_____ US.

(*initial here*)   LACM Long/Short Statistical Arbitrage, Share Class K,

in the amount of $_____ US.

(*initial here*)   LACM Consumer Receivables, Share Class L,

in the amount of $_____ US.

(*initial here*)   LACM Enhanced Multi-Strategy, Share Class M,

in the amount of $_____ US.

(*initial here*)   LACM Short-Term Discretionary Futures, Share Class N,

in the amount of $_____ US.

(*initial here*)   LACM Proprietary Options, Share Class O,

in the amount of $_____ US.

(*initial here*)   LACM Discretionary Options, Share Class Q,

in the amount of $_____ US.

Remit the withdrawal proceeds by wire to:

_____ Bank

ABA Number: _____

Account Number: _____

Credit to the account of _____

1.3     <u>Withdraw and Reinvest.</u>  The Member desires to withdraw a portion and/or to liquidate in total its Capital Account in the amount and from the selected Share Class(es) and to reinvest the proceeds into the Share Class(es) and in the amounts as follows:

**Withdraw from:**

*(You must select, initial and specify an amount in the following applicable selections.)*

*(initial here)*    LACM Split Strike Conversion, Share Class A,

in the amount of $_____ US.

*(initial here)*    LACM High Yield, Share Class B,

in the amount of $_____ US.

*(initial here)*    LACM Legacy, Share Class C,

in the amount of $_____ US.

*(initial here)*    LACM Trade Receivables, Share Class D,

in the amount of $_____ US.

*(initial here)*    LACM MSCI Enhanced Hedge Fund Index, Share Class E,

in the amount of $_____ US.

*(initial here)*    LACM Macro Discretionary, Share Class F,

in the amount of $_____ US.

*(initial here)*    LACM Trend Following Futures, Share Class G,

in the amount of $_____ US.

*(initial here)*    LACM Emerging Managers, Share Class H,

in the amount of $_____ US.

(*initial here*)    LACM Quantitative Intraday Futures, Share Class I,

in the amount of $_____ US.

(*initial here*)    LACM Behavior Pattern Intraday Futures, Share Class J,

in the amount of $_____ US.

(*initial here*)    LACM Long/Short Statistical Arbitrage, Share Class K,

in the amount of $_____ US.

(*initial here*)    LACM Consumer Receivables, Share Class L,

in the amount of $_____ US.

(*initial here*)    LACM Enhanced Multi-Strategy, Share Class M,

in the amount of $_____ US.

(*initial here*)    LACM Short-Term Discretionary Futures, Share Class N,

in the amount of $_____ US.

(*initial here*)    LACM Proprietary Options, Share Class O,

in the amount of $_____ US.

(*initial here*)    LACM Discretionary Options, Share Class Q,

in the amount of $_____ US.


**Reinvest into:**

*(You must select, initial and specify an amount in the following applicable selections.)*

(*initial here*)    LACM Split Strike Conversion, Share Class A,

in the amount of $_____ US.

(*initial here*)    LACM High Yield, Share Class B,

in the amount of $_____ US.

(*initial here*)    LACM Legacy, Share Class C,

in the amount of $_____ US.

(*initial here*)   LACM Trade Receivables, Share Class D,

in the amount of $_____ US.

(*initial here*)   LACM MSCI Enhanced Hedge Fund Index, Share Class E,

in the amount of $_____ US.

(*initial here*)   LACM Macro Discretionary, Share Class F,

in the amount of $_____ US.

(*initial here*)   LACM Trend Following Futures, Share Class G,

in the amount of $_____ US.

(*initial here*)   LACM Emerging Managers, Share Class H,

in the amount of $_____ US.

(*initial here*)   LACM Quantitative Intraday Futures, Share Class I,

in the amount of $_____ US.

(*initial here*)   LACM Behavior Pattern Intraday Futures, Share Class J,

in the amount of $_____ US.

(*initial here*)   LACM Long/Short Statistical Arbitrage, Share Class K,

in the amount of $_____ US.

(*initial here*)   LACM Consumer Receivables, Share Class L,

in the amount of $_____ US.

(*initial here*)   LACM Enhanced Multi-Strategy, Share Class M,

in the amount of $_____ US.

(*initial here*)   LACM Short-Term Discretionary Futures, Share Class N,

in the amount of $_____ US.

(*initial here*)   LACM Proprietary Options, Share Class O,

in the amount of $_____ US.

(*initial here*)   LACM Discretionary Options, Share Class Q,

in the amount of $_____ US.

**The Member must complete the signature pages of the Subscription Agreement Signature Pages, attached as Exhibit E, for any Share Class(es) it is not currently a Member:**

1.4    <u>Timing of Withdrawal</u>.  The Member acknowledges that the timing of its withdrawal is subject to terms and conditions detailed in the Subscription Agreement, Memorandum, Operating Agreement, and the Fund's ability to liquidate its Underlying Investments. Certain Underlying Investments may have withdrawal policies (for example, substantial "lockup" periods or withdrawals only at year-end) that prevent the Fund from honoring a withdrawal request on a timely basis.

1.5    <u>Withdrawal Charge.</u>  The Member acknowledges that certain Underlying Investments may impose a withdrawal charge to the Fund. Any withdrawal charges incurred by the Fund as a result of withdrawal requests will be borne by the withdrawing Share Class Member. When practicable, the Fund Manager will notify the withdrawing Member of any withdrawal charges to be assessed.

1.6    <u>Capital Account Below Minimum Capital Requirement.</u>  The Member acknowledges that no Share Class Member may make a withdrawal, other than a complete withdrawal that reduces a Member's capital account balance below the minimum initial capital contribution amount; however, the Fund Manager may, in its sole discretion, waive minimum Capital Account balances with respect to certain Members or under certain circumstances.

1.7    <u>Withdrawal Rights.</u>  The Member acknowledges that the Fund Manager has discretion to suspend the Member's capital withdrawal right if and to the extent the Fund:

(a)    is unable to withdraw sufficient capital from the Underlying Investments to honor the withdrawal request;

(b)    is able to withdraw its capital but the withdrawal would have a material adverse effect on the remaining Members. Any amounts subject to suspended capital withdrawal rights shall continue to participate in the Fund's profits and losses.

IN WITNESS WHEREOF, the Member has executed this Withdrawal and/or Reallocation Agreement for the selected Share Class(es) of Last Atlantis Partners LLC, a Delaware Series Limited Liability Company as of the date set forth below.

Subscriber as an Individual:                    Subscriber as an Entity:

Signature: _____            Signature: _____

Name: _____            Name: _____

                                                Title: _____

                                                Entity: _____

Date: _____            Date: _____